NICHOLAS B. JANDA (SBN 253610)
nick.janda@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

MONICA B. RICHMAN (*pro hac vice* pending)
monica.richman@dentons.com
DANIEL A. SCHNAPP (*pro hac vice* pending)
daniel.schnapp@dentons.com
MARY KATE BRENNAN (*pro hac vice* pending)
marykate.brennan@dentons.com
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800

*Attorneys for Plaintiff*
*DAYBREAK GAME COMPANY LLC*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAYBREAK GAME COMPANY LLC, <br><br> Plaintiff, <br><br> v. <br><br> KRISTOPHER TAKAHASHI, ALEXANDER TAYLOR, and DOES 1-20, inclusive, <br><br> Defendants. | Case No. 3:25-cv-01489-BAS-BLM <br><br> **PLAINTIFF DAYBREAK GAME COMPANY LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO FILE PORTIONS OF THE TRO APPLICATION AND CHAN DECLARATION UNDER SEAL** <br><br> **NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiff Daybreak Game Company LLC ("Daybreak") respectfully submits this Memorandum of Points and Authorities in support of its request for an order to seal portions of the Declaration of Jennifer Chan ("Chan Declaration") and Application for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction ("TRO Application"). This Court should seal the Confidential Information to prevent grave and irreparable harm to Daybreak. All information Daybreak seeks to keep under seal fall under the categories of (i) user statistics and (ii) financial performance and operational information. These internal metrics reflect Daybreak's confidential assessments of game health, profitability, and live service viability. Public disclosure would compromise Daybreak's internal decision-making processes by prematurely exposing this information.

## LEGAL ARGUMENT

### A. Legal Standard for Sealing Documents

In the Ninth Circuit, courts apply a well-established three-part test for sealing judicial records. To seal documents, a party must demonstrate: (1) compelling reasons supported by specific factual findings; (2) articulated reasoning for the request; and (3) narrow tailoring to serve only the interest asserted. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-80 (9th Cir. 2006); *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 38, (Oct. 3, 2016) (where a motion is "more than tangentially related to the merits" of the action, the sealing of confidential information is appropriate where there are "compelling reasons" to do so). The party seeking sealing bears the burden of overcoming the strong presumption in favor of public access to court records. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir.

2003). However, this presumption is not absolute, and courts routinely recognize that certain categories of information warrant protection from public disclosure.

### B. Confidential Business Information as Compelling Reason to Seal

Courts consistently recognize that confidential business information constitutes compelling reasons for sealing when disclosure would result in competitive harm. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (sources of business information that may harm a litigant's "competitive standing" often warrant protection under seal); *Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214, 1223-24 (Fed. Cir. 2013) (remanding to seal documents containing about business strategies and financial performance to prevent competitive harm where "suppliers could have access to [] profit, cost, and margin data"); *San Diego Comic Convention v. Dan Farr Prods.*, No. 14-CV-1865 AJB (JMA), 2017 WL 3732081, at *2-3 (S.D. Cal. Aug. 30, 2017) (finding compelling reason where there was confidential business information).

### C. Daybreak Seeks to Seal Confidential Business Information

Courts protect confidential business information under a standard focused on preventing competitive harm when disclosure would provide competitors with unfair advantage. The key inquiry is whether disclosure would result in substantial competitive harm to the disclosing party, not whether the information meets technical trade secret requirements. *Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214, 1223 (Fed. Cir. 2013); *San Diego Comic Convention v. Dan Farr Prods.,* No. 14-CV-1865 AJB (JMA), 2017 WL 3732081, at *2-3 (S.D. Cal. Aug. 30, 2017).

#### i.   Information Daybreak Seeks to Seal

*First*, Daybreak seeks to seal portions of the TRO Application and Chan Declaration that implicate user performance data. *See e.g. In re JUUL Labs, Inc.,*

*Mktg., Sales Pracs., & Prods. Liab. Litig.*, 497 F. Supp. 3d 552, 583 n.15 (N.D. Cal. 2020) (granting plaintiff's request to seal exhibits based on "confidential and competitively sensitive business information, including proprietary business strategy and… research"). The Confidential Information includes specific user engagement metrics, including monthly active user (MAU) decline percentages over an eighteen-month period, daily active user (DAU) statistics. Declaration of David Youssefi in Support of Motion to Seal ("6.16.25 Youssefi Decl."), ¶ 4-5. The performance data constitutes confidential business information because it reveals internal indicators used to inform product lifecycle decisions, investment prioritization, and operational scaling. 6.16.25 Youssefi Decl., ¶ 6, 8. While this data may not constitute traditional trade secrets, it represents highly sensitive game intelligence that gaming companies closely guard. *See Erickson v. Snap, Inc.*, No. 217CV03679SVWAGR, 2017 WL 11592635, at *1 (C.D. Cal. Sept. 18, 2017) (characterizing user engagement metrics as confidential information).

    *Second*, Daybreak seeks to seal portions of the TRO Application and Chan Declaration that contain the results of a confidential internal financial analysis. *Apple Inc. v. Samsung Electronics Co.*, 727 F.3d 1214, 1223-24 (Fed. Cir. 2013) (compelling reason exists to seal documents containing financial information); *see also In re PersonalWeb Techs., LLC Pat. Litig.*, No. 18-MD-02834-BLF, 2019 WL 13033990, at *2 (N.D. Cal. Dec. 16, 2019) (granting motion to seal for documents that contain highly confidential information that would put movant at undue risk of serious harm by revealing "confidential operational information"). Specifically, Daybreak seeks to seal the projected date by which continued operation of the EverQuest game will no longer be viable without significant staffing reductions and withdrawal of further investment. Even in isolation, this viability threshold reflects Daybreak's internal expectations, resource planning, and product strategy, and its

public disclosure would unfairly signal the financial posture of the game to investors, partners, users, and the market generally. Courts have consistent protected similar internal decision-making metrics where disclosure would compromise a company's strategic discretion or reveal a non-public criteria for product support. *See generally Imax Corp. v. Cinema Techs.*, Inc., 152 F.3d 1161, 1165 (9th Cir. 1998).

### i. Daybreak's Confidentiality Measures

Daybreak maintains comprehensive confidentiality measures for this information including, but not limited to: access restrictions to senior management and strategic teams; employee confidentiality agreements covering competitive intelligence; exclusion from all public filings and external communications; and non-disclosure requirements for consultants and advisors. 6.16.25 Youssefi Decl., ¶ 7. These measures demonstrate the competitive value Daybreak places on this information and support the confidential business information analysis.

### ii. Disclosure Would Cause Substantial Harm

Disclosure of Daybreak's internal metrics would cause substantial harm, as they reflect sensitive thresholds Daybreak uses to evaluate whether the continued operation of a live game remains sustainable. *Id.* at ¶ 5. Publicly revealing user metrics and this type of planning milestone would limit Daybreak's ability to manage its operations confidentially. While public sources may provide broad industry metrics, the specific internal metrics and analysis result Daybreak seeks to seal are not publicly accessible and reflect forward-looking strategic analysis. Their disclosure would allow third parties to draw premature or misleading conclusions about Daybreak's product roadmap, performance assumptions, and internal priorities. *See Id.* ¶ 8.

Unlike industries where competitive information becomes available through public reporting, specific user engagement metrics and financial performance data are closely guarded because they provide direct intelligence about market vulnerabilities and strategic opportunities. *In re PersonalWeb Techs., LLC Pat. Litig.*, No. 18-MD-02834-BLF, 2019 WL 13033990, at *2 (N.D. Cal. Dec. 16, 2019); *Erickson v. Snap, Inc.*, No. 217CV03679SVWAGR, 2017 WL 11592635, at *1 (C.D. Cal. Sept. 18, 2017). Once the internal metrics and financial analysis data are disclosed, that information cannot be retracted and would permanently impair Daybreak's ability to manage its communications with investors, partners, and users regarding the future of EverQuest.

Accordingly, Daybreak pleads with this Court to grant the instant Motion to minimize damage resulting from public disclosure of its Confidential Information. *See* Declaration of Nicholas B. Janda in Support of Motion to Seal ("6.16.25 Janda Decl."), ¶ 2-5; *see also* 6.16.25 Youssefi Decl., ¶ 4-8; *see also generally* TRO Application.

| Ex. | Document | Portion to be Sealed | Reason for Sealing |
|---|---|---|---|
| 1 | TRO Application | Excerpts on pg. 27 | These excerpts contain figures (percentages and number of users) corresponding to monthly active user (MAU) decline and daily active user (DAU) decline. This information is confidential and reflects user statistics and reveals the confidential health of the game. The excerpts further contain a date that must remain redacted and remain confidential as disclosure would reveal Daybreak's financial position. |
| 2 | Chan Declaration | ¶¶ 25, 26, 28 | ¶ 25 contains figures corresponding to the monthly active user (MAU) decline. This information is confidential and |

| | | | |
|---|---|---|---|
| | | | reflects user statistics and reveals the financial performance of Daybreak's EverQuest.<br><br>¶ 26 contains figures corresponding to daily active user (DAU) decline. This information is confidential and reflects user statistics and reveals the financial performance of Daybreak's EverQuest.<br><br>¶ 28 contains a date relevant to a critical business decision regarding Daybreak's EverQuest. that must remain redacted and remain confidential as disclosure would reveal Daybreak's financial position. |

## **CONCLUSION**

In light of the foregoing, Daybreak respectfully requests that the Court grant its Motion in its entirety and any such other relief as the Court deems just and proper.

Dated: June 16, 2025

Respectfully Submitted,

DENTONS US LLP

By: *Nicholas B. Janda*
Nicholas B. Janda
Monica B. Richman (*pro hac vice* pending)
Daniel A. Schnapp (*pro hac vice* pending)
Mary Kate Brennan (*pro hac vice* pending)

*Attorneys for Plaintiff*
*DAYBREAK GAME COMPANY, LLC*