1  NICHOLAS B. JANDA (SBN 253610)
   nick.janda@dentons.com
2  DENTONS US LLP
   601 South Figueroa Street, Suite 2500
3  Los Angeles, California 90017-5704
   Telephone: (213) 623-9300
4  Facsimile: (213) 623-9924

5  MONICA B. RICHMAN (*pro hac vice* pending)
   monica.richman@dentons.com
6  DANIEL A. SCHNAPP (*pro hac vice* pending)
   daniel.schnapp@dentons.com
7  MARY KATE BRENNAN (*pro hac vice* pending)
   marykate.brennan@dentons.com
8  DENTONS US LLP
   1221 Avenue of the Americas
9  New York, New York 10020-1089
   Telephone: (212) 768-6700
10 Facsimile: (212) 768-6800

11 *Attorneys for Plaintiff*
12 *DAYBREAK GAME COMPANY LLC*

**FILED**

Jun 10 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ armincortez          DEPUTY

**REDACTED**

SEALED

13              UNITED STATES DISTRICT COURT

14            SOUTHERN DISTRICT OF CALIFORNIA

15 DAYBREAK GAME COMPANY LLC,          **CONFIDENTIAL – FILED UNDER SEAL**
16
17          Plaintiff,                 Case No. **'25CV1489 BAS BLM**
18     v.
19 KRISTOPHER TAKAHASHI,               ***EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION; MOTION FOR EXPEDITED DISCOVERY; MOTION FOR ALTERNATIVE SERVICE**
   ALEXANDER TAYLOR, and DOES 1-
20 20, inclusive,
21
22          Defendants.
23
24
25
26
27
28

1

Case No. _____
EPA FOR TRO & OSC

1  TO THE COURT AND ALL PARTIES:

2      PLEASE TAKE NOTICE that Plaintiff Daybreak Game Company LLC

3  ("Daybreak") hereby applies *ex parte* for a Temporary Restraining Order and Order

4  to Show Cause for a Preliminary Injunction pursuant to Fed. R. Civ. P. 65,

5  expedited discovery pursuant to Fed. R. Civ. P. 26(d) and 30(a)(2)(A)(iii), and

6  alternative service pursuant to Fed. R. Civ. P. 4(f)(3), to be heard on _____ at

7  _____ or as soon thereafter as the matter may be heard.

8      Daybreak seeks immediate emergency relief restraining Defendants and all

9  persons acting in concert with them from continuing their ongoing copyright

10  infringement and DMCA violations that are causing immediate and irreparable

11  harm to Daybreak's business and intellectual property.

12      Daybreak makes this Application on the grounds that Defendants are

13  operating "The Heroes' Journey" ("THJ") emulator in direct violation of

14  Daybreak's intellectual property rights, causing immediate and continuing

15  irreparable harm that cannot be compensated by monetary damages alone. The need

16  for immediate relief is urgent because Defendants have announced plans to release

17  a major update to the infringing THJ emulator **as early as June 20, 2025**, which

18  will substantially escalate their infringing activities and cause exponentially greater

19  harm to Daybreak.

20      Daybreak also seeks expedited discovery because the identities of DOES 1-

21  20 remain unknown and they have deliberately concealed their identities while

22  operating under pseudonyms online. Expedited discovery is necessary to identify

23  these defendants and effectuate service before they can further harm Daybreak's

24  rights or destroy and/or remove evidence outside of the U.S. Daybreak also seeks

25  an Order authorizing alternative service.

26      This Application is based on this Notice, the accompanying Memorandum of

27  Points and Authorities, the Declaration of Nicholas B. Janda (authenticating

28  documents), the Declaration of Jennifer Chan, the Declaration of Walter Tuanqui,

Case No. _____
EPA FOR TRO & OSC

all pleadings and papers on file in this action, all matters of which the Court may take judicial notice, and any such other evidence and argument as may be presented at the time of the hearing.

Dated: June 10, 2025

Respectfully submitted,

DENTONS US LLP

By: *Nicholas B. Janda*
    Nicholas B. Janda
    Monica B. Richman (*pro hac vice* pending)
    Daniel E. Schnapp (*pro hac vice* pending)
    Mary Kate Brennan (*pro hac vice* pending)

*Attorneys for Plaintiff*
*DAYBREAK GAME COMPANY, LLC*

Case No. _____
EPA FOR TRO & OSC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND URGENCY OF RELIEF ........................................ 8

II.   STATEMENT OF FACTS ....................................................................... 10

    A.   EverQuest's Legacy and Cultural Significance ................................... 10

    B.   Daybreak's Intellectual Property Rights .............................................. 11

    C.   Defendants and their THJ Emulator ..................................................... 15

    D.   Imminent Escalation of Harm ............................................................... 16

    E.   Commercial Impact and Harm to Daybreak ........................................ 16

III.  LEGAL STANDARDS ........................................................................... 17

    A.   Legal Standard for Temporary Restraining Order .............................. 17

    B.   Legal Standard for Expedited Discovery ............................................. 18

    C.   Legal Standard for Alternative Service ................................................ 18

IV.   ARGUMENT .......................................................................................... 19

    A.   Daybreak Can Establish a Likelihood of Success on the Merits of Its Claims ......................................................................................... 19

        1.   Copyright Infringement ................................................................ 19

        2.   Digital Millennium Copyright Act Violations ........................... 21

        3.   Evidence of Willful Infringement ............................................... 22

        4.   Other Claims ................................................................................. 24

    B.   Daybreak Will Suffer Immediate and Irreparable Harm Without Emergency Relief ................................................................................. 25

        1.   Loss of Control Over Daybreak's Intellectual Property ............. 26

        2.   Measurable User Base Decline Threatens Game Viability ........ 26

3.    Existential Threat to the EverQuest Franchise ..........................27

4.    Incalculable Financial Harm......................................................28

C.    The Balance of Equities Tips Sharply in Daybreak's Favor ...............28

D.    A Temporary Restraining Order Is in the Public Interest...................29

E.    Necessity of Expedited Discovery .......................................................30

1.    Defendants Operate Under Pseudonyms ...................................30

2.    Need to Identify Defendants for Effective Relief......................30

3.    Risk of Evidence Destruction and Relocation and
      Continued Harm..........................................................................31

4.    Expedited Discovery Factors Support Relief ............................32

5.    Specific Discovery Needed ........................................................33

F.    Alternative Service is Appropriate.......................................................33

V.    CONCLUSION AND RELIEF SOUGHT...................................................34

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5 *All. for the Wild Rockies v. Cottrell,*
   632 F.3d 1127 (9th Cir. 2011)................................................................17

6
7 *Apple Inc. v. Psystar Corp.,*
   673 F. Supp. 2d 943 (N.D. Cal. 2009), *aff'd,* 658 F.3d 1150 (9th
8 Cir. 2011)........................................................................................29

9 *Arista Records LLC v. Does 1–43,*
   2007 WL 4538697 (S.D. Cal. Dec. 20, 2007)...................................18
10

11 *Cadence Design Sys., Inc. v. Avant! Corp.,*
   125 F.3d 824 (9th Cir. 1997).............................................................23
12

13 *Disney Enters., Inc. v. VidAngel, Inc.,*
   869 F.3d 848 (9th Cir. 2017).............................................................18
14

15 *Facebook, Inc. v. Banana Ads, LLC,*
   No. C 11-3619 YGR, 2012 WL 1038752 (N.D. Cal. Mar. 27, 2012) .........18, 34

16
17 *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340 (1991) .........................................................................19

18 *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.,*
   736 F.3d 1239 (9th Cir. 2013)...........................................................26
19

20 *Malibu Media, LLC v. Doe,*
   319 F.R.D. 299 (E.D. Cal. 2016)........................................................18
21

22 *MDY Indus., LLC v. Blizzard Ent., Inc.,*
   629 F.3d 928 (9th Cir. 2010).............................................................22
23

24 *Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.,*
   944 F.2d 597 (9th Cir. 1991).............................................................26
25

26 *Rio Props., Inc. v. Rio Int'l Interlink,*
   284 F.3d 1007 (9th Cir. 2002)......................................................18, 34
27

28 *Sony Computer Ent. Am., Inc. v. Divineo, Inc.,*
   457 F. Supp. 2d 957 (N.D. Cal. 2006)...............................................22

Case No. _____
EPA FOR TRO & OSC

*Triad Sys. Corp. v. Se. Express Co.*,
    64 F.3d 1330 (9th Cir. 1995) ................................................................... 29

*UMG Recordings, Inc. v. Doe*,
    No. C 08-1193 SBA, 2008 WL 4104214 (N.D. Cal. Sept. 3, 2008) ................. 18

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................... 17, 29

**Statutes**

15 U.S.C.
    § 1125(a) ................................................................... 25

17 U.S.C.
    § 106 ................................................................... 20
    § 410(c) ................................................................... 19
    § 1201 ................................................................... 21, 22

California Business and Professions Code
    § 17200 ................................................................... 25

**Other Authorities**

Federal Rules of Civil Procedure
    Rule 4(f)(3) ................................................................... 18, 34
    Rule 65 ................................................................... 17, 26

Case No. _____
EPA FOR TRO & OSC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND URGENCY OF RELIEF

For 25 years, EverQuest has stood as one of the most influential and enduring massively multiplayer online role-playing games in history. Now, that legacy faces an existential threat. Defendants (Kristopher Takahashi and Alexander Taylor, along with additional unknown defendants who operate under pseudonyms) systematically infringe Daybreak's intellectual property rights by operating "The Heroes' Journey" ("THJ"), an unauthorized emulator of EverQuest.

Below are just a few examples of Defendants' blatant copying of Daybreak's intellectual property:

| Daybreak's EverQuest | Defendants' THJ |
|:---:|:---:|
|  |  |







*See* Declaration of Walter Tuanqui ("Tuanqui Decl.") ¶¶ 24, 30, 36.

**9**

1   **Daybreak requires immediate relief**. Each day of delay allows Defendants
2   to continue diverting players and revenue from Daybreak's legitimate EverQuest
3   service, causing escalating and irreparable harm. Moreover, Defendants have
4   announced plans to release a major update to THJ on or about **June 20, 2025**,
5   which substantially will expand their infringing activities and accelerate the demise
6   of Daybreak's 25-year franchise.

7   Defendants Takahashi and Taylor, along with Does 1-20, operate under
8   pseudonyms, making traditional service of process difficult if not impossible for the
9   remaining unknown defendants. They maintain the infringing emulator through
10  websites, GitHub repositories, and a Discord server, but operate exclusively under
11  handles such as "Aporia" and "Catapultam-Habeo" without disclosing their true
12  identities. Expedited discovery is necessary to identify these defendants and halt
13  their ongoing violations before further irreparable harm occurs to Daybreak.

14  The facts demonstrating Daybreak's entitlement to emergency relief are
15  overwhelming. Defendants have systematically copied, modified, and redistributed
16  Daybreak's copyrighted material while methodically circumventing technological
17  protection measures. They have established a commercial revenue model disguised
18  as "donations" that directly profits from unauthorized use of Daybreak's intellectual
19  property. Defendants have taken such willful, illegal actions with full knowledge of
20  Daybreak's exclusive rights, as evidenced by Defendants' own statements
21  acknowledging Daybreak's ownership while attempting to justify their
22  infringement.

23  **II.    STATEMENT OF FACTS**

24  **A.    EverQuest's Legacy and Cultural Significance**

25  EverQuest has operated for 25 years as one of the most influential massively
26  multiplayer online role-playing games ("MMORPG") in history. The game
27  pioneered the MMORPG genre and created a virtual world that has connected

28

**10**

1  millions of players worldwide. Daybreak now owns and operates the EverQuest

2  franchise.

3        Since its groundbreaking release in 1999, EverQuest has established itself as

4  a cultural phenomenon and cornerstone of the MMORPG genre. Complaint ¶¶ 11-

5  12. The game's rich fantasy world of Norrath has captivated millions of players

6  worldwide, fostering deep emotional connections and creating lasting experiences

7  across generations of gamers. *Id*. ¶13. This meticulously crafted universe—

8  populated with original and distinctive characters, creatures, locations, and

9  storylines—epitomizes highly valuable intellectual property. *Id*.

10        EverQuest's extraordinary longevity—spanning more than two decades of

11  continuous operation—demonstrates remarkable staying power in the gaming

12  industry. Throughout this period, Daybreak and its predecessors continuously have

13  developed and supported EverQuest through numerous expansion packs that

14  introduced new gameplay mechanics, character classes, races, items, and

15  challenges. *Id*. ¶ 14. This consistent dedication to quality and innovation has

16  attracted and retained one of the most passionate and dedicated player communities

17  in gaming history. *Id*.

18        **B.    Daybreak's Intellectual Property Rights**

19        As the current owner and guardian of the EverQuest legacy, Daybreak owns

20  all intellectual property rights to this virtual world, including copyrights for the

21  game's intricate code, distinctive artwork, memorable characters, rich storylines,

22  and all other creative elements. *Id*. ¶ 19. Daybreak also maintains trademark

23  protection for the iconic EVERQUEST name and related marks, which have

24  become synonymous with EverQuest's groundbreaking online gaming experience.

25  *Id*. ¶ 20-21.

26        Daybreak's EverQuest is protected by numerous registered copyrights,

27  including those listed in the chart below:

28

Case No. _____
EPA FOR TRO & OSC

| Title | Reg. No. |
|---|---|
| EverQuest. | PA0000933147 |
| EverQuest. | TX0004879520 |
| EverQuest. (map) | VA0001015154 |
| Everquest, the ruins of Kunark. | PA0001001701 |
| EverqQuest : the scars of velious | PA0001077985 |
| EverQuest, shadows of Luclin. | PA0001084803 |
| EverQuest : Planes of Power. | PA0001245922 |
| EverQuest Planes of Power: Prima's official strategy guide | TX0005635557 |
| EverQuest: the ruins of Kunark/written by Brad McQuaid and Jim Lee | TX0005493741 |
| Everquest: transformation/writer, Devin Grayson; artist Philip S. Tan | TX0005593463 |
| EverQuest : Lost Dungeons of Norrath. | PA0001246135 |
| EverQuest online adventures. | PA0001245921 |
| EverQuest online adventures : Frontiers. | PA0001246134 |
| EverQuest : the legacy of Ykesha. | PA0001246139 |
| EverQuest : Gates of Discord. | PA0001256065 |
| Omens of war. | PA0001256081 |
| EverQuest atlas : the maps of Myrist / compiled by Maelin Starpyre. | TX0006058975 |
| EverQuest role-playing game: player's handbook | TX0006052320 |
| Everquest : dragons of Norrath. | PA0001259127 |
| The Shadows of Luclin | VAU000529434 |
| EverQuest: Rain of Fear *(Client-Side Code 2013)* | PA0002533309 |
| EverQuest Franchise Primer | TX0002490913 |
| Encyclopedia Norrathica – A complete and unabridged compilation of historical, geographical and theological writings of the world of EverQuest. | TX0002491692 |
| Norrathica - An edited compilation of historical, geographical and theological writings on the world | TX0002490919 |
| EverQuest: Rain of Fear *(Client-Side Code 2012)* | PA0002533846 |
| EverQuest: Rain of Fear - Server-Side Code | PA0002533847 |

**12**

| Cazic-Thule (1999) | Case No. 1-14932662144 |
|---|---|
| Cazic-Thule (2010) | Case No. 1-14932585291 |
| Lord Nagafen (1999) | Case No. 1-14932585581 |
| Lord Nagafen (2006) | Case No. 1-14932585548 |
| Lady Vox (1999) | Case No. 1-14932572631 |
| Lady Vox (2006) | Case No. 1-14932572631 |
| Innoruuk | Case No. 1-14932585515 |

*See* Declaration of Nick Janda ("Janda Decl.") ¶ 7, Ex. C; Complaint ¶ 65, Ex. A.

Daybreak also owns various federal trademark registrations for "EVERQUEST," including those listed in the chart below:

| Trademark | U.S. Reg. No. | Goods & Services (Int'l Class) | First Use |
|---|---|---|---|
| EVERQUEST | 2520693 | Metal key chains and pewter figurines (006); <br><br> Non-metal key chains and figurines made of plastic (020) | Nov. 1, 2000 |
| EVERQUEST | 2137911 | Computer and video game software (028) | June 16, 1997 |
| EVERQUEST | 2507594 | Operating a real time, role playing game for others over global and local area computer networks (041) | March 16, 1999 |
| EVERQUEST EVOLUTION | 2952622 | Computer game software and video game software (009); <br><br> Operating a real time game for others over computer networks (041) | Aug. 18, 2003 |

**13**

| | 4026845 | Computer game software and video game software; providing downloadable multiplayer, role playing, real time computer and video game software via an online website for entertainment purposes (009);<br><br>Entertainment services, namely, operating a multiplayer, role playing, real time game for others via the Internet and local area computer networks (041) | Feb. 22, 2011 |
|---|---|---|---|
| **EVERQUEST II DESTINY OF VELIOUS** | | | |
| EVERQUEST HOUSE OF THULE | 4026846 | Computer game software and video game software; providing downloadable multiplayer, role playing, real time computer and video game software via an online website for entertainment purposes (009);<br><br>Entertainment services, namely, operating a multiplayer, role playing, real time game for others via the Internet and local area computer networks (041) | Oct. 12, 2010 |
| EVERQUEST: THE RUINS OF KUNARK | 2562334 | Operating a real time, role playing game for others over global and local area computer networks (041) | April 24, 2000 |

*See* Janda Decl. ¶ 8, Ex. D; Complaint ¶ 21.

Moreover, the EVERQUEST mark (Reg. No. 2507594) is famous, incontestable and distinctive, having been continuously used in commerce since

**14**

1  1999 and having achieved widespread recognition among consumers. Complaint ¶¶

2  67, 96.

3  **C.    Defendants and their THJ Emulator**

4  Defendants operate the infringing THJ emulator under pseudonyms while

5  conducting systematic copyright infringement. Complaint ¶¶ 30, 34. THJ officially

6  launched on or about October 25, 2024. *Id.* ¶ 36.

7  Defendants Takahashi and Taylor operate under pseudonyms "Aporia" and

8  "Catapultam-Habeo," respectively, throughout their operation of THJ. Despite

9  extensive investigation, Defendants Does 1-20 remain unidentified and the true

10  names and addresses of the remaining individuals responsible for THJ remain

11  unknown to Daybreak. *See id.* ¶ 34.

12  THJ requires its users to install and run a specific version of the EverQuest

13  client, the software application that runs on a player's personal computer,

14  specifically the Rain of Fear version, which is typically obtained through

15  Daybreak's EverQuest Depot on Steam. *Id.* ¶ 41. The THJ installer then modifies

16  this legitimate client to connect to unauthorized servers rather than Daybreak's

17  official servers. Declaration of Jennifer Chan ("Chan Decl.") ¶¶ 12, 14, 15. These

18  modifications constitute unauthorized derivative works of Daybreak's copyrighted

19  software and circumvent technological measures implemented by Daybreak to

20  control access to its copyrighted works. Complaint ¶ 44.

21  By operating the THJ emulator, Defendants have engaged in systematic and

22  deliberate copyright and trademark infringement including, *inter alia*, the

23  following:

24      1.    Altering critical client-side game files to redirect server

25          communication from official Daybreak servers to unauthorized THJ

26          emulator servers. *Id.* ¶ 30(a).

27      2.    Bypassing Daybreak's account authentication system. *Id.* ¶ 30(b).

28

3.    Creating promotional materials for THJ that present EverQuest's characters, environments, and gameplay systems as if they originated with Defendants rather than Daybreak. *Id.* ¶ 30(c).

4.    Implementing patches to bypass Daybreak's authentication systems and digital rights management protections. *Id.* ¶ 30(g).

**D.    Imminent Escalation of Harm**

According to a recent website announcement, Defendants intend to release a major update to THJ as early as June 20, 2025. Janda Decl., ¶ 6, Ex. B. If not enjoined, Defendants' update to THJ will significantly (i) escalate Defendants' infringing activities and (ii) increase harm to Daybreak. Without immediate intervention by this Court, the THJ update likely will attract more users to THJ, further diverting potential and current customers from Daybreak's legitimate service and causing additional irreparable harm to Daybreak's game and intellectual property by destroying the on-going viability of the legitimate EVERQUEST franchise.

**E.    Commercial Impact and Harm to Daybreak**

Since its launch on or about October 25, 2024, THJ has attracted a significant community of users. Complaint ¶¶ 36, 47. Defendants have established a sophisticated commercial revenue model disguised as a "donation" system. *Id.* ¶ 50. Contributors who make financial payments receive digital items called "Echoes of Memory," which function as a premium currency within THJ and can be exchanged for valuable in-game items, cosmetic enhancements, and character benefits. *Id.* ¶¶ 50(b)-(c) Defendants' unauthorized use of Daybreak's intellectual property generates income for the Defendants. *Id.* ¶ 50.

Defendants' unauthorized use of Daybreak's intellectual property has resulted in, *inter alia*, the following:

diversion of current and potential customers from legitimate EverQuest services to unauthorized services;

**16**

1            dilution of Daybreak's valuable EVERQUEST marks;

2            diminished control over Daybreak's intellectual property;

3            damage to Daybreak's reputation and goodwill through association

4            with an unauthorized and potentially unstable product; and

5            financial harm to Daybreak through lost revenue.

6  The aforementioned harm represents an irreparable and existential threat to

7  the beloved EverQuest franchise, potentially bringing an end to a beloved game that

8  has thrived for 25 years.

9  **III.    LEGAL STANDARDS**

10       **A.    Legal Standard for Temporary Restraining Order**

11  A court may issue a temporary restraining order without notice to the adverse

12  party if: "(A) specific facts in an affidavit or a verified complaint clearly show that

13  immediate and irreparable injury, loss, or damage will result to the movant before

14  the adverse party can be heard in opposition; and (B) the movant's attorney certifies

15  in writing any efforts made to give notice and the reasons why it should not be

16  required." FED. R. CIV. P. 65(b)(1).

17  In evaluating TRO applications, courts analyze four factors: (1) likelihood of

18  success on the merits; (2) likelihood of irreparable harm; (3) balance of equities;

19  and (4) public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

20  Courts in the Ninth Circuit evaluate these four factors on a sliding scale, where "a

21  stronger showing of one element may offset a weaker showing of another." *All. for*

22  *the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

23  Additionally, the Ninth Circuit recognizes a variant of the *Winter* test under

24  which "serious questions going to the merits and a balance of hardships that tips

25  sharply towards the plaintiff can support issuance of a preliminary injunction, so

26  long as the plaintiff also shows that there is a likelihood of irreparable injury and

27  that the injunction is in the public interest." *Id.* at 1135 (internal quotation marks

28  omitted).

**17**

In copyright infringement cases, courts generally presume irreparable harm upon a showing of likelihood of success on the merits. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017).

### B.    Legal Standard for Expedited Discovery

Courts routinely authorize expedited discovery to identify anonymous defendants where the plaintiff makes a prima facie showing of infringement and cannot otherwise determine the defendants' identities. *See Malibu Media, LLC v. Doe*, 319 F.R.D. 299, 302 (E.D. Cal. 2016) (granting expedited discovery based on showing of good cause where defendant's identity was unknown); *see also*; *UMG Recordings, Inc. v. Doe*, No. C 08-1193 SBA, 2008 WL 4104214, at *4 (N.D. Cal. Sept. 3, 2008) (granting early discovery to identify anonymous infringers); *Arista Records LLC v. Does 1–43*, 2007 WL 4538697, at *1 (S.D. Cal. Dec. 20, 2007).

### C.    Legal Standard for Alternative Service

Federal Rule of Civil Procedure 4(f)(3) permits courts to authorize alternative means of service on foreign or anonymous defendants so long as the ordered means of service is (1) directed by the court and (2) not prohibited by international agreement. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). Due process requires that the method of service "to comport with constitutional notions of due process," meaning it must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Id.* at 1016 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

The Ninth Circuit in *Rio Properties* upheld service via email on a foreign defendant that operated an online gambling business and deliberately evaded service, finding email to be "the method of service most likely to reach [defendant]." *Id.* at 1017. Similarly, other courts in the Ninth Circuit have routinely authorized alternative service on online defendants via digital means. *See Facebook, Inc. v. Banana Ads, LLC*, No. C 11-3619 YGR, 2012 WL 1038752, at *2 (N.D. Cal. Mar.

**18**

1  27, 2012) (authorizing service by email and Facebook messaging where defendants

2  were difficult to locate, operated online, and evaded traditional service).

3  **IV.    ARGUMENT**

4      **A.    Daybreak Can Establish a Likelihood of Success on the Merits of**

5          **Its Claims**

6          **1.    Copyright Infringement**

7      To establish a *prima facie* case of copyright infringement, a plaintiff must

8  show the following: "(1) ownership of a valid copyright, and (2) copying of

9  constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel.*

10  *Serv. Co.,* 499 U.S. 340, 361 (1991).

11      Daybreak owns valid and subsisting copyrights in EverQuest. Complaint ¶

12  71, Ex. A. Daybreak's copyright registrations constitute *prima facie* evidence of the

13  validity of the copyrights and the facts stated therein. 17 U.S.C. § 410(c).

14      Defendants' extensive unauthorized copying of Daybreak's copyrighted work

15  includes six key violations:

16      Direct Copying: Defendants copied substantial portions of Daybreak's game

17      code and content. Complaint ¶ 74(a).

18      Server Emulation: Defendants created unauthorized server software that

19      reproduces Daybreak's server-side functionality. This works with the

20      modified client to recreate the complete EverQuest experience. *Id.* ¶ 74(b).

21      Client Modification: Defendants modified Daybreak's client software to

22      connect to their unauthorized servers. *Id.* ¶ 74(c).

23      Display of Copyrighted Elements: Defendants displayed Daybreak's

24      copyrighted visual elements through both client-side assets and recreated

25      server-side content. *Id.* ¶ 74(d).

26      Character Reproduction: Defendants reproduced Daybreak's distinctive

27      characters with identical or substantially similar visual designs, abilities,

28      behaviors, and backstories. *Id.* ¶ 74(e).

Case No. _____
EPA FOR TRO & OSC

1    Narrative Copying: Defendants replicated specific encounters, dialogues, and

2    narrative elements associated with these proprietary characters through their

3    emulated server environment. *Id.* ¶ 74(f).

4    THJ's comprehensive approach—modifying the client and creating emulated

5    servers—constitutes extensive copying of both client-side and server-side elements

6    of Daybreak's copyrighted work. This creates unauthorized derivative works that

7    recreate the entire EverQuest experience without authorization.

8    Visual Evidence of Direct Copying: Daybreak Employee has conducted a

9    comprehensive technical review of THJ and observed numerous instances where

10   THJ's visual elements are identical or nearly identical to EverQuest's distinctive

11   visual elements. *See* Tuanqui Decl. ¶¶ 9-13, 18-25; *see also* Ex. A-D (side-by-side

12   visual comparisons). These similarities include THJ's characters such as Lady Vox,

13   Lord Nagafen, Innoruuk, and Cazic-Thule, which have the same character designs,

14   physical characteristics, and visual effects as EverQuest's characters. Tuanqui Decl.

15   ¶ 9(a)-(d). Daybreak Employee also observed that THJ contains environmental

16   assets, user interface elements, spell effects, and narrative content that are identical

17   or nearly identical to EverQuest's corresponding elements. *Id.* ¶¶ 11-14. Based on

18   these extensive factual similarities across multiple categories of creative content,

19   the evidence establishes that THJ directly copies and uses Daybreak's protected

20   creative expression.

21   These actions constitute direct copyright infringement of Daybreak's

22   exclusive rights under 17 U.S.C. § 106, including the rights to reproduce, distribute,

23   display, and create derivative works based on its copyrighted material. Given the

24   extensive, unauthorized copying and modification of Daybreak's copyrighted

25   content, Daybreak is highly likely to succeed on its copyright infringement claims.

26

27

28

## 2.  **Digital Millennium Copyright Act Violations**

Daybreak alleges violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201, which prohibits the circumvention of technological measures that effectively control access to copyrighted works.

Daybreak employs sophisticated technological protection measures ("TPMs") that control access to EverQuest. Chan Decl. ¶¶ 4-9. These TPMs work together to ensure only authorized users can access the complete game experience. Daybreak's TPMs include four key components: (1) account creation through Daybreak's official website; (2) verification of active subscription status; (3) ongoing credential verification during gameplay; and (4) server-client architecture requiring connection to authorized Daybreak servers. *Id.* ¶¶ 5-9. THJ modifies these technological measures through a comprehensive two-pronged approach:

Client-Side Modifications: THJ modifies the EverQuest client software in several ways. It alters eqhost.txt and login.ini files to redirect connections from Daybreak's servers to THJ's servers. *Id.* ¶¶ 12. It also removes splash screens containing copyright notices. *Id.* ¶ 13. Additionally, THJ distributes an installer that automates these client-side modifications to the account authorization protocols. *Id.* ¶ 14.

Server-Side Operations: THJ creates emulated servers that reproduce Daybreak's server-side functionality, which  allows users to access the complete EverQuest experience by connecting to THJ's servers instead of Daybreak's servers. *Id.* ¶ 17-19.

Jennifer Chan, Head of Studio at Darkpaw Games (a subsidiary of Daybreak and the operator of the EverQuest franchise), will confirm that THJ's technical approach allows users to access the complete EverQuest experience through THJ's emulated servers without connecting to Daybreak's official servers or going through Daybreak's authentication systems. *Id.* ¶¶ 20-23.

Case No. _____
EPA FOR TRO & OSC

1    These technical modifications defeat the purpose of Daybreak's TPMs, which

2  are designed to ensure that only users with valid accounts and subscriptions can

3  access EverQuest content. By creating both modified clients and emulated servers,

4  THJ provides users with access to Daybreak's copyrighted EverQuest content

5  without requiring the users to authenticate through Daybreak's systems or maintain

6  active subscriptions. This comprehensive technical workaround falls squarely

7  within the prohibitions of 17 U.S.C. § 1201(a)(1)(A), which prohibits

8  circumventing technological measures that effectively control access to copyrighted

9  works.

10    Courts consistently have found DMCA violations in similar circumstances

11  involving game emulators. *See, e.g.*, *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629

12  F.3d 928, 954 (9th Cir. 2010) (finding DMCA violation where defendant's software

13  circumvented authentication mechanism used to control access to World of

14  Warcraft); *Sony Computer Ent. Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 965-

15  966 (N.D. Cal. 2006) (finding violation where defendant circumvented

16  technological protection measures in PlayStation games).

17    Given the clear evidence of comprehensive circumvention through both

18  client modification and server emulation, Daybreak is highly likely to succeed on

19  its DMCA claim.

20    **3.    Evidence of Willful Infringement**

21    The record demonstrates that Defendants engaged in willful and deliberate

22  infringement, undertaken with knowledge of Daybreak's exclusive rights. Several

23  factors establish willfulness:

24    Knowledge of EverQuest and Its Rights Structure: The sophistication and

25  accuracy of THJ's recreation of EverQuest's complex systems, characters, and

26  content demonstrates that Defendants are intimately familiar with the game. Such

27  detailed knowledge necessarily includes awareness of Daybreak's intellectual

28

**22**

property ownership, which is prominently displayed throughout the game and in required legal agreements.

End User License Agreements "EULA" Violations: To access EverQuest content and understand the systems they replicated, Defendants necessarily obtained and used EverQuest client software, requiring acceptance of EULA that explicitly establish Daybreak's ownership of all intellectual property rights and specifically prohibit "creating any means through which the Game may be played by others, such as through server emulators." Janda Decl., Ex. A.

Comprehensive Nature of Infringement: The systematic and comprehensive recreation of EverQuest's client-server architecture, character systems, user interface, and distinctive content demonstrates deliberate copying rather than inadvertent similarity. The technical complexity required to create a functioning emulator indicates intentional, sustained, and systematic efforts to reproduce Daybreak's copyrighted works.

Commercial Operation: Despite knowledge of Daybreak's rights, Defendants established a sophisticated revenue model through their "donation" system, directly profiting from unauthorized use of Daybreak's intellectual property. This commercial exploitation demonstrates willful infringement for financial gain.

Use of Pseudonyms: Takahashi and Taylor operate under pseudonyms ("Aporia" and "Catapultam-Habeo," respectively) rather than their real identities, and DOES 1-20 remain completely unidentified. While the use of online handles is common, operating a large-scale commercial venture infringing well-known intellectual property while avoiding identification suggests awareness of potential legal consequences.

Defendants' willful infringement weighs heavily in favor of granting emergency injunctive relief. *See Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) (affirming preliminary injunction where defendant knowingly engaged in copyright infringement).

23

### 4.   **Other Claims**

In addition to copyright and DMCA claims, Daybreak is likely to succeed on breach of contract and unfair competition claims.

**Breach of Contract:** Defendants breached the EverQuest User Agreement and Software License by creating and operating THJ. The sophisticated recreation of EverQuest's systems demonstrates that Defendants obtained and used the EverQuest client software, which requires users to accept binding contractual terms. *See* Janda Decl., Ex. A.

The EULA contains multiple provisions that Defendants violated:

*Software License Restrictions:* Section 7 prohibits users from copying, distributing, modifying, or creating derivative works of the Software. Defendants systematically violated these restrictions by modifying the EverQuest client and distributing their modifications to THJ users. *Id.*

*Server Emulator Prohibition:* Section 9 specifically prohibits users from creating "any other means through which the Game may be played by others, such as through server emulators." *Id.* THJ is precisely the type of server emulator explicitly prohibited by this provision.

*Third-Party Software Restriction:* Section 9 also prohibits using "any third party software to modify the Software to change Game play." *Id.* Defendants' THJ installer modifies the EverQuest client software to redirect server connections, directly violating this provision.

*IP Ownership Recognition:* Section 8 establishes that SOE (now Daybreak) retains "all rights, title and interest, including, without limitation, ownership of all intellectual property rights relating to or residing in the Disc, the Software and the Game." *Id.* By creating THJ, Defendants breached their acknowledgment of Daybreak's exclusive IP ownership.

24

1    Unfair Competition under Federal and California Law: Defendants' conduct
2    constitutes unfair competition under both the Lanham Act, 15 U.S.C. § 1125(a) and
3    California Business and Professions Code § 17200.

4    *Lanham Act Violation:* Defendants engage in commercial activity that
5    misrepresents the nature and origin of their services. By operating THJ using
6    Daybreak's copyrighted content and characters while establishing their own
7    commercial revenue system, Defendants misrepresent the source and authorization
8    of the gaming experience they provide. This commercial misrepresentation in
9    interstate commerce violates 15 U.S.C. § 1125(a).

10    *California Unfair Competition:* Defendants' conduct violates California's
11    prohibition against "unlawful, unfair or fraudulent" business practices. Cal. Bus. &
12    Prof. Code § 17200. Their systematic violation of contract terms, copyright
13    infringement, and DMCA circumvention constitute "unlawful" business practices.
14    Additionally, their commercial exploitation of Daybreak's intellectual property
15    while evading the licensing and contractual requirements that govern legitimate
16    competitors constitutes "unfair" business practices that harm both Daybreak and
17    legitimate market competition.

18    The evidence of contractual violations and anticompetitive conduct,
19    combined with THJ's systematic infringement, strongly supports finding that
20    Daybreak is likely to succeed on these additional claims.

21    The evidence of direct copying, modification, and distribution of Daybreak's
22    copyrighted material, combined with THJ's circumvention of technological
23    protection measures and willful nature of the infringement, strongly supports a
24    finding that Daybreak is likely to succeed on the merits of its claims.

25    **B.    <u>Daybreak Will Suffer Immediate and Irreparable Harm Without</u>**
26    **<u>Emergency Relief</u>**

27

28

25

1  Irreparable harm is harm that cannot be adequately remedied by money

2  damages. *See Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944

3  F.2d 597, 603 (9th Cir. 1991).

4  Daybreak faces immediate and irreparable harm that cannot be remedied by

5  monetary damages and requires emergency intervention as set forth below.

6  **1.    Loss of Control Over its Intellectual Property**

7  THJ undermines Daybreak's ability to control the quality and content of

8  services provided under the EVERQUEST mark. Complaint ¶ 68(b). As the Ninth

9  Circuit has recognized, "loss of control over business reputation and damage to

10  goodwill" constitutes irreparable harm. *Herb Reed Enterprises, LLC v. Fla. Ent.*

11  *Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).

12  THJ operates without Daybreak's quality assurance and security controls.

13  Complaint ¶ 68(b). This exposes players to potential security vulnerabilities,

14  gameplay imbalances, and other issues that could reflect poorly on the EverQuest

15  brand. If players have negative experiences with THJ, they may attribute those

16  negative experiences to the EverQuest franchise as a whole, damaging Daybreak's

17  reputation and goodwill in ways that cannot be quantified or repaired with

18  monetary damages.

19  **2.    Measurable User Base Decline Threatens Game Viability**

20  As detailed in the Chan Decl., the launch of THJ has directly caused measurable

21  harm to Daybreak's EverQuest business. Statistical analysis of player activity

22  demonstrates a clear correlation between THJ's growth and the decline in official

23  EverQuest server populations:

24  Monthly active users on official EverQuest servers declined by

25  approximately ███ between November 2024 and April 2025, representing a

26  loss of approximately ████ active monthly users. Chan Decl. ¶ 25.

27

28

26

Daily active users on official servers have dropped by approximately ██% during this period, with peak concurrent users dropping from an average of approximately ████ users to approximately ████ users. *Id.* ¶ 26.

Analysis of player yearly engagement patterns confirms that this decline is not attributable to normal seasonal fluctuations, holiday patterns, content cycles, or other typical market factors, but directly correlates with THJ's launch and growth. *Id.* ¶ 27.

Based on current trajectory analysis, EverQuest requires a minimum of approximately ████ monthly active users to maintain economic viability while providing adequate server infrastructure, customer support, and ongoing development. Current trends indicate this critical threshold will be breached by ████████. *Id.* ¶¶ 27, 28.

These metrics demonstrate that the harm is not merely hypothetical but is ongoing and quantifiable. The data also shows an accelerating trend, highlighting the urgent need for emergency relief.

### 3.   Existential Threat to the EverQuest Franchise

The operation of THJ represents an existential threat to the EverQuest franchise. As players migrate from official servers to THJ, the official player community dwindles, diminishing the social experience that is central to an MMORPG. This creates a negative feedback loop: as more players leave official servers, the experience degrades for those who remain, incentivizing even more departures. Once this process begins, it can be extremely difficult to reverse, potentially leading to the end of a franchise that has thrived for 25 years.

This risk is particularly acute given the announced major update to THJ scheduled for approximately June 20, 2025. Janda Decl. ¶ 6, Ex. B. This update is likely to attract even more players to THJ, accelerating the damage to Daybreak's business and potentially reaching a tipping point beyond which recovery becomes impossible.

Case No. _____
EPA FOR TRO & OSC

### 4.    Incalculable Financial Harm

While financial harm alone may not constitute irreparable harm, the financial impact in this case is so significant and difficult to calculate that it contributes to the irreparable nature of the harm. As detailed in the Chan Decl., the financial impact of THJ extends beyond direct subscription losses to include interconnected effects on expansion pack sales, in-game purchases, merchandise sales, and licensing opportunities. Chan Decl. ¶ 31(c).

Ms. Chan, executive producer for EverQuest, has identified significant challenges in precisely quantifying the full economic impact, which includes indirect effects such as network effects, community value, brand impact, and lost future opportunities that extend beyond direct revenue measurements. *Id.* ¶ 31. Additionally, historical data shows that once MMORPG players migrate to competing services and establish new social connections, they typically do not return even if the competing service is later removed, making the community-based value of EverQuest difficult to restore through monetary compensation. *Id.* ¶¶ 29, 32(a).

Due to the complexity of the gaming ecosystem and the indirect effects on player behavior mentioned by Ms. Chan, it is impossible to precisely quantify the full financial impact, rendering monetary damages an inadequate remedy. The harm to EverQuest's brand reputation and player community value, combined with the cascading effects throughout Daybreak's business model, constitutes irreparable harm that cannot be adequately compensated through monetary awards.

These harms are ongoing and will escalate sharply upon release of THJ's June 20, 2025 update, which threatens to increase traffic to the infringing platform and accelerate the migration of users.

### C.    The Balance of Equities Tips Sharply in Daybreak's Favor

Case No. _____
EPA FOR TRO & OSC

1    When balancing the equities, the Court weighs "the competing claims of

2  injury" and considers "the effect on each party of the granting or withholding of the

3  requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks omitted).

4    The balance tips sharply in Daybreak's favor. Daybreak faces potential

5  destruction of intellectual property it has developed and maintained for over two

6  decades. THJ's continued operation threatens Daybreak's control over its IP, its

7  reputation, and the franchise's existence.

8    On the other hand, Defendants would be enjoined from continuing infringing

9  activities that they had no legal right to undertake in the first place. As the Ninth

10  Circuit has noted, a defendant who knowingly infringes another's copyright "cannot

11  complain of the harm that will befall it when properly forced to desist from its

12  infringing activities." *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th

13  Cir. 1995).

14    The potential harm to Daybreak from continued infringement far outweighs

15  any inconvenience to Defendants from being enjoined. Daybreak risks the collapse

16  of its franchise; Defendants risk losing the ability to continue unlawful conduct.

17  Any financial harm to Defendants is self-inflicted and not cognizable. *See id.*

18    **D.    A Temporary Restraining Order is in the Public Interest**

19    The final factor to consider is whether emergency relief would serve the

20  public interest. In intellectual property cases, there is a public interest in upholding

21  the protections afforded by copyright law. *See Apple Inc. v. Psystar Corp.*, 673 F.

22  Supp. 2d 943, 950 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011).

23    Emergency relief serves the public interest in multiple ways. It upholds the

24  integrity of copyright law by preventing unauthorized use of intellectual property. It

25  preserves the genuine EverQuest experience for legitimate players. It maintains

26  quality and security standards that protect consumers. Lastly, it ensures that creators

27  of intellectual property can recoup their investments and continue to innovate.

28

Case No. _____
EPA FOR TRO & OSC

**E.    Necessity of Expedited Discovery**

While Daybreak has identified Defendants Takahashi and Taylor, expedited discovery remains essential to identify Defendants Does 1-20 who continue to operate under pseudonyms. The coordinated nature of THJ's development indicates multiple participants whose identities remain unknown despite extensive investigation.

**1.    Defendants Operate Under Pseudonyms**

While Plaintiff has identified Takahashi and Taylor as operating under the aliases "Aporia" and "Catapultam-Habeo," Defendants Does 1-20 continue to operate under pseudonyms throughout their THJ operation and remain unknown. Despite conducting a substantial commercial operation generating revenue through their "donation" system, Defendants have not publicly disclosed their real identities, making traditional service of process impossible. The scale and sophistication of THJ indicates that THJ is not a casual hobby project but a significant commercial enterprise, yet the responsible parties remain anonymous.

Investigation has failed to identify all Defendants. Despite diligent efforts that successfully identified Takahashi and Taylor, Daybreak has been unable to determine the true names, addresses, or locations of the remaining individuals operating THJ. Traditional investigation methods are insufficient when defendants operate exclusively under pseudonyms in online environments.

**2.    Need to Identify Defendants for Effective Relief**

Without knowing all Defendants' identities, relief would be incomplete. Daybreak cannot effectively enforce a TRO granted against partially identified defendants and remaining unnamed Defendants Does 1-20 operating under pseudonyms. Proper service requires identification of real parties in interest.

The ongoing infringement continues to cause accelerating harm while Defendants Does 1-20 remain anonymous. Each day of delay allows continued

Case No. _____
EPA FOR TRO & OSC

1  copyright infringement, revenue diversion, and irreparable damage to Daybreak's

2  franchise while the responsible parties remain hidden.

3       Traditional discovery timelines are inadequate given the urgent need for

4  relief and the risk that Defendants may destroy evidence, move evidence outside the

5  jurisdiction of U.S. courts, or cease operations once they learn of this litigation.

6       **3.    Risk of Evidence Destruction and Relocation and Continued**

7            **Harm**

8       The online nature of THJ creates inherent risks of evidence destruction. THJ

9  operates through entirely digital infrastructure. GitHub repositories, Discord

10 servers, websites, and other digital infrastructure can be deleted instantly,

11 destroying critical evidence of infringement. Unlike physical businesses, online

12 operations can disappear without trace, making prompt action essential. Defendants

13 could easily alter or delete crucial evidence. Specifically, Defendants could:

14       Delete or modify GitHub repositories containing THJ's source code and

15       development history, eliminating key evidence of copying and

16       circumvention;

17       Alter their online presence by changing websites, Discord servers, or other

18       platforms to remove infringing content or evidence of their operation;

19       Hide transaction records from their "donation" system by modifying payment

20       processing arrangements or deleting financial data; and

21       Modify or destroy communications that might reveal their identities or

22       demonstrate knowledge of infringement.

23 Such actions further would prevent Daybreak from gathering crucial evidence

24 needed to prove its claims and identify the responsible parties.

25       Defendants easily can modify their operation to evade future legal action. The

26 pseudonymous nature of their operation means that Defendants could potentially

27 cease current activities and restart under different handles or through different

28 platforms, making current enforcement opportunities time-sensitive. Unlike

Case No. _____
EPA FOR TRO & OSC

physical evidence, digital infrastructure can be instantly relocated outside of the U.S. THJ's entire operation can be moved to offshore hosting providers or foreign jurisdictions within hours.

Continued operation causes accelerating harm. Each day of delay allows continued copyright infringement, player migration, and revenue diversion while the responsible parties remain unidentified and unserved. The announced June 20, 2025 update threatens to substantially escalate this harm.

### 4.    **Expedited Discovery Factors Support Relief**

The factors courts consider for expedited discovery all support granting the requested relief:

(1)    Preliminary injunction is being sought: This TRO application demonstrates the urgent need for immediate relief, supporting expedited procedures.

(2)    Breadth of discovery requests: The requested discovery is narrowly tailored to identifying information necessary for service and relief, not broad fishing expeditions.

(3)    Purpose for expedited discovery: The sole purpose is to identify remaining anonymous Defendants Does 1-20 conducting systematic infringement so that these defendants can be served and enjoined.

(4)    Burden on defendants: The burden is minimal - third parties possess the identifying information, and Defendants Does 1-20 created this situation by deliberately concealing their identities.

(5)    Timing of request: This request is made promptly upon filing, as Daybreak discovered Defendants' identity concealment during pre-filing investigation.

Expedited discovery is routinely granted to identify unknown defendants in intellectual property cases. The combination of ongoing infringement,

Case No. _____
EPA FOR TRO & OSC

pseudonymous operation, and need for immediate relief supports expedited procedures to identify defendants for service and enforcement of any relief granted.

### 5.    <u>Specific Discovery Needed</u>

To identify Defendants Does 1-20, Daybreak requires expedited discovery from third parties including:

(a) Domain and Hosting Information:

WHOIS records for heroesjourneyemu.com and related domains;

Web hosting provider records identifying account holders; and

Payment information for domain registration and hosting services.

(b) Platform Account Information:

GitHub account information for "The-Heroes-Journey-EQEMU" repository;

Discord server administration and user account data; and

Any other platforms used to distribute or promote THJ.

(c) Payment Processing Records:

Records from payment processors handling THJ's "donation" system;

Financial account information linked to THJ revenue; and

Transaction records showing payments to THJ operators.

(d) IP Address and Technical Data:

Server logs and IP address information;

Technical infrastructure data showing THJ's operation; and

Any data linking pseudonymous accounts to real identities.

This information is possessed by third parties and cannot be obtained through traditional discovery directed at the remaining unknown defendants.

### F.    <u>Alternative Service is Appropriate</u>

Here, traditional service is impossible because Defendants Does 1-20 deliberately conceal their identities while operating and contributing to THJ under pseudonyms. Despite conducting a sophisticated, coordinated, and extensive

33

1  commercial operation, these defendants have not disclosed their real names,

2  addresses, or locations, making conventional service futile.

3      Alternative service through THJ's operational platforms—including posting

4  on their website, Discord server, and GitHub repository—is reasonably calculated

5  to provide notice because these are the primary channels through which Defendants

6  Does 1-20 conduct their infringing activities and communicate with users. Courts

7  have approved such digital methods where they are the only reliable means of

8  reaching online defendants. *See Rio Props.*, 284 F.3d at 1016–17 (email proper

9  where it was "reasonably calculated" to notify the defendant); *Banana Ads*, 2012

10 WL 1038752, at *2–3 (email and Facebook messaging reasonably calculated to

11 provide notice).

12     Given the urgent need for relief before THJ's announced June 20, 2025

13 update and the impossibility of traditional service, alternative service is both

14 necessary and constitutionally sufficient under Rule 4(f)(3) and Ninth Circuit

15 precedent.

16 **V.    CONCLUSION AND RELIEF SOUGHT**

17     For the foregoing reasons, Daybreak respectfully requests that the Court:

18 **A. Enter a Temporary Restraining Order**

19     Issue a temporary restraining order that takes effect immediately upon entry

20 and shall remain in effect until the Order to Show Cause hearing. The temporary

21 restraining order shall enjoin Defendants, and all persons acting in concert with

22 them, from:

23     1.    Developing, operating, hosting, maintaining, updating,

24 modifying, distributing, advertising, marketing, promoting, or otherwise

25 making available any software, server, service, emulator, installer, launcher,

26 or tool that reproduces, derives from, or facilitates access to Plaintiff's

27 copyrighted EverQuest content, including but not limited to The Heroes'

28 Journey;

**34**

2.      Providing support, updates, bug fixes, community engagement, technical assistance, or instructions related to the installation, use, or configuration of any such infringing material;

3.      Operating, maintaining, or directing others to any Discord server, forum, website, or social media account used to promote or support the infringing emulator or related tools

4.      Circumventing technological measures that effectively control access to Daybreak's copyrighted works; and

5.      Using the EVERQUEST Mark or any confusingly similar variations thereof; and

**B. Third Party Cooperation**

Direct that this Order may be served upon:

1.      GitHub, Inc. and any other hosting platforms;

2.      Third-party payment processors facilitating the processing of "donations";

3.      Any third-party services hosting or distributing the infringing material; and

4.      Domain registrars and web hosting services as necessary.

**C. Preservation of Evidence**

Order Defendants to:

1.      Preserve all records, communications, and documentation related to the development, operation, hosting, including server logs, maintenance, updating, modification, distribution, advertising, marketing, and promotion of "The Heroes' Journey";

2.      Maintain copies of all relevant source code, commit histories, and version control records; and

3.      Refrain from destroying or altering any evidence related to the alleged infringement

**D. Asset Preservation.**

Restrain Defendants from:

1.  Transferring or disposing of any assets derived from the infringement; and

2.  Collecting or distributing any revenue generated from the unauthorized use.

**E. Grant Expedited Discovery Order**

Authorize expedited discovery to identify the true names and addresses of remaining unknown Defendants, including:

1.  Subpoenas to third parties including web hosting companies, domain registrars, GitHub, Discord, payment processors, and other service providers to obtain identifying information for the remaining unknown operators of THJ (Defendants Does 1-20);

2.  WHOIS data and IP address information for heroesjourneyemu.com and related domains;

3.  Account information from GitHub, Discord, and other platforms used by Defendants;

4.  Payment processing records related to THJ's "donation" system; and

5.  Any other discovery necessary to identify Does' 1-20 true identities and locations.

**F. Authorize Alternative Service**

Authorize service of process on Does 1-20 by alternative means, including:

1.  Service by posting on THJ's website and Discord server;

2.  Service by email to known addresses associated with THJ;

3.  Service through GitHub and other platforms used by Defendants; and

4.  Service by publication if necessary.

**G. Set Bond and Schedule OSC Hearing**

    1.    Set bond in the amount of $5,000 pursuant to Federal Rule of Civil Procedure 65(c);

    2.    Schedule an Order to Show Cause hearing within ten (10) days regarding why a preliminary injunction should not be granted on the same grounds set forth herein; and

Grant such other relief as the Court deems just and proper.

Dated:  June 10, 2025        Respectfully submitted,

DENTONS US LLP

By: *Nicholas B. Janda*
    Nicholas B. Janda
    Daniel A. Schnapp (*pro hac vice* pending)
    Monica B. Richman (*pro hac vice* pending)
    Mary Kate Brennan (*pro hac vice* pending)

*Attorneys for Plaintiff*
*DAYBREAK GAME COMPANY, LLC*

Case No. _____
EPA FOR TRO & OSC

## CERTIFICATE REGARDING NOTICE

I hereby certify that no notice of this application has been given to Defendants. Although Defendants Takahashi and Taylor have been identified, no notice has been provided because: (1) the June 20, 2025 update announcement creates an imminent emergency requiring immediate intervention; (2) providing notice would likely result in destruction of evidence, including deletion of GitHub repositories, Discord servers, and other digital infrastructure that can be eliminated instantly; (3) Defendants have demonstrated their intent to evade legal accountability by operating under pseudonyms despite conducting a large-scale commercial operation; (4) providing notice to any defendants would likely alert all co-conspirators, including the unidentified Defendants Does 1-20, potentially causing them to cease operations or destroy evidence before they can be identified and served; and (5) providing notice would likely prompt defendants to immediately transfer their digital infrastructure, financial assets, and operations to foreign jurisdictions beyond this Court's practical reach.

Dated:  June 10, 2025

Respectfully submitted,

DENTONS US LLP


By: *Nicholas B. Janda*
    Nicholas B. Janda
    Monica B. Richman (*pro hac vice* pending)
    Daniel A. Schnapp (*pro hac vice* pending)
    Mary Kate Brennan (*pro hac vice* pending)

    *Attorneys for Plaintiff*
    *DAYBREAK GAME COMPANY, LLC*

Case No. _____
EPA FOR TRO & OSC