1   NICHOLAS B. JANDA (SBN 253610)
    nick.janda@dentons.com
2   DENTONS US LLP
    601 South Figueroa Street, Suite 2500
3   Los Angeles, California 90017-5704
    Telephone: (213) 623-9300
4   Facsimile: (213) 623-9924

5   MONICA B. RICHMAN (*pro hac vice* pending)
    monica.richman@dentons.com
6   DANIEL A. SCHNAPP (*pro hac vice* pending)
    daniel.schnapp@dentons.com
7   MARY KATE BRENNAN (*pro hac vice* pending)
    marykate.brennan@dentons.com
8   DENTONS US LLP
    1221 Avenue of the Americas
9   New York, New York 10020-1089
    Telephone: (212) 768-6700
10  Facsimile: (212) 768-6800

11  *Attorneys for Plaintiff*
    *DAYBREAK GAME COMPANY LLC*
12

13              **UNITED STATES DISTRICT COURT**

14              **SOUTHERN DISTRICT OF CALIFORNIA**

15  DAYBREAK GAME COMPANY LLC,      Case No. 3:25-cv-01489-BAS-BLM
16
17              Plaintiff,          **PLAINTIFF'S AMENDED**
                                    **APPLICATION FOR A**
18        v.                        **TEMPORARY RESTRAINING**
                                    **ORDER AND ORDER TO SHOW**
19  KRISTOPHER TAKAHASHI, *et al.*,  **CAUSE WHY A PRELIMINARY**
                                    **INJUNCTION SHOULD NOT**
20              Defendants.          **ISSUE**
21
22                                   **NO ORAL ARGUMENT UNLESS**
                                    **ORDERED BY THE COURT**
23
24                                   **Hearing Date:  July 18, 2025**
25
26
27
28

TO THE COURT AND ALL PARTIES:

PLEASE TAKE NOTICE that Plaintiff Daybreak Game Company LLC ("Daybreak") hereby applies for a Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction pursuant to Fed. R. Civ. P. 65 to be heard on July 18, 2025 or as soon thereafter as the matter may be heard.

Daybreak seeks immediate emergency relief restraining Defendants and all persons acting in concert with them from continuing their ongoing copyright infringement and DMCA violations that are causing immediate and irreparable harm to Daybreak's business and intellectual property.

Daybreak makes this Application on the grounds that Defendants are operating "The Heroes' Journey" ("THJ") emulator in direct violation of Daybreak's intellectual property rights, causing immediate and continuing irreparable harm that cannot be compensated by monetary damages alone. The need for immediate relief is urgent because Defendants have announced plans to release a major update to the infringing THJ emulator **as early as Friday, June 20, 2025**, which will substantially escalate their infringing activities and cause exponentially greater harm to Daybreak.

This Application is based on this Notice, the accompanying Memorandum of Points and Authorities, the Second TRO Declaration of Nicholas B. Janda (authenticating documents), the Declaration of Jennifer Chan, the Declaration of Walter Tuanqui, all pleadings and papers on file in this action, all matters of which the Court may take judicial notice, and any such other evidence and argument as may be presented at the time of the hearing.

Case No. 3:25-cv-01489-BAS-BLM
AMENDED TRO APPLICATION

1    Dated: June 16, 2025             Respectfully submitted,

2                                        DENTONS US LLP

3                                        By: *Nicholas B. Janda*

4                                           Nicholas B. Janda

5                                           Monica B. Richman (*pro hac vice* pending)

6                                           Daniel E. Schnapp (*pro hac vice* pending)

                                             Mary Kate Brennan (*pro hac vice* pending)

7                                      *Attorneys for Plaintiff*

8                                      *DAYBREAK GAME COMPANY, LLC*

1

# **TABLE OF CONTENTS**

2   I.      INTRODUCTION AND URGENCY OF RELIEF SOUGHT ......................6

3   II.     STATEMENT OF FACTS..........................................................................8

4          A.     EverQuest's Legacy and Cultural Significance ....................................8

5          B.     Daybreak's Intellectual Property Rights...............................................9

6          C.     Defendants and their THJ Emulator .....................................................9

7

8          D.     Imminent Escalation of Harm...............................................................10

9          E.     Commercial Impact and Harm to Daybreak ........................................11

10  III.    LEGAL STANDARD FOR TEMPORARY RESTRAINING ORDER.......11

11  IV.     ARGUMENT .............................................................................................12

12         A.     Daybreak Can Establish a Likelihood of Success on the Merits.........12

13                1.     Copyright Infringement .................................................12

14                2.     Digital Millennium Copyright Act Violations ...........................14

15                3.     Evidence of Willful Infringement...............................................16

16                4.     Other Claims.................................................................................17

17

18         B.     Daybreak Will Suffer Immediate and Irreparable Harm Without
                  Emergency Relief..................................................................................19

19                1.     Loss of Control Over its Intellectual Property ..........................19

20

21                2.     Measurable User Base Decline Threatens Game Viability.......19

22                3.     Existential Threat to the EverQuest Franchise ..........................20

23                4.     Incalculable Financial Harm.......................................................20

24         C.     The Balance of Equities Tips Sharply in Daybreak's Favor ...............21

25         D.     A Temporary Restraining Order is in the Public Interest....................22

26  V.      CONCLUSION ..........................................................................................22

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*All. for the Wild Rockies v. Cottrell*,
   632 F.3d 1127 (9th Cir. 2011) ........................................................... 12

*Apple Inc. v. Psystar Corp.*,
   673 F. Supp. 2d 943 (N.D. Cal. 2009),
   *aff'd*, 658 F.3d 1150 (9th Cir. 2011) .................................................. 22

*Cadence Design Sys., Inc. v. Avant! Corp.*,
   125 F.3d 824 (9th Cir. 1997) .............................................................. 17

*Disney Enters., Inc. v. VidAngel, Inc.*,
   869 F.3d 848 (9th Cir. 2017) .............................................................. 12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991) ............................................................................ 12

*Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ........................................................... 19

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
   629 F.3d 928 (9th Cir. 2010) .............................................................. 15

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 1991) .............................................................. 19

*Sony Computer Ent. Am., Inc. v. Divineo, Inc.*,
   457 F. Supp. 2d 957 (N.D. Cal. 2006) ............................................... 15

*Triad Sys. Corp. v. Se. Express Co.*,
   64 F.3d 1330 (9th Cir. 1995) .............................................................. 22

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .......................................................................... 12, 21

**Statutes**

17 U.S.C. § 106 ........................................................................................ 14

17 U.S.C. § 410(c) .................................................................................... 12

California Business and Professions Code § 17200 ................................. 18

Digital Millennium Copyright Act, 17 U.S.C. § 1201 .............. 14, 15, 17, 19

Lanham Act, 15 U.S.C. § 1125(a) ............................................................ 18

**Other Authorities**

Fed. R. Civ. P. 65(b)(1) ............................................................................ 12

Fed. R. Civ. P. 65(c) ................................................................................. 22

Case No. 3:25-cv-01489-BAS-BLM
AMENDED TRO APPLICATION

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION AND URGENCY OF RELIEF SOUGHT

3
4
5
6
7

For 25 years, EverQuest has stood as one of the most influential and enduring massively multiplayer online role-playing games in history. Now, that legacy faces an existential threat. Defendants systematically infringe Daybreak's intellectual property rights by operating "The Heroes' Journey" ("THJ"), an unauthorized emulator of EverQuest.

8
9

Below are just a few examples of Defendants' blatant copying of Daybreak's intellectual property:

10
11

| Daybreak's EverQuest | Defendants' THJ |
|---|---|
|  |  |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28









*See also* Declaration of Walter Tuanqui ("Tuanqui Decl.") ¶¶ 24, 30, 36.

**Daybreak requires immediate relief**. Each day of delay allows Defendants to continue diverting players and revenue from Daybreak's legitimate EverQuest service, causing escalating and irreparable harm. Moreover, Defendants have announced plans to release a major update to THJ on or about **June 20, 2025**, which substantially will expand their infringing activities and accelerate the demise of Daybreak's 25-year franchise.

The facts overwhelmingly demonstrate Daybreak's entitlement to emergency relief. Defendants have systematically copied, modified, and redistributed Daybreak's copyrighted material while methodically circumventing technological protection measures. They have established a commercial revenue model disguised as "donations" that directly profits from unauthorized use of Daybreak's intellectual property. Defendants have taken such willful, illegal actions with full knowledge of Daybreak's exclusive rights, as evidenced by Defendants' own statements acknowledging Daybreak's ownership while attempting to justify their infringement.

## II.  STATEMENT OF FACTS

### A.  EverQuest's Legacy and Cultural Significance

EverQuest has operated for 25 years as one of the most influential massively multiplayer online role-playing games ("MMORPG") in history. The game pioneered the MMORPG genre and created a virtual world that has connected millions of players worldwide. Daybreak now owns and operates the EverQuest franchise.

Since its groundbreaking release in 1999, EverQuest has established itself as a cultural phenomenon and cornerstone of the MMORPG genre. Complaint ¶¶ 11-12. The game's rich fantasy world of Norrath has captivated millions of players worldwide, fostering deep emotional connections and creating lasting experiences across generations of gamers. *Id*. ¶13. This meticulously crafted universe—

populated with original and distinctive characters, creatures, locations, and storylines—epitomizes highly valuable intellectual property. *Id*.

EverQuest's extraordinary longevity—spanning more than two decades of continuous operation—demonstrates remarkable staying power in the gaming industry. Throughout this period, Daybreak and its predecessors continuously have developed and supported EverQuest through numerous expansion packs that introduced new gameplay mechanics, character classes, races, items, and challenges. *Id*. ¶ 14. This consistent dedication to quality and innovation has attracted and retained one of the most passionate and dedicated player communities in gaming history. *Id*.

## B.    Daybreak's Intellectual Property Rights

As the current owner and guardian of the EverQuest legacy, Daybreak owns all intellectual property rights to this virtual world, including copyrights for the game's intricate code, distinctive artwork, memorable characters, rich storylines, and all other creative elements. *See* Second TRO Declaration of Nick Janda ("Janda Decl.") ¶ 7, Ex. C; Complaint ¶ 65, Ex. A.

Daybreak also maintains trademark protection for the iconic EVERQUEST name and related marks, which have become synonymous with EverQuest's groundbreaking online gaming experience. *See* Janda Decl. ¶ 8, Ex. D; Complaint ¶ 21. Moreover, the EVERQUEST mark (Reg. No. 2507594) is famous, incontestable, and distinctive, having been continuously used in commerce since 1999 and having achieved widespread recognition among consumers. Complaint ¶¶ 67, 96.

## C.    Defendants and their THJ Emulator

Defendants operate the infringing THJ emulator under pseudonyms while conducting systematic copyright infringement. *Id*. ¶¶ 30, 34. THJ officially launched on or about October 25, 2024. *Id*. ¶ 36.

Defendants Takahashi and Taylor operate under pseudonyms "Aporia" and "Catapultam-Habeo," respectively, throughout their operation of THJ. Despite extensive investigation, Defendants Does 1-20 remain unidentified and the true names and addresses of the remaining individuals responsible for THJ remain unknown to Daybreak. *See id*. ¶ 34.

THJ requires its users to install and run a specific version of the EverQuest client, the software application that runs on a player's personal computer, specifically the Rain of Fear version, which is typically obtained through Daybreak's EverQuest Depot on Steam. *Id*. ¶ 41. The THJ installer then modifies this legitimate client to connect to unauthorized servers rather than Daybreak's official servers. Declaration of Jennifer Chan ("Chan Decl.") ¶¶ 12, 14, 15. These modifications constitute unauthorized derivative works of Daybreak's copyrighted software and circumvent technological measures implemented by Daybreak to control access to its copyrighted works. Complaint ¶ 44.

By operating the THJ emulator, Defendants have engaged in systematic and deliberate copyright and trademark infringement including, *inter alia*, the following: (i) altering critical client-side game files to redirect server communication from official Daybreak servers to unauthorized THJ emulator servers; (ii) bypassing Daybreak's account authentication system; (iii) creating promotional materials for THJ that present EverQuest's characters, environments, and gameplay systems as if they originated with Defendants rather than Daybreak; and (iv) implementing patches to bypass Daybreak's authentication systems and digital rights management protections. *Id*. ¶ 30.

## D.    Imminent Escalation of Harm

According to a recent website announcement, Defendants intend to release a major update to THJ as early as June 20, 2025. Janda Decl., ¶ 6, Ex. B. If not enjoined, Defendants' update to THJ will significantly (i) escalate Defendants' infringing activities and (ii) increase harm to Daybreak. Without immediate

intervention by this Court, the THJ update likely will attract more users to THJ, further diverting potential and current customers from Daybreak's legitimate service and causing additional irreparable harm to Daybreak's game and intellectual property by destroying the on-going viability of the legitimate EVERQUEST franchise.

### E.     Commercial Impact and Harm to Daybreak

Since its launch on or about October 25, 2024, THJ has attracted a significant community of users. Complaint ¶¶ 36, 47. Defendants have established a sophisticated commercial revenue model disguised as a "donation" system. *Id*. ¶ 50. Contributors who make financial payments receive digital items called "Echoes of Memory," which function as a premium currency within THJ and can be exchanged for valuable in-game items, cosmetic enhancements, and character benefits. *Id*. ¶¶ 50(b)-(c) Defendants' unauthorized use of Daybreak's intellectual property generates income for the Defendants. *Id*. ¶ 50.

Defendants' unauthorized use of Daybreak's intellectual property has resulted in, *inter alia*, the following: (i) diversion of current and potential customers from legitimate EverQuest services to unauthorized services; (ii) dilution of Daybreak's valuable EVERQUEST marks; (iii) diminished control over Daybreak's intellectual property; (iv) damage to Daybreak's reputation and goodwill through association with an unauthorized and potentially unstable product; and (v) financial harm to Daybreak through lost revenue.

The aforementioned harm represents an irreparable and existential threat to the beloved EverQuest franchise, potentially bringing an end to a beloved game that has thrived for 25 years.

## III.    LEGAL STANDARD FOR TEMPORARY RESTRAINING ORDER

A court may issue a temporary restraining order without notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before

the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65(b)(1).

In evaluating TRO applications, courts analyze four factors: (i) likelihood of success on the merits; (ii) likelihood of irreparable harm; (iii) balance of equities; and (iv) public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Courts in the Ninth Circuit evaluate these four factors on a sliding scale, where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

Additionally, the Ninth Circuit recognizes a variant of the *Winter* test under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotation marks omitted).

In copyright infringement cases, courts generally presume irreparable harm upon a showing of likelihood of success on the merits. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 866 (9th Cir. 2017).

## IV.   ARGUMENT

### A.   Daybreak Can Establish a Likelihood of Success on the Merits

#### 1.   Copyright Infringement

To establish a *prima facie* case of copyright infringement, a plaintiff must show the following: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991).

Daybreak owns valid and subsisting copyrights in EverQuest. Complaint ¶ 71, Ex. A. Daybreak's copyright registrations constitute *prima facie* evidence of the validity of the copyrights and the facts stated therein. 17 U.S.C. § 410(c).

Defendants' extensive unauthorized copying of Daybreak's copyrighted work includes six key violations:

- *Direct Copying*: Defendants copied substantial portions of Daybreak's game code and content. Complaint ¶ 74(a).

- *Server Emulation*: Defendants created unauthorized server software that reproduces Daybreak's server-side functionality. This works with the modified client to recreate the complete EverQuest experience. *Id*. ¶ 74(b).

- *Client Modification*: Defendants modified Daybreak's client software to connect to their unauthorized servers. *Id*. ¶ 74(c).

- *Display of Copyrighted Elements*: Defendants displayed Daybreak's copyrighted visual elements through both client-side assets and recreated server-side content. *Id*. ¶ 74(d).

- *Character Reproduction*: Defendants reproduced Daybreak's distinctive characters with identical or substantially similar visual designs, abilities, behaviors, and backstories. *Id*. ¶ 74(e).

- *Narrative Copying*: Defendants replicated specific encounters, dialogues, and narrative elements associated with these proprietary characters through their emulated server environment. *Id*. ¶ 74(f).

THJ's comprehensive approach—modifying the client and creating emulated servers—constitutes extensive copying of both client-side and server-side elements of Daybreak's copyrighted work. This creates unauthorized derivative works that recreate the entire EverQuest experience without authorization.

Moreover, a Daybreak employee conducted a comprehensive technical review of THJ and observed numerous instances where THJ's visual elements are identical or nearly identical to EverQuest's distinctive visual elements. *See* Tuanqui Decl. ¶¶ 9-13, 18-25; *see also* Ex. A-D (side-by-side visual comparisons). These similarities include THJ's characters such as Lady Vox, Lord Nagafen, Innoruuk, and Cazic-Thule, which have the same character designs, physical characteristics, and visual effects as EverQuest's characters. Tuanqui Decl. ¶ 9(a)-(d). The Daybreak employee also observed that THJ contains environmental assets, user

1  interface elements, spell effects, and narrative content that are identical or nearly
2  identical to EverQuest's corresponding elements. *Id.* ¶¶ 11-14. Based on these
3  extensive factual similarities across multiple categories of creative content, the
4  evidence establishes that THJ directly copies and uses Daybreak's protected
5  creative expression.

6      These actions constitute direct copyright infringement of Daybreak's
7  exclusive rights under 17 U.S.C. § 106, including the rights to reproduce, distribute,
8  display, and create derivative works based on its copyrighted material. Given the
9  extensive, unauthorized copying and modification of Daybreak's copyrighted
10  content, Daybreak is highly likely to succeed on its copyright infringement claims.

11              **2.    Digital Millennium Copyright Act Violations**

12      Daybreak alleges violations of the Digital Millennium Copyright Act
13  ("DMCA"), 17 U.S.C. § 1201, which prohibits the circumvention of technological
14  measures that effectively control access to copyrighted works.

15      Daybreak employs sophisticated technological protection measures
16  ("TPMs") that control access to EverQuest. Chan Decl. ¶¶ 4-9. These TPMs work
17  together to ensure only authorized users can access the complete game experience.
18  Daybreak's TPMs include four key components: (i) account creation through
19  Daybreak's official website; (ii) verification of active subscription status; (iii)
20  ongoing credential verification during gameplay; and (iv) server-client architecture
21  requiring connection to authorized Daybreak servers. *Id.* ¶¶ 5-9. THJ modifies these
22  technological measures through a comprehensive two-pronged approach:

23  • *Client-Side Modifications*: THJ modifies the EverQuest client software in
24     several ways. It alters the eqhost.txt file to redirect connections from
25     Daybreak's servers to THJ's servers. *Id.* ¶¶ 12. It also removes splash screens
26     containing copyright notices. *Id.* ¶ 13. Additionally, THJ distributes an
27     installer that automates these client-side modifications to the account
28     authorization protocols. *Id.* ¶ 14.

14

- *Server-Side Operations*: THJ creates emulated servers that reproduce Daybreak's server-side functionality, which allows users to access the complete EverQuest experience by connecting to THJ's servers instead of Daybreak's servers. *Id*. ¶ 17-19.

Jennifer Chan, Head of Studio at Darkpaw Games (a subsidiary of Daybreak and the operator of the EverQuest franchise), will confirm that THJ's technical approach allows users to access the complete EverQuest experience through THJ's emulated servers without connecting to Daybreak's official servers or going through Daybreak's authentication systems. *Id*. ¶¶ 20-23.

These technical modifications defeat the purpose of Daybreak's TPMs, which are designed to ensure that only users with valid accounts and subscriptions can access EverQuest content. By creating both modified clients and emulated servers, THJ provides users with access to Daybreak's copyrighted EverQuest content without requiring the users to authenticate through Daybreak's systems or maintain active subscriptions. This comprehensive technical workaround falls squarely within the prohibitions of 17 U.S.C. § 1201(a)(1)(A), which prohibits circumventing technological measures that effectively control access to copyrighted works.

Courts consistently have found DMCA violations in similar circumstances involving game emulators. *See*, *e.g.*, *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 954 (9th Cir. 2010) (finding DMCA violation where defendant's software circumvented authentication mechanism used to control access to World of Warcraft); *Sony Computer Ent. Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 965-966 (N.D. Cal. 2006) (finding violation where defendant circumvented technological protection measures in PlayStation games).

Given the clear evidence of comprehensive circumvention through both client modification and server emulation, Daybreak is highly likely to succeed on its DMCA claim.

### 3.    <u>Evidence of Willful Infringement</u>

The record demonstrates that Defendants engaged in willful and deliberate infringement, undertaken with knowledge of Daybreak's exclusive rights. Several factors establish willfulness:

- *Knowledge of EverQuest and Its Rights Structure*: The sophistication and accuracy of THJ's recreation of EverQuest's complex systems, characters, and content demonstrates that Defendants are intimately familiar with the game. Such detailed knowledge necessarily includes awareness of Daybreak's intellectual property ownership, which is prominently displayed throughout the game and in required legal agreements.

- *End User License Agreements "EULA" Violations*: To access EverQuest content and understand the systems they replicated, Defendants necessarily obtained and used EverQuest client software, requiring acceptance of EULA that explicitly establish Daybreak's ownership of all intellectual property rights and specifically prohibit "creating any means through which the Game may be played by others, such as through server emulators." Janda Decl., Ex. A.

- *Comprehensive Nature of Infringement*: The systematic and comprehensive recreation of EverQuest's client-server architecture, character systems, user interface, and distinctive content demonstrates deliberate copying rather than inadvertent similarity. The technical complexity required to create a functioning emulator indicates intentional, sustained, and systematic efforts to reproduce Daybreak's copyrighted works.

- *Commercial Operation*: Despite knowledge of Daybreak's rights, Defendants established a sophisticated revenue model through their "donation" system, directly profiting from unauthorized use of Daybreak's intellectual property. This commercial exploitation demonstrates willful infringement for financial gain.

- *Use of Pseudonyms*: Takahashi and Taylor operate under pseudonyms ("Aporia" and "Catapultam-Habeo," respectively) rather than their real identities, and DOES 1-20 remain completely unidentified. While the use of

online handles is common, operating a large-scale commercial venture infringing well-known intellectual property while avoiding identification suggests awareness of potential legal consequences.

Defendants' willful infringement weighs heavily in favor of granting emergency injunctive relief. *See Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) (affirming preliminary injunction where defendant knowingly engaged in copyright infringement).

### 4.    Other Claims

In addition to copyright and DMCA claims, Daybreak is likely to succeed on breach of contract and unfair competition claims as detailed below:

- *Breach of Contract*: Defendants breached the EverQuest User Agreement and Software License by creating and operating THJ. The sophisticated recreation of EverQuest's systems demonstrates that Defendants obtained and used the EverQuest client software, which requires users to accept binding contractual terms. *See* Janda Decl., Ex. A.

The EULA contains multiple provisions that Defendants violated:

o    Software License Restrictions*:* Section 7 prohibits users from copying, distributing, modifying, or creating derivative works of the Software. Defendants systematically violated these restrictions by modifying the EverQuest client and distributing their modifications to THJ users. *Id.*

o    Server Emulator Prohibition*:* Section 9 specifically prohibits users from creating "any other means through which the Game may be played by others, such as through server emulators." *Id.* THJ is precisely the type of server emulator explicitly prohibited by this provision.

o    Third-Party Software Restriction*:* Section 9 also prohibits using "any third party software to modify the Software to change Game play." *Id.* Defendants' THJ installer modifies the EverQuest client software to redirect server connections, directly violating this provision.

o    IP Ownership Recognition*:* Section 8 establishes that SOE (now Daybreak) retains "all rights, title and interest, including, without limitation, ownership of all intellectual property rights relating to or residing in the Disc,

the Software and the Game." *Id*. By creating THJ, Defendants breached their acknowledgment of Daybreak's exclusive IP ownership.

o   *Unfair Competition under Federal and California Law*: Defendants' conduct constitutes unfair competition under both the Lanham Act, 15 U.S.C. § 1125(a) and California Business and Professions Code § 17200.

- *Lanham Act Violation:* Defendants engage in commercial activity that misrepresents the nature and origin of their services. By operating THJ using Daybreak's copyrighted content and characters while establishing their own commercial revenue system, Defendants misrepresent the source and authorization of the gaming experience they provide. This commercial misrepresentation in interstate commerce violates 15 U.S.C. § 1125(a).

- *California Unfair Competition:* Defendants' conduct violates California's prohibition against "unlawful, unfair or fraudulent" business practices. Cal. Bus. & Prof. Code § 17200. Their systematic violation of contract terms, copyright infringement, and DMCA circumvention constitute "unlawful" business practices. Additionally, their commercial exploitation of Daybreak's intellectual property while evading the licensing and contractual requirements that govern legitimate competitors constitutes "unfair" business practices that harm both Daybreak and legitimate market competition.

The evidence of contractual violations and anticompetitive conduct, combined with THJ's systematic infringement, strongly supports finding that Daybreak is likely to succeed on these additional claims.

The evidence of direct copying, modification, and distribution of Daybreak's copyrighted material, combined with THJ's circumvention of technological protection measures and willful nature of the infringement, strongly supports a finding that Daybreak is likely to succeed on the merits of its claims.

**B.    Daybreak Will Suffer Immediate and Irreparable Harm Without Emergency Relief**

Irreparable harm is harm that cannot be adequately remedied by money damages. *See Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). Here, Daybreak faces immediate and irreparable harm that cannot be remedied by monetary damages and requires emergency intervention as set forth below.

**1.    Loss of Control Over its Intellectual Property**

THJ undermines Daybreak's ability to control the quality and content of services provided under the EVERQUEST mark. Complaint ¶ 68(b). As the Ninth Circuit has recognized, "loss of control over business reputation and damage to goodwill" constitutes irreparable harm. *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013).

THJ operates without Daybreak's quality assurance and security controls. Complaint ¶ 68(b). This exposes players to potential security vulnerabilities, gameplay imbalances, and other issues that could reflect poorly on the EverQuest brand. If players have negative experiences with THJ, they may attribute those negative experiences to the EverQuest franchise as a whole, damaging Daybreak's reputation and goodwill in ways that cannot be quantified or repaired with monetary damages.

**2.    Measurable User Base Decline Threatens Game Viability**

As detailed in the Chan Decl., the launch of THJ has directly caused measurable harm to Daybreak's EverQuest business. Statistical analysis of player activity demonstrates a clear correlation between THJ's growth and the decline in official EverQuest server populations:

- Monthly active users on official EverQuest servers declined. Chan Decl. ¶ 25.

- Daily active users on official servers have dropped during this period. *Id.* ¶ 26.

Case No. 3:25-cv-01489-BAS-BLM
AMENDED TRO APPLICATION

- Analysis of player yearly engagement patterns confirms that this decline is not attributable to normal seasonal fluctuations, holiday patterns, content cycles, or other typical market factors, but directly correlates with THJ's launch and growth. *Id.*¶ 27.

- Current trajectory analysis, based on the minimum number of monthly active users necessary to maintain economic viability while providing adequate server infrastructure, customer support, and ongoing development, indicates the financial viability threshold will be breached. *Id.* ¶¶ 27, 28.

These metrics demonstrate that the harm is not merely hypothetical but is ongoing and quantifiable. The data also shows an accelerating trend, highlighting the urgent need for emergency relief.

### 3.    Existential Threat to the EverQuest Franchise

The operation of THJ represents an existential threat to the EverQuest franchise. As players migrate from official servers to THJ, the official player community dwindles, diminishing the social experience that is central to an MMORPG. This creates a negative feedback loop: as more players leave official servers, the experience degrades for those who remain, incentivizing even more departures. Once this process begins, it can be extremely difficult to reverse, potentially leading to the end of a franchise that has thrived for 25 years.

This risk is particularly acute given the announced major update to THJ scheduled for approximately June 20, 2025. Janda Decl. ¶ 6, Ex. B. This update is likely to attract even more players to THJ, accelerating the damage to Daybreak's business and potentially reaching a tipping point beyond which recovery becomes impossible.

### 4.    Incalculable Financial Harm

While financial harm alone may not constitute irreparable harm, the financial impact in this case is so significant and difficult to calculate that it contributes to the irreparable nature of the harm. As detailed in the Chan Decl., the financial impact of THJ extends beyond direct subscription losses to include interconnected effects on

Case No. 3:25-cv-01489-BAS-BLM
AMENDED TRO APPLICATION

1  expansion pack sales, in-game purchases, merchandise sales, and licensing

2  opportunities. Chan Decl. ¶ 31(c).

3       Ms. Chan has identified significant challenges in precisely quantifying the

4  full economic impact, which includes indirect effects such as network effects,

5  community value, brand impact, and lost future opportunities that extend beyond

6  direct revenue measurements. *Id*. ¶ 31. Additionally, historical data shows that once

7  MMORPG players migrate to competing services and establish new social

8  connections, they typically do not return even if the competing service is later

9  removed, making the community-based value of EverQuest difficult to restore

10  through monetary compensation. *Id*. ¶¶ 29, 32(a).

11       Due to the complexity of the gaming ecosystem and the indirect effects on

12  player behavior mentioned by Ms. Chan, it is impossible to precisely quantify the

13  full financial impact, rendering monetary damages an inadequate remedy. The harm

14  to EverQuest's brand reputation and player community value, combined with the

15  cascading effects throughout Daybreak's business model, constitutes irreparable

16  harm that cannot be adequately compensated through monetary awards.

17       These harms are ongoing and will escalate sharply upon release of THJ's

18  June 20, 2025 update, which threatens to increase traffic to the infringing platform

19  and accelerate the migration of users.

20      **C.**    **The Balance of Equities Tips Sharply in Daybreak's Favor**

21       When balancing the equities, the Court weighs "the competing claims of

22  injury" and considers "the effect on each party of the granting or withholding of the

23  requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks omitted).

24       The balance tips sharply in Daybreak's favor. Daybreak faces potential

25  destruction of intellectual property it has developed and maintained for over two

26  decades. THJ's continued operation threatens Daybreak's control over its IP, its

27  reputation, and the franchise's existence.

28

On the other hand, Defendants would be enjoined from continuing infringing activities that they had no legal right to undertake in the first place. As the Ninth Circuit has noted, a defendant who knowingly infringes another's copyright "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities." *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995).

The potential harm to Daybreak from continued infringement far outweighs any inconvenience to Defendants from being enjoined. Daybreak risks the collapse of its franchise; Defendants risk losing the ability to continue unlawful conduct. Any financial harm to Defendants is self-inflicted and not cognizable. *See id*.

### D.    A Temporary Restraining Order is in the Public Interest

The final factor to consider is whether emergency relief would serve the public interest. In intellectual property cases, there is a public interest in upholding the protections afforded by copyright law. *See Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 950 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011).

Emergency relief serves the public interest in multiple ways. It upholds the integrity of copyright law by preventing unauthorized use of intellectual property. It preserves the genuine EverQuest experience for legitimate players. It maintains quality and security standards that protect consumers. Lastly, it ensures that creators of intellectual property can recoup their investments and continue to innovate.

## V.    CONCLUSION

For the foregoing reasons, Daybreak respectfully requests that the Court grant its Application in its entirety, set bond in the amount of $5,000 pursuant to Fed. R. Civ. P. 65(c), schedule an Order to Show Cause hearing within ten (10) days regarding why a preliminary injunction should not be granted on the same grounds set forth herein; and grant such other relief as the Court deems just and proper.

1   Dated: June 16, 2025                Respectfully submitted,

2                                       DENTONS US LLP

3                                       By: *Nicholas B. Janda*

4                                           Nicholas B. Janda
                                            Daniel A. Schnapp (*pro hac vice* pending)
5                                           Monica B. Richman (*pro hac vice* pending)
                                            Mary Kate Brennan (*pro hac vice* pending)

6
                                            *Attorneys for Plaintiff*
7                                           *DAYBREAK GAME COMPANY, LLC*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28