UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYBREAK GAME COMPANY LLC,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>KRISTOPHER TAKAHASHI, *et al.*,<br><br>　　　　　Defendants. | Case No. 25-cv-01489-BAS-BLM<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S EX PARTE MOTION TO SEAL; AND**<br><br>**(2) DENYING PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

　　　　Presently before the Court is Plaintiff Daybreak Game Company LLC's ("Daybreak") *Ex Parte* Application for Temporary Restraining Order ("TRO") and Order to Show Cause for a Preliminary Injunction, Motion for Expedited Discovery, and Motion for Alternative Service ("TRO Application" or "TRO App."). Daybreak initiated this action by filing under seal the Complaint ("Compl."), TRO Application, and *Ex Parte* Motion for Leave to Exceed Page Limits, along with a Motion to Seal ("Mot."), which was also filed *ex parte*. Having carefully considered Plaintiff's arguments, filings, and the law,

- 1 -

the Court **DENIES** Plaintiff's Motion to Seal and **DENIES WITHOUT PREJUDICE** Plaintiff's TRO Application.

## BACKGROUND

Per the Complaint, Daybreak owns the intellectual property to EverQuest, including trademarks and copyrights associated with the EverQuest franchise. (Compl. ¶ 3.) EverQuest is a "massively multiplayer online role-playing game" that has achieved a measure of commercial success. (*Id.* ¶ 11.) Daybreak alleges that Defendants Kristopher Takahashi and Alexander Taylor, as well as yet to be identified Defendants Does 1–20, collaborate to "create, develop, distribute, and promote an unauthorized and illegal EverQuest emulator called 'The Heroes' Journey'" ("THJ"). (*Id.* ¶ 4.) Defendants Takahashi and Taylor are the respective lead producer and developer of THJ and play primary roles in promoting it through interviews and communications in online forums such as Discord. (*Id.* ¶¶ 4(a)–(b)). By operating the emulator, Daybreak alleges that Defendants engage in "systematic and deliberate copyright and trademark infringement." (*Id.* ¶ 30.)

Daybreak filed this action on June 11, 2025, asserting, among other causes of action, copyright infringement, violation of the Digital Millennium Copyright Act, trademark dilution under federal and California law, unfair competition under federal and California law, and breach of contract. *See generally* Compl. Daybreak alleges that Defendants are causing immediate and irreparable harm by infringing on its intellectual property. (TRO App. at 2:8–11.) As such, Daybreak seeks to file "all documents in support of this action temporarily under seal [] in light of Defendants' infringing actions . . . ." (Mot. at 4:4–5.) Daybreak contends that "if Defendants learn of Daybreak's TRO Application, they will likely destroy relevant documentary evidence and hide or transfer assets to foreign jurisdictions, which would frustrate the purpose of the underlying federal laws and interfere with this Court's power to grant relief if Daybreak ultimately prevails." (*Id.* at 4:9–12.) None of the documents associated with this action were previously filed on the docket, and Defendants have not received notice or had an opportunity to oppose.

# MOTION TO SEAL

## I. Legal Standard

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu,* 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135. The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1102. When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id*. at 1096–98. When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies. *Id*.

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598). "Under this stringent standard, a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *Ctr. for Auto Safety*, 809 F.3d at 1096–97 (quoting *Kamakana*, 447 F.3d at 1179). Ultimately, the decision to seal

documents is "one best left to the sound discretion of the trial court" upon consideration of "the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

In addition, parties moving to seal documents must comply with the procedures set forth in this Court's standing order for filing documents under seal. *See* Standing Order of the Hon. Cynthia Bashant for Civil Cases ¶ 5. The rule permits sealing "only those documents, or portions thereof, necessary to protect such sensitive information." *Id.* Thus, although sometimes it may be appropriate to seal a document in its entirety, whenever possible a party must redact. *See Kamakana*, 447 F.3d at 1183 (noting a preference for redactions so long as they "have the virtue of being limited and clear"); *Murphy v. Kavo Am. Corp.*, No. 11–cv–00410–YGR, 2012 WL 1497489, at *2–3 (N.D. Cal. Apr. 27, 2012) (denying motion to seal exhibits but directing parties to redact confidential information).

## II. Analysis

Daybreak moves to temporarily seal this case in its entirety, asserting that sealing is necessary "to prevent Defendants from learning of the proceedings prior to the service of and execution of any temporary restraining order." (Mot. at 10:9–11.) Accordingly, Daybreak requests that the Court seal the Complaint, the TRO Application, the *Ex Parte* Motion for Leave to Exceed Page Limits, and the Motion to Seal.

As an initial matter, the Court notes that both the Complaint and the TRO Application are more than tangentially related to the merits of this case. "A complaint is the document delineating what the merits of the case are." *Innovativ Media Grp., Inc. v. Beys*, No. 2:22-cv-01362-CDS-VCF, 2022 WL 3701579, at *3 (D. Nev. Aug. 26, 2022). And "[p]articularly relevant here, a motion for [temporary restraining order] frequently requires the court to address the merits of a case, which often includes the presentation of substantial evidence." *Ctr. for Auto Safety*, 809 F.3d at 1099 (citing *Stormans v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009)). Thus, the "compelling reasons" standard applies.

Here, Daybreak's assertions that Defendants "likely will destroy relevant documentary evidence and hide or transfer assets to foreign jurisdictions," (Mot. at 4:9–10), are too speculative to overcome the strong presumption in favor of public access to

judicial records. Absent concrete factual support, the Court would be required to "rely[] on hypothesis or conjecture" to justify sealing the Complaint and TRO Application in this action. *Kamakana*, 447 F.3d at 1179. In support of its sealing request, Daybreak cites declarations from Nicholas B. Janda, counsel of record, and David Youssefi, Senior Vice President and General Counsel at Daybreak; however, these declarations merely reiterate the same conclusory assertions without providing specific, substantiated facts. (Janda Decl. ¶ 2; Youssefi Decl. ¶¶ 4–5.) Daybreak also cites the TRO Application itself, but it likewise offers nothing more than speculative predictions regarding Defendants' hypothetical conduct if provided notice. (*See generally* TRO App.)

Moreover, Daybreak filed the *Ex Parte* Motion for Leave to Exceed Page Limits and the Motion to Seal under seal. Because these are non-dispositive, procedural motions that do not bear on the merits of the underlying claims, they fall below the threshold of "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1102. Accordingly, the good cause standard governs whether they may be sealed and requires a "particularized showing" that "specific prejudice or harm will result" if the information is disclosed. *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002); *see* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

Since Daybreak relies on the same assertions to justify its request to seal the entire action—namely, generalized concerns that Defendants may destroy evidence or transfer assets if made aware of the proceeding—it offers no separate or independent justification for sealing the *Ex Parte* Motion for Leave to Exceed Page Limits or the Motion to Seal. As discussed above, these assertions lack concrete factual support and are too conclusory to satisfy the "compelling reasons" standard. They likewise fail to satisfy the less stringent good cause standard applicable here, as they do not provide a particularized showing of specific harm or prejudice that would result from public disclosure of the materials sought to be sealed.

1    Because Daybreak has not demonstrated compelling reasons to justify sealing the
2    Complaint and TRO Application, and has likewise failed to show good cause for sealing
3    the *Ex Parte* Motion for Leave to Exceed Page Limits and Motion to Seal, the Court
4    **DENIES** the Motion to Seal in its entirety.

## TEMPORARY RESTRAINING ORDER APPLICATION

### I.    Legal Standard

Rule 65(b) governs the issuance of a temporary restraining order ("TRO"). The standard for a TRO is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either a TRO or a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, the Ninth Circuit "has adopted and applied a version of the sliding scale approach under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (cleaned up). In either case, the moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

Generally, a TRO is considered to be "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A TRO's "underlying purpose [is to] preserv[e] the status quo and prevent[] irreparable harm" until a preliminary injunction hearing can be held. *See Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Furthermore, when a plaintiff seeks a TRO without providing notice to the defendant, Federal Rule of Civil Procedure 65(b)(1) imposes additional requirements, specifically:

> The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). "The stringent restrictions imposed . . . by Rule 65[] on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods,* 415 U.S. 438–39 (footnote omitted).

"Courts have [thus] recognized very few circumstances justifying the issuance of an *ex parte* TRO." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). "For example, an *ex parte* TRO may be appropriate 'where notice to the adverse party is impossible either because the identity of the adverse party is unknown or because a known party cannot be located in time for a hearing.'" *Id.* (quoting *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)). Alternatively, "[i]n cases where notice could have been given to the adverse party, courts have recognized 'a very narrow band of cases in which *ex parte* orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'" *Id.* (quoting *Am. Can Co.*, 742 F.2d at 322). Generally speaking, this "narrow band" includes only situations wherein an *ex parte* order is necessary "to preserve evidence or the court's jurisdiction." *Am. Can Co.*, 742 F.2d at 323 n.11 (citing *In re Vuitton et Fils S.A.*, 606 F.2d 1, 3, 5 (2d Cir. 1979) (per curiam)).

To justify an *ex parte* TRO on this ground, the plaintiff "must do more than assert that the adverse party would dispose of evidence if given notice." *Reno Air Racing Ass'n*, 452 F.3d at 1131 (quoting *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993). The plaintiff must "show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing . . . [and] must support such assertions by showing that the adverse party has a history of disposing of

evidence or violating court orders or that persons similar to the adverse party have such a history." *Id.*

## II.   Analysis

As previously discussed, Plaintiff offers only speculation regarding the potential destruction of evidence or transfer of assets if Defendants are provided notice. This conclusory approach is exactly what the Ninth Circuit found insufficient as the basis of an *ex parte* order. *See Reno Air Racing Ass'n*, 452 F.3d at 1131 (requiring that the plaintiff "do more than assert that the adverse party would dispose of evidence if given notice") (internal citation omitted). The Ninth Circuit cautioned that "[w]ere a single conclusory statement by counsel about infringers sufficient to meet the dictates of Rule 65, then *ex parte* orders without notice would be the norm and this practice would essentially gut Rule 65's notice requirements." *Id.* at 1132. Civil Local Rule 83.3(g)(2) likewise prohibits *ex parte* motions unless supported by a declaration explaining why notice should not be required. The rule provides: "A motion for an order must not be made ex parte unless it appears by affidavit or declaration . . . that for reasons specified the party should not be required to inform the opposing party or the opposing party's attorney." CivLR 83.3(g)(2).

Here, the TRO Application contains no allegation—let alone evidence—that Defendants have a history of destroying evidence or disobeying court orders. In Plaintiff's Certificate Regarding Notice, counsel asserts that "[a]lthough Defendants Takahashi and Taylor have been identified, no notice has been provided because . . . [*inter alia*] . . . Defendants have demonstrated their intent to evade legal accountability by operating under pseudonyms despite conducting a large-scale commercial operation." (TRO App. at 38:3–10.)

Even assuming the assertion is accurate, the Court remains unpersuaded that Defendants Takahashi, Taylor, and Does 1–20's use of online pseudonyms in commercial activity—standing alone—establishes a likelihood that they will disregard court orders or destroy evidence, let alone demonstrates a history of such conduct. Daybreak has not

presented any evidence that Defendants, or that persons similarly situated, have previously destroyed evidence or violated court orders.

Accordingly, Daybreak has failed to make the showing required to justify proceeding without notice, and the Court therefore **DENIES WITHOUT PREJUDICE** Plaintiff's Application for an *Ex Parte* TRO and Order to Show Cause for a Preliminary Injunction.

Furthermore, the Court **DENIES** the Motion for Expedited Discovery **WITHOUT PREJUDICE**. Daybreak seeks expedited discovery to identify Defendants Does 1–20, again citing the alleged risk that these individuals may destroy evidence, transfer assets or operations beyond the Court's jurisdiction, and continue to cause escalating harm to Daybreak if THJ continues to operate. (*Id.* at 30:1–33:24.) Daybreak seeks to obtain, *inter alia*, domain and hosting information, platform account information, payments processing records, and IP addresses and technical data from third parties since it "cannot be obtained through traditional discovery directed at the remaining unknown defendants." (*Id.* at 33:4– 24.) Nevertheless, given that named Defendants have yet to appear in—let alone receive notice of—this action, the motion is premature. Further, this motion, when it is timely filed, is appropriate before the magistrate judge. *See* CivLR 72.1(b) (setting non-dispositive pretrial motions before magistrate judges).

Furthermore, the Court **DENIES** the Motion for Alternative Service **WITHOUT PREJUDICE**. Plaintiff seeks to serve Defendants Does 1–20 via "[a]lternative service through THJ's operational platforms—including posting on their website, Discord server, and GitHub repository," arguing that it is "reasonably calculated to provide notice because these are the primary channels through which Defendants Does 1–20 conduct their infringing activities and communicate with users." (TRO App. at 34:3–6.)

To authorize alternative service under Rule 4(f)(3), the Court must find that (1) the proposed method does not violate an international agreement; (2) it satisfies due process; and (3) it is necessary under the present circumstances. *See Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014–17 (9th Cir. 2002). The Ninth Circuit has emphasized that

it is within the district court's "sound discretion" to determine when the "particularities and necessities of a given case require alternate service." *Id.* at 1017. Here, however, the Court is not persuaded that Daybreak has demonstrated that alternative service is necessary at this juncture. Notably, despite knowing the identities of Defendants Takahashi and Taylor, Daybreak has not attempted service through traditional means.

Finally, the Court notes that Daybreak submitted an *Ex Parte* Motion for Leave to Exceed Page Limits for its TRO Application. The Court **GRANTS** the request; however, Daybreak is advised that any future requests will be subject to a more stringent showing of good cause.

## CONCLUSION

In light of the foregoing, the Court **DENIES** Daybreak's Motion to Seal, as Daybreak has not demonstrated that sealing is warranted under the applicable legal standards. Accordingly, the Court **DIRECTS** Daybreak to file the Complaint, TRO Application, Motion to Seal, and *Ex Parte* Motion for Leave to Exceed Page Limits on the docket.

Moreover, the Court **DENIES WITHOUT PREJUDICE** Daybreak's TRO Application. Daybreak may refile its TRO as a regularly noticed motion. If Daybreak elects to do so, it must ensure that all filings are served in compliance with the Federal Rules of Civil Procedure, the Civil Local Rules, and this Court's Standing Order.

**IT IS SO ORDERED.**

**DATED: June 14, 2025**

*[signature: Cynthia Bashant]*

Hon. Cynthia Bashant, Chief Judge
United States District Court