1  NICHOLAS B. JANDA (SBN 253610)
   nick.janda@dentons.com
2  DENTONS US LLP
   601 South Figueroa Street, Suite 2500
3  Los Angeles, California 90017-5704
   Telephone: (213) 623-9300
4  Facsimile: (213) 623-9924

5  MONICA B. RICHMAN (*pro hac vice* forthcoming)
   monica.richman@dentons.com
6  DANIEL A. SCHNAPP (*pro hac vice* pending)
   daniel.schnapp@dentons.com
7  MARY KATE BRENNAN (*pro hac vice* pending)
   marykate.brennan@dentons.com
8  DENTONS US LLP
   1221 Avenue of the Americas
9  New York, New York 10020-1089
   Telephone: (212) 768-6700
10 Facsimile: (212) 768-6800

11 *Attorneys for Plaintiff*
   *DAYBREAK GAME COMPANY LLC*
12

13              **UNITED STATES DISTRICT COURT**

14            **SOUTHERN DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| DAYBREAK GAME COMPANY LLC, | Case No. 3:25-cv-01489-BAS-BLM |
| Plaintiff, | **PLAINTIFF'S SUPPLEMENTAL MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| KRISTOPHER TAKAHASHI, ALEXANDER TAYLOR, and DOES 1-20, inclusive, | **NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT** |
| Defendants. | Date: August 12, 2025<br>Time: 10:30 a.m.<br>Ctrm: 12B |

16
17
18
19
20
21
22
23
24
25
26
27
28

TO THE COURT AND ALL PARTIES:

PLEASE TAKE NOTICE that Plaintiff Daybreak Game Company LLC ("Daybreak") hereby applies for a Preliminary Injunction pursuant to Fed. R. Civ. P. 65 to be heard on August 12, 2025, or as soon thereafter as the matter may be heard.

Daybreak respectfully requests an Order restraining Defendants and all persons acting in concert with them from continuing their ongoing illegal acts that are causing irreparable harm to Daybreak's business and intellectual property.

Daybreak makes this Application on the grounds that Defendants are operating "The Heroes' Journey" ("THJ"), an unauthorized copy of Daybreak's EverQuest video game, in direct violation of Daybreak's intellectual property rights, causing irreparable harm that cannot be compensated by monetary damages alone.

This Application is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration of Walter Tuanqui, the Declaration and Supplemental Declaration of Nicholas B. Janda (authenticating documents), the Declaration and Supplemental Declaration of Jennifer Chan, the Declaration of Garry Kitchen, all pleadings and papers on file in this action, all matters of which the Court may take judicial notice, and any such other evidence and argument as may be presented at the time of the hearing.

Dated: July 16, 2025

Respectfully submitted,

DENTONS US LLP

By: *Nicholas B. Janda*
    Nicholas B. Janda
    Monica B. Richman (*pro hac vice* forthcoming)
    Daniel E. Schnapp (*pro hac vice* pending)
    Mary Kate Brennan (*pro hac vice* pending)

*Attorneys for Plaintiff*
*DAYBREAK GAME COMPANY LLC*

1

## **TABLE OF CONTENTS**

2  I.  INTRODUCTION AND URGENCY OF RELIEF SOUGHT .....................7

3  II.  STATEMENT OF FACTS.................................................................9

4      A.  EverQuest's Legacy and Cultural Significance .....................9

5      B.  Daybreak's Intellectual Property Rights.............................9

6      C.  Defendants and their Unauthorized THJ Game ..................10

7

8      D.  Irreparable Harm to Daybreak .........................................13

9  III.  LEGAL STANDARD FOR PRELIMINARY INJUNCTION...................14

10 IV.  ARGUMENT .........................................................................15

11     A.  Daybreak Can Establish a Likelihood of Success on the Merits.........15

12         1.  Copyright Infringement ............................................15

13         2.  Digital Millennium Copyright Act Violations ..........................17

14         3.  Unfair Competition..................................................19

15         4.  Breach of Contract..................................................22

16         5.  Evidence of Willful Infringement.............................24

17     B.  Daybreak Will Suffer Irreparable Harm Without Preliminary Relief .........................................................25

18

19         1.  Loss of Control Over its Intellectual Property and Resulting Loss of Goodwill................................26

20

21         2.  Measurable User Base Decline Threatens the EverQuest Franchise ..........................................26

22

23         3.  Incalculable Financial Harm .................................28

24     C.  The Balance of Equities Tips Sharply in Daybreak's Favor ...............29

25     D.  A Preliminary Injunction is in the Public Interest .................30

26 V.  CONCLUSION .........................................................................31

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*All. for the Wild Rockies v. Cottrell*,
632 F.3d 1127 (9th Cir. 2011) ............................................................ 14, 15

*Am. Rena Int'l Corp v. Sis-Joyce Int'l Co.*,
No. CV 12-06972 DMG, 2012 WL 12538385 (C.D. Cal. Oct. 15, 2012) ................................................................................................ 26, 28

*Apple Inc. v. Psystar Corp.*,
673 F. Supp. 2d 943 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) ................................................................................................ 30

*Atari Games Corp. v. Nintendo of Am. Inc.*,
975 F.2d 832 (Fed. Cir. 1992) ............................................................ 7, 16

*Blizzard Ent. Inc. v. Ceiling Fan Software LLC*,
28 F. Supp. 3d 1006 (C.D. Cal. 2013) ................................................ 22, 23

*Bungie, Inc. v. Phoenix Digital Grp. LLC*,
No. C21-0811 TSZ, 2024 WL 4008567 (W.D. Wash. Aug. 30, 2024) ................................................................................................ 17

*Cadence Design Sys., Inc. v. Avant! Corp.*,
125 F.3d 824 (9th Cir. 1997) ............................................................ 25

*Clamp Mfg. Co. v. Enco Mfg. Co.*,
870 F.2d 512 (9th Cir. 1989) ............................................................ 20

*Conder v. Home Sav. of Am.*,
680 F. Supp. 2d 1168 (C.D. Cal. 2010) .............................................. 22

*Consumer Opinion LLC v. Frankfort News Corp*,
No. 16-CV-05100-BLF, 2016 WL 6393520 (N.D. Cal. Oct. 28, 2016) ................................................................................................ 22

*Dish Network, L.L.C., v. Vicxon Corp.*,
No. 12-cv-9-L WVG, 2013 WL 3894905 (S.D. Cal. July 26, 2013) ................. 18

*Disney Enters., Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ............................................................ 15, 26, 29, 30

*Doe v. CVS Pharmacy, Inc.*,
    982 F.3d 1204 (9th Cir. 2020) ................................................................. 22

*EchoStar Satellite LLC v. ViewTech, Inc.*,
    No. 07-CV-1273-BEN-WVG, 2011 WL 1522409 (S.D. Cal. Apr.
    20, 2011) ................................................................................................... 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ................................................................................... 15

*GoTo.com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000) ................................................................... 21

*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010), aff'd, 564 U.S. 91, 131 S. Ct. 2238,
    180 L. Ed. 2d 131 (2011) ........................................................................... 28

*Ilyon Dynamics Ltd. v. Kings Fortune Pte. Ltd.*,
    No. 24-CV-04581-NC, 2025 WL 604966 (N.D. Cal. Feb. 25, 2025) ............... 17

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
    629 F.3d 928 (9th Cir. 2010) ............................................................... 19, 23

*Midway Mfg. Co. v. Dirkschneider*,
    543 F. Supp. 466 (D. Neb. 1981) ..................................................... 17, 20, 21

*Millennium Labs., Inc. v. Ameritox, Ltd.*,
    817 F.3d 1123 (9th Cir. 2016) ................................................................... 20

*Mongkol Muay Thai Corp. v. JG (Thailand) Co. Ltd.*,
    No. 22-CV-0506-BAS-VET, 2024 WL 4868300 (S.D. Cal. Aug.
    28, 2024) ................................................................................................... 21

*Moroccanoil, Inc. v. Zotos Int'l, Inc.*,
    230 F. Supp. 3d 1161 (C.D. Cal. 2017) ..................................................... 20

*Nexon Am. Inc. v. GK*,
    No. 5:21-CV-00886-FWS-KK, 2023 WL 3432260 (C.D. Cal. Jan.
    11, 2023) ................................................................................................... 23

*Nintendo of Am. Inc. v. Chan*,
    No. CV 09-4203JFW(PLAX), 2009 WL 2190186 (C.D. Cal. July
    21, 2009) ................................................................................................... 28

*Oracle Am., Inc. v. Google Inc.*,
    750 F.3d 1339 (Fed. Cir. 2014) ........................................................ 15

*Paramount Farms Int'l LLC v. Keenan Farms Inc.*,
    No. 2:12-CV-01463-SVW-E, 2012 WL 5974169 (C.D. Cal. Nov. 28, 2012) ......................................................................................... 21

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
    944 F.2d 597 (9th Cir. 1991) .......................................................... 25

*Shawarma Stackz LLC v. Jwad*,
    No. 21-CV-01263-BAS-BGS, 2021 WL 5827066 (S.D. Cal. Dec. 8, 2021) ................................................................................................. 21

*Sony Computer Ent. Am., Inc. v. Divineo, Inc.*,
    457 F. Supp. 2d 957 (N.D. Cal. 2006) ............................................. 19

*Synopsys, Inc. v. AzurEngine Techs., Inc.*,
    401 F. Supp. 3d 1068 (S.D. Cal. 2019) ............................. 8, 15, 25, 30

*Triad Sys. Corp. v. Se. Express Co.*,
    64 F.3d 1330 (9th Cir. 1995) .......................................................... 30

*Warner Bros. Ent. Inc. v. WTV Sys., Inc.*,
    824 F. Supp. 2d 1003 (C.D. Cal. 2011) ........................................... 26

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ..................................................................... 14, 29

**Statutes**

17 U.S.C. § 106 ......................................................................................... 17

17 U.S.C. § 410 ......................................................................................... 15

17 U.S.C. § 1201 ................................................................................. 17, 19

Cal. Bus. & Prof. Code § 17200 .............................................................. 21

**Other Authorities**

Fed. R. Civ. P. 65(c) ................................................................................. 31

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND URGENCY OF RELIEF SOUGHT

The facts overwhelmingly demonstrate Daybreak's entitlement to a preliminary injunction to protect the viability and very existence of EverQuest. Defendants' blatant theft of EverQuest and Plaintiff's related intellectual property for Defendants' own financial gain is antithetical to the copyright statute and is causing irreparable harm to Daybreak, and the gaming community as a whole. The evidence shows that if Defendants are not enjoined from operating The Heroes' Journey ("THJ"), EverQuest will lose its core community, which is necessary to continue this beloved game that has enthralled generations of users since its inception in 1999. An injunction is therefore necessary to prevent Defendants from destroying and profiting off of the 25-year legacy that EverQuest has enjoyed as a leader in its online gaming community.

The evidence set forth in this motion irrefutably demonstrates that Defendants systematically modify Daybreak's copyrighted material to offer a competing service that entirely relies upon Daybreak's intellectual property. The THJ universe that Defendants are marketing as their own is an exact replica of EverQuest's iconic characters, settings, narratives and other unique characteristics. Defendants' reverse engineering of Daybreak's copyrighted video game "to exploit commercially" EverQuest as its own is a clear violation of copyright laws. *Atari Games Corp. v. Nintendo of Am. Inc*., 975 F.2d 832, 844 (Fed. Cir. 1992).

Defendants have taken such willful, illegal actions with full knowledge of Daybreak's exclusive rights, as evidenced by Defendants' own statements acknowledging Daybreak's ownership, while attempting to justify their infringement. The willful nature of Defendants' actions is further evidence by their establishment of a commercial revenue model falsely called "donations," that directly earns revenues from the unauthorized use of Daybreak's intellectual property. In light of the clear evidence of Defendants' copying, Daybreak is likely to succeed on, at least,

Case No. 3:25-cv-01489-BAS-BLM
MOTION FOR PRELIMINARY INJUNCTION

the merits of its claims of copyright infringement, violation of the Digital Millennium Copyright Act ("DMCA"), unfair competition, and breach of contract.

Daybreak has also shown that it will suffer irreparable harm if Defendants' are not preliminarily enjoined. Since THJ's launch in late 2024, ███████████ ████████████████████████████████████████████████████████████ ███████████. A decline in user base not only causes a decline in revenue to Daybreak but also damages the entire gaming experience which depends, by definition, on the simultaneous play by thousands of users. This drop in users has irreversible ripple effects across the entire gaming experience, creating a downward spiral that will be impossible to reverse. Each day of delay allows Defendants to continue diverting players and revenue from Daybreak's legitimate EverQuest service.

As a result of the damage that Defendants have already caused and are continuing to cause, ██████████████████████████████████████ █████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████ █████████████████. This is the exact type of irreparable harm that preliminary injunctions are designed to prevent. *Synopsys, Inc. v. AzurEngine Techs., Inc*., 401 F. Supp. 3d 1068, 1074 (S.D. Cal. 2019) (noting that irreparable harm "may be established by evidence that [defendant's conduct] is undermining the copyright owner's negotiating position, damaging goodwill with licensees, threatening the copyright owner's business model, risking the copyright owner's market share, [and] causing reputational harm to the copyright owner or its works").

In light of Defendants' deliberate violation of Daybreak's intellectual property rights and the resulting irreparable harm to Daybreak, and for the reasons set forth herein, a preliminary injunction is warranted.

## II. STATEMENT OF FACTS

### A. EverQuest's Legacy and Cultural Significance

EverQuest has operated for 25 years as one of the most influential massively multiplayer online role-playing games ("MMORPG") in history. Supplemental Declaration of Jennifer Chan ("Supp. Chan Decl.") ¶ 20. The game pioneered the MMORPG genre and created a virtual world that has connected millions of players worldwide. Daybreak now owns and operates the EverQuest franchise.

Since its groundbreaking release in 1999, EverQuest has established itself as a cultural phenomenon and cornerstone of the MMORPG genre. *Id*.; Complaint ¶¶ 11-12. The game's rich fantasy world of Norrath has captivated millions of players worldwide, fostering deep emotional connections and creating lasting experiences across generations of gamers. Supp. Chan Decl. ¶¶ 22-23; Complaint ¶13. This meticulously crafted universe—populated with original and distinctive characters, creatures, locations, and storylines—epitomizes highly valuable intellectual property. *Id*.

EverQuest's extraordinary longevity—spanning more than two decades of continuous operation—demonstrates remarkable staying power in the gaming industry. Throughout this period, Daybreak and its predecessors continuously have developed and supported EverQuest through numerous expansion packs that introduced new gameplay mechanics, character classes, races, items, and challenges. *Id*. ¶ 14. This consistent dedication to quality and innovation has attracted and retained one of the most passionate and dedicated player communities in gaming history. *Id*.

### B. Daybreak's Intellectual Property Rights

As the current owner and guardian of the EverQuest legacy, Daybreak owns all intellectual property rights to this virtual world, including copyrights for the game's intricate code, distinctive artwork, memorable characters, rich storylines, and

all other creative elements. *See* ECF No. 10-1, Declaration of Nick Janda ("Janda Decl.") ¶ 7 and ECF No. 10-4, Ex. C thereto; Complaint ¶ 65, Ex. A.

Daybreak also maintains trademark protection for the iconic EVERQUEST name and related marks, which have become synonymous with EverQuest's groundbreaking online gaming experience. *See* Janda Decl. ¶ 8 and ECF No. 10-5, Ex. D thereto; Complaint ¶¶ 20-21. Moreover, the EVERQUEST mark (Reg. No. 2507594) is famous, incontestable, and distinctive, having been continuously used in commerce since 1999 and having achieved widespread recognition among consumers. Complaint ¶¶ 12, 67, 96.

### C.    Defendants and their Unauthorized THJ Game

Defendants Takahashi and Taylor, working under the pseudonyms "Aporia" and "Catapultam-Habeo," respectively,[1] have engaged in systematic copyright infringement and DMCA violations by operating THJ using Daybreak's protected intellectual property. Complaint ¶¶ 30, 34. THJ officially launched on or about October 25, 2024, *id.* ¶ 36, and has since ████████████ ████████████████████████████████ Supp. Chan Decl. ¶¶ 41-21. Defendants promote THJ through platforms such as Discord, YouTube, and Twitch. *Id.* ¶ 8.

THJ requires its users to install and run a specific version of the EverQuest client, the software application that runs on a player's personal computer, specifically the Rain of Fear version, which is typically obtained through Daybreak's EverQuest Depot on Steam. Complaint ¶ 41. THJ does not include its own original client software; instead, it requires users to install Daybreak's proprietary EverQuest client and then applies systematic modifications to enable connectivity to unauthorized server infrastructure. Declaration of Garry Kitchen ("Kitchen Decl.") ¶ 10. The

---

[1] Defendants Does 1-20 remain unidentified and the true names and addresses of the remaining individuals responsible for THJ remain unknown to Daybreak. *See id.* ¶ 34.

primary way in which THJ bypasses the technological protection measures that Daybreak deployed to control access to its content was to change the URL of the EverQuest server, as held in the eqhost.txt file, to redirect server calls such that the THJ's unauthorized derivative work takes control of the user's navigational path before they ever reach the EverQuest server. *Id.* ¶ 24. The result is that THJ users are able to access EverQuest's protected elements without going through EverQuest's official servers or authentication process. *Id.* ¶ 12. These modifications constitute unauthorized derivative works of Daybreak's copyrighted software and circumvent technological measures implemented by Daybreak to control access to its copyrighted works. Complaint ¶ 44.

Further, THJ displays EverQuest's characters, environments, user interface elements, and spell effects using the same underlying asset files, representing substantial creative and financial investment that THJ gains without incurring normal development costs. Kitchen Decl. ¶ 11. The identical visual presentation of THJ as compared to EverQuest demonstrates direct utilization of EverQuest's character model files, texture maps, and animation data. THJ displays characters such as Lady Vox, Lord Nagafen, Innoruuk, and Cazic-Thule using the same underlying asset files that EverQuest uses. *Id.* ¶ 18; *see also* ECF No. 1-10, Declaration of Walter Tuanqui ("Tuanqui Decl.") ¶ 9(a)-(d). The same is true with respect to THJ's replication of EverQuest's environmental assets, user interface and spell effects. Kitchen Decl. ¶¶ 19-21; Tuanqui Decl. ¶¶ 11-14.

Below are just a few examples of Defendants' copying of Daybreak's highly-valuable intellectual property.

| Daybreak's EverQuest | Defendants' THJ |
|---|---|
|  |  |
|  |  |

*See* ECF Nos. 1-15 and 1-16, Exs. C and D to Tuanqui Decl.

Since its launch in late 2024, THJ has attracted a significant community of users. Complaint ¶¶ 36, 47. On the THJ website, Defendants boast that they have over 26,000 Discord members. Supp. Chan Decl. ¶ 30. Then, on July 3, 2025, Defendant Takahashi (Aporia) claimed during a Twitch livesteam that THJ has gained 30,000 users since its October 2024 launch. *Id*. Defendants' unauthorized use of Daybreak's intellectual property generates income for the Defendants through a sophisticated commercial revenue model falsely called a "donation" system. *Id*. ¶ 42. Contributors who make financial payments receive digital items called "Echoes of Memory," which function as a premium currency within THJ and can be exchanged for valuable in-game items, cosmetic enhancements, and character benefits. *Id*.; Complaint ¶¶ 50(b)-(c). ████████████████████████
████████████████████████████████████████ Supplemental Declaration of Nicholas B. Janda ("Supp. Janda Decl.") ¶ 17 and Ex. 3; Supp. Chan Decl. ¶ 41.

### D.   Irreparable Harm to Daybreak

As explained in detail by Jennifer Chan, Head of Studio at Darkpaw Games (a studio division of Daybreak and the developer and operator of the EverQuest franchise), as a result of Defendants' unlawful behavior, Daybreak has suffered and continues to suffer from a multitude of irreparable harms including:

(i) Diminished control over Daybreak's intellectual property and resulting damage to Daybreak's reputation and goodwill through association with an unauthorized and potentially unstable product.

(ii) Diversion of current and potential customers from legitimate EverQuest services to unauthorized services. As set forth in the Supplemental Chan Declaration,
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

13

1 ███████████████████████████████████████████

2 ███████████████████████████████████████████

3 ████ *Id*. ¶ 28.

4       (iii) Negative impacts on the EverQuest gaming experience as a whole due to

5 reduction in player base, which is unlikely to be reversed. Kitchen Decl. ¶ 15. As

6 EverQuest players migrate to THJ, the remaining player experience on official

7 EverQuest servers degrades, incentivizing further departures. This creates a

8 downward spiral that will be impossible to reverse. *Id*.; Supp. Chan Decl. ¶¶ 10, 32.

9       (iv) ████████████████████████████████████

10 █████████████████████████████████████████████

11 █████████████████████████████████████████████

12 █████████████████████████████████████████████

13 █████████████████████████████████████████████

14 █████████████████████████████████████████████

15 ███████████████████████████████

16       These harms cannot be remedied by monetary damages as they threaten the

17 very existence of EverQuest itself.

18 **III.**   **LEGAL STANDARD FOR PRELIMINARY INJUNCTION**

19       In evaluating a request for preliminary injunction, courts analyze four factors:

20 (i) likelihood of success on the merits; (ii) likelihood of irreparable harm; (iii) balance

21 of equities; and (iv) public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.

22 7, 20 (2008). Courts in the Ninth Circuit evaluate these four factors on a sliding scale,

23 where "a stronger showing of one element may offset a weaker showing of another."

24 *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

25       Additionally, the Ninth Circuit recognizes a variant of the *Winter* test under

26 which "serious questions going to the merits and a balance of hardships that tips

27 sharply towards the plaintiff can support issuance of a preliminary injunction, so long

28

as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotation marks omitted).

In copyright infringement cases, irreparable harm is shown when defendant's actions cause incalculable harm in a variety of way including by undermining the value of plaintiff's copyrighted works and resulting in a loss of goodwill, reduced market share, and reputational damage. *Disney Enters., Inc. v. VidAngel, Inc*., 869 F.3d 848, 866 (9th Cir. 2017) (affirming grant of preliminary injunction); *Synopsys, Inc. v. AzurEngine Techs., Inc*., 401 F. Supp. 3d 1068, 1074 (S.D. Cal. 2019) (identifying bases for irreparable harm in the DMCA context).

## IV.   ARGUMENT

### A.   Daybreak Can Establish a Likelihood of Success on the Merits

#### 1.   Copyright Infringement

To establish a *prima facie* case of copyright infringement, a plaintiff must show the following: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991).

Daybreak owns valid and subsisting copyrights in EverQuest. Complaint ¶ 71, Ex. A. Daybreak's copyright registrations constitute *prima facie* evidence of the validity of the copyrights and the facts stated therein. 17 U.S.C. § 410(c). Copyright protects both the literal elements (source code and object code), as well as the non-literal elements of the game (such as the graphics and user interface). *Oracle Am., Inc. v. Google Inc*., 750 F.3d 1339, 1355 (Fed. Cir. 2014); U.S. Copyright Off., Copyright Registration of Computer Programs, Circular 61, at 6 (rev. ed. 2021). (stating that Copyright Office will accept deposit of source code or object code). Defendants' extensive unauthorized replication of Daybreak's copyrighted work encompasses both types of elements.

With respect to the literal elements, Defendants violate Daybreak's copyright using the following process:

(a) modifying 234 of Daybreak's copyrighted files spanning critical game systems including maps, user interface elements, help documentation, authentication controls, and visual assets affecting core EverQuest functionality;

(b) modifying eqhost.txt to redirect client connections from Daybreak's authorized servers (everquest.com) to THJ's unauthorized servers (projecteq.net); and

(c) altering eqlsClient.ini to bypass Daybreak's login verification URLs and redirect authentication requests to THJ's systems.

These systematic modifications collectively enable users to access EverQuest's copyrighted experience through THJ's servers without authorization from Daybreak, defeating the technological measures Daybreak implemented. Kitchen Decl. ¶ 26 and Kitchen Report ¶ 90; *see also* Supp. Chan Decl. ¶¶ 5-6.

THJ's comprehensive approach—modifying the client and creating emulated servers—constitutes extensive copying of both client-side and server-side elements of Daybreak's copyrighted work. This creates unauthorized derivative works that recreate the entire EverQuest experience without authorization and infringes Daybreak's protected copyrights. *Atari Games Corp. v. Nintendo of Am. Inc*., 975 F.2d 832, 844 (Fed. Cir. 1992) (holding that reverse engineering object code "as an excuse to exploit commercially or otherwise misappropriate protected expression" constitutes copyright infringement).

With respect to the non-literal elements, Defendants' unauthorized process allows THJ to display EverQuest's characters, environments, user interface elements, and spell effects using the same underlying asset files as EverQuest. Kitchen Decl. ¶¶ 18-21. This includes displaying identical versions of EverQuest's iconic characters such as Lady Vox, Lord Nagafen, Innoruuk, and Cazic-Thule using the same underlying asset files that EverQuest uses. *Id*. ¶ 18; *see also* Tuanqui Decl. ¶¶ 9-13; *see also* Ex. A-D to Tuanqui Decl. (side-by-side visual comparisons). The identical visual presentation demonstrates direct utilization of EverQuest's character model

files, texture maps, and animation data. Kitchen Decl. ¶ 18. Defendants also replicate specific encounters, dialogues, and narrative elements associated with these proprietary characters through their emulated server environment. Complaint ¶ 74(f); Tuanqui Decl. ¶ 14.

These actions also constitute direct copyright infringement of Daybreak's exclusive rights under 17 U.S.C. § 106, including the rights to reproduce, distribute, display, and create derivative works based on its copyrighted material. *See Ilyon Dynamics Ltd. v. Kings Fortune Pte. Ltd*., No. 24-CV-04581-NC, 2025 WL 604966, at **4-5 (N.D. Cal. Feb. 25, 2025) (finding plaintiff stated a claim for copyright infringement of non-literal elements of computer program including graphics and user interface); *Bungie, Inc. v. Phoenix Digital Grp. LLC*, No. C21-0811 TSZ, 2024 WL 4008567, at *2 (W.D. Wash. Aug. 30, 2024) (sustaining jury verdict finding copyright infringement based on display of protected audiovisual works in video game); *Midway Mfg. Co. v. Dirkschneider*, 543 F. Supp. 466, 483 (D. Neb. 1981) (granting preliminary injunction in copyright infringement and trade dress infringement action concerning copying of plaintiff's Pac-Man video game; noting that "[i]t cannot be overemphasized that, in virtually every detail, the defendants' games are identical to the plaintiff's.").

Given the extensive, unauthorized copying and modification of Daybreak's copyrighted content, Daybreak is highly likely to succeed on its copyright infringement claims.

### 2. Digital Millennium Copyright Act Violations

Daybreak alleges violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201, which prohibits the circumvention of technological measures that effectively control access to copyrighted works.

Daybreak employs sophisticated technological protection measures ("TPMs") that control access to EverQuest. Supp. Chan Decl. ¶¶ 43-46. These TPMs work

together to ensure only authorized users can access the complete game experience. Daybreak's TPMs include two key components:

> (1) Server-Side Access Controlled by Daybreak: All account verification, subscription validation, and access authorization occur on Daybreak's servers. Users who lack valid accounts, active subscriptions, or proper authorization are denied access before they can reach any game servers containing copyrighted content.

> (2) Ongoing Verification by Daybreak: During gameplay, Daybreak's servers maintain session management protocols that continuously verify user authorization, including ongoing validation of subscription status and account standing throughout the gaming session. Users whose accounts become invalid or subscriptions expire are disconnected from the service.

These two components work together to control access to the EverQuest experience. Supp. Chan Decl. ¶¶ 43-46.

These are the types of technical measures courts find sufficient under the DMCA. *See*, *e.g*., *EchoStar Satellite LLC v. ViewTech, Inc*., No. 07-CV-1273-BEN-WVG, 2011 WL 1522409, at *2 (S.D. Cal. Apr. 20, 2011) (finding that plaintiff's complex measures including encryption and providing only lawful users with tools to access the copyrighted programming demonstrated an access control measure under the DMCA); *Dish Network, L.L.C., v. Vicxon Corp*., No. 12-cv-9-L WVG, 2013 WL 3894905, at *1 (S.D. Cal. July 26, 2013) (finding that plaintiff's use of an encryption system to restrict access to their signals such that only authorized subscribers can decrypt the signals was an access control measure under the DMCA).

THJ circumvents these technological measures through a comprehensive two-pronged approach:

- *Client-Side Modifications*: Through modification of eqhost.txt, THJ redirects client connections from Daybreak's authorized servers (everquest.com) to THJ's unauthorized servers (projecteq.net).  Kitchen Decl. ¶ 26.

- *Server-Side Operations*: By altering eqlsClient.ini to bypass Daybreak's login verification URLs and redirect authentication requests to THJ's systems. These systematic modifications collectively enable users to access EverQuest's

Case No. 3:25-cv-01489-BAS-BLM
MOTION FOR PRELIMINARY INJUNCTION

copyrighted experience through THJ's servers without authorization from Daybreak, defeating the technological measures Daybreak implemented. Kitchen Decl. ¶ 26; Supp. Chan Decl. ¶¶ 5-6.

These technical modifications defeat the purpose of Daybreak's TPMs, which are designed to ensure that only users with valid accounts and subscriptions can access EverQuest content. By creating both modified clients and emulated servers, THJ provides users with access to Daybreak's copyrighted EverQuest content without requiring the users to authenticate through Daybreak's systems or maintain active subscriptions. This comprehensive technical workaround falls squarely within the prohibitions of 17 U.S.C. § 1201(a)(1)(A), which prohibits circumventing technological measures that effectively control access to copyrighted works.

Courts consistently have found DMCA violations in similar circumstances involving authorized video game copies. *See*, *e.g.*, *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 954 (9th Cir. 2010) (finding DMCA violation where defendant's software circumvented authentication mechanism used to control access to World of Warcraft); *Sony Computer Ent. Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957, 965-966 (N.D. Cal. 2006) (finding violation where defendant circumvented technological protection measures in PlayStation games). Given the clear evidence of comprehensive circumvention through both client modification and server emulation, Daybreak is highly likely to succeed on its DMCA claim.

### 3.    Unfair Competition

Defendants' conduct constitutes unfair competition under both the Lanham Act and the California Unfair Competition Law.

#### i.    Lanham Act

Daybreak brings a claim for unfair competition under the Lanham Act for, among other actions, Defendants' infringement of EverQuest's distinctive Trade Dress. To succeed on its claim of trade dress infringement, Daybreak must show: (1) its EverQuest Trade Dress is protectable; and (2) Defendants are using Trade Dress

similar to the EverQuest trade dress in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods. *Millennium Labs., Inc. v. Ameritox, Ltd*., 817 F.3d 1123, 1127 n.1 (9th Cir. 2016) (a plaintiff must prove: (1) its claimed dress is nonfunctional and (2) serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) defendant's product creates a likelihood of consumer confusion.") (quotations and citation omitted). Daybreak is likely to succeed on both prongs of this analysis.

First, EverQuest's Trade Dress is protectable because it is non-functional and has acquired secondary meaning. The "arrangement of the individual elements" of the EverQuest Trade Dress is for "aesthetic purpose[s]" and the exclusive use by Daybreak of these elements would not put a competitor at "non-reputation-related disadvantage." *Moroccanoil, Inc. v. Zotos Int'l, Inc*., 230 F. Supp. 3d 1161, 1171 (C.D. Cal. 2017) (granting preliminary injunction for trademark infringement). Indeed, the characters used in EverQuest are "fanciful creations having no counterparts in reality" and a competitor could create a game identical to EverQuest "without copying the design feature of the plaintiff's characters." *Midway Mfg. Co*., 543 F. Supp. at 485.

Further, EverQuest's 25-year history as a leading game in the MMORPG space is sufficient to establish secondary meaning of its Trade Dress. *See Clamp Mfg. Co. v. Enco Mfg. Co*., 870 F.2d 512, 517 (9th Cir. 1989) ("Evidence of use and advertising over a substantial period of time is enough to establish secondary meaning."). Additionally, "[t]he existence of a secondary meaning may be inferred from evidence that the defendants have consciously imitated the nonfunctional design features of the plaintiff's products." *Midway Mfg. Co*., 543 F. Supp. at 486 (D. Neb. 1981). For these reasons, EverQuest's Trade Dress is protectable.

Second, likelihood of confusion is evident based on Defendants' direct copying of EverQuest's Trade Dress. "Obviously, the greater the similarity between the two

[trade dresses] at issue, the greater the likelihood of confusion." *GoTo.com, Inc. v. Walt Disney Co*., 202 F.3d 1199, 1206 (9th Cir. 2000). As discussed in detail above, THJ uses virtually identical characters, settings, graphics and user interface as EverQuest. Kitchen Decl. ¶¶ 18-21; Tuanqui Decl. ¶¶ 11-14. The fact that the THJ game copies EverQuest's Trade Dress in virtually every respect and was done so intentionally by the Defendants to take advantage of EverQuest's good will is strong evidence of likelihood of confusion. *Paramount Farms Int'l LLC v. Keenan Farms Inc*., No. 2:12-CV-01463-SVW-E, 2012 WL 5974169, at *11 (C.D. Cal. Nov. 28, 2012) (finding likelihood of confusion based on "reasonable inference" that "Defendant was intentionally copying Plaintiff's trade dress to take advantage of its reputation among consumers."); *Midway Mfg. Co.*, 543 F. Supp. at 489 (finding likelihood of confusion based in part of "defendants' conscious imitation of the plaintiff's [Pac-Man] game character").

Accordingly, Daybreak is likely to succeed on its claims of unfair competition under the Lanham Act based on false advertising and trade dress infringement.

### ii.    California UCL

Defendants' conduct violates California's prohibition against "unlawful, unfair or fraudulent" business practices. Cal. Bus. & Prof. Code § 17200 ("UCL"). As this Court has found, systematic violations of the Lanham Act constitutes an "unlawful" business practice under the UCL. In *Mongkol Muay Thai Corp. v. JG (Thailand) Co. Ltd.*, No. 22-CV-0506-BAS-VET, 2024 WL 4868300, at **7, 8 (S.D. Cal. Aug. 28, 2024) (Bashant, J.), this Court held that the defendants' trademark infringement and false designation of origin under the Lanham Act were sufficient to allege a claim under the "unlawfulness prong" of the UCL and issued a permanent injunction. The same was true in *Shawarma Stackz LLC v. Jwad*, No. 21-CV-01263-BAS-BGS, 2021 WL 5827066, at *19 (S.D. Cal. Dec. 8, 2021) (Bashant, J.) in which this Court held that because plaintiff "is likely to succeed on the merits of its Lanham Act claim, the

Court finds that [plaintiff] is also likely to succeed on the merits of the California UCL claim.").

In addition the Lanham Act violation, Defendants' violation of the DMCA resulting in economic injury also gives rise to a UCL claim. *Consumer Opinion LLC v. Frankfort News Corp*, No. 16-CV-05100-BLF, 2016 WL 6393520, at *2 (N.D. Cal. Oct. 28, 2016) (finding plaintiff stated a claim under UCL based on DMCA violations coupled with economic injury). And a breach of contract may give rise to a UCL claim if "it also constitutes conduct that is 'unlawful, or unfair, or fraudulent.'" *Conder v. Home Sav. of Am.*, 680 F. Supp. 2d 1168, 1176 (C.D. Cal. 2010) (internal citations omitted).

Defendants' commercial exploitation of Daybreak's intellectual property while evading the licensing and contractual requirements that govern legitimate competitors constitutes "unfair" business practices that harm both Daybreak and legitimate market competition. *Doe v. CVS Pharmacy, Inc*., 982 F.3d 1204, 1214 (9th Cir. 2020) (noting that "unfair" business practices include those that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"). The evidence of contractual violations and anticompetitive conduct, combined with THJ's systematic infringement, strongly supports finding that Daybreak is likely to succeed on its unfair competition claims.

### 4.    <u>Breach of Contract</u>

Daybreak is also likely to succeed on its claim that Defendants breached the EverQuest User Agreement and Software License by creating and operating THJ. The sophisticated recreation of EverQuest's systems demonstrates that Defendants obtained and used the EverQuest client software, which requires users to accept binding contractual terms. *See* ECF No. 10-2, User Agreement and Softer License ("Agreement"). These types of contracts are enforceable under California law.  *See id.* at 6 (applying California law); *Blizzard Ent. Inc. v. Ceiling Fan Software LLC*, 28

F. Supp. 3d 1006, 1015 (C.D. Cal. 2013) (enforcing video game end user license agreement).

The EULA contains multiple provisions that Defendants violated:

o    Software License Restrictions: Section 7 prohibits users from copying, distributing, modifying, or creating derivative works of the Software. Agreement at 4. Defendants systematically violated these restrictions by modifying the EverQuest client and distributing their modifications to THJ users. Kitchen Decl. at ¶¶ 22-26.

o    Server Emulator Prohibition: Section 9 specifically prohibits users from creating "any other means through which the Game may be played by others, such as through server emulators." Agreement at 4. THJ is precisely the type of unauthorized copying explicitly prohibited by this provision.

o    Third-Party Software Restriction: Section 9 also prohibits using "any third party software to modify the Software to change Game play." Id. Defendants' THJ installer modifies the EverQuest client software to redirect server connections, directly violating this provision. Kitchen Decl. at ¶ 26.

o    IP Ownership Recognition: Section 8 establishes that SOE (now Daybreak) retains "all rights, title and interest, including, without limitation, ownership of all intellectual property rights relating to or residing in the Disc, the Software and the Game." Agreement at 4. By creating THJ, Defendants breached their acknowledgment of Daybreak's exclusive IP ownership.

Daybreak can also establish damages as a result of Defendants' breach in the form of direct economic harm and incalculable non-financial harm. ████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████    Supp. Chan Decl. ¶¶ 38-40.

Accordingly, Daybreak is likely to succeed on its claim for breach of contract and is entitled to a preliminary injunction. In *Blizzard Ent. Inc.*, the Court granted summary judgment to plaintiff and entered a permanent injunction based on defendants' breach of video game license agreement which damaged plaintiff's "good will and reputation". 28 F. Supp. 3d at 1018; *see also Nexon Am. Inc. v. GK*,

No. 5:21-CV-00886-FWS-KK, 2023 WL 3432260, at *6 (C.D. Cal. Jan. 11, 2023) (granting default judgment and permanent injunction to plaintiff based on defendants' breach of video game user agreement by "hacking the [g]ame and selling, advertising, or posting information on hacks" and "selling virtual items" among other violations).

### 5.   <u>Evidence of Willful Infringement</u>

The record also demonstrates that Defendants engaged in willful and deliberate infringement and unfair competition, undertaken with knowledge of Daybreak's exclusive rights. Several factors establish willfulness:

- *Knowledge of EverQuest and Its Rights Structure*: The sophistication and accuracy of THJ's recreation of EverQuest's complex systems, characters, and content demonstrates that Defendants are intimately familiar with the game. Such detailed knowledge necessarily includes awareness of Daybreak's intellectual property ownership, which is prominently displayed throughout the game and in required legal agreements.

- *End User License Agreements "EULA" Violations*: To access EverQuest content and understand the systems they replicated, Defendants necessarily obtained and used EverQuest client software, requiring acceptance of EULA that explicitly establish Daybreak's ownership of all intellectual property rights and specifically prohibit "creating any means through which the Game may be played by others, such as through server emulators." Agreement ¶ 9.

- *Comprehensive Nature of Infringement*: The systematic and comprehensive recreation of EverQuest's client-server architecture, character systems, user interface, and distinctive content demonstrates deliberate copying rather than inadvertent similarity. Kitchen Decl. ¶¶ 18-21. The technical complexity required to create a functioning unauthorized copy of EverQuest indicates intentional, sustained, and systematic efforts to reproduce Daybreak's copyrighted works. *Id*. ¶ 13.

- *"Anonymous" Outreach*: In March 2025, a lawyer from Defendants' counsel's firm sent an email to the General Counsel stating that he had an unnamed client who was looking for a contact at Daybreak with whom it "could discuss a potential strategic marketing/collaboration relationship" and was looking for "any ideas as to the best ways to connect business development teams". Supp. Janda Decl. ¶ 16, Ex. 2 thereto. The message did not specify any game or product and did not make any mention of THJ. *Id*. The Morgan Lewis counsel

later stated, after this lawsuit was filed, that this email was "sent anonymously on behalf of Another Quest" despite the fact that his firm represents Defendants. *Id*. It appears that Defendants intended to steal Daybreak's intellectual property and users and then, after gaining an unlawful commercial advantage, attempt to force Daybreak into a business relationship.

- *Commercial Operation*: Despite knowledge of Daybreak's rights, Defendants established a sophisticated sales and revenue model while falsely calling it a "donation" system, directly profiting from unauthorized use of Daybreak's intellectual property. Supp. Chan Decl. ¶¶ 41-42. This commercial exploitation demonstrates willful infringement for financial gain.

- *Use of Pseudonyms*: Takahashi and Taylor operate under pseudonyms ("Aporia" and "Catapultam-Habeo," respectively) rather than their real identities, and DOES 1-20 remain completely unidentified. While the use of online handles is common, operating a large-scale commercial venture infringing well-known intellectual property while avoiding identification suggests awareness of potential legal consequences.

Defendants' willful infringement weighs heavily in favor of granting emergency injunctive relief. *See Cadence Design Sys., Inc. v. Avant! Corp.*, 125 F.3d 824, 829 (9th Cir. 1997) (affirming preliminary injunction where defendant knowingly engaged in copyright infringement). The evidence of direct copying, modification, and distribution of Daybreak's copyrighted material, combined with THJ's circumvention of technological protection measures and willful nature of the infringement, strongly supports a finding that Daybreak is likely to succeed on the merits of its claims.

### B. Daybreak Will Suffer Irreparable Harm Without Preliminary Relief

Irreparable harm is harm that cannot be adequately remedied by money damages. *See Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991). In the copyright and DMCA context, irreparable harm may be established by a variety of factors, including evidence that circumvention is "threatening the copyright owner's business model, risking the copyright owner's market share, causing reputational harm to the copyright owner or its works, and/or

enabling third parties to infringe the owner's copyrights." *Synopsys, Inc*., 401 F. Supp. 3d at 1074. Here, Defendants' conduct has caused irreparable harm to Daybreak that cannot be remedied by monetary damages and requires preliminary relief during the pendency of this litigation.

### 1.    Loss of Control Over its Intellectual Property and Resulting Loss of Goodwill

THJ undermines Daybreak's ability to control the quality and content of services provided under the EVERQUEST mark. Complaint ¶ 68(b). As the Ninth Circuit has recognized, unauthorized copying that "undermines the value" of plaintiff's copyrighted works, impacts plaintiff's "business model", and impacts plaintiff's "goodwill" causes irreparable harm. *Disney Enters., Inc*., 869 F.3d at 866.

THJ operates without Daybreak's quality assurance and security controls. Complaint ¶ 68(b); Kitchen Decl. ¶ 12; Supp. Chan Decl. ¶ 6. This exposes players to potential security vulnerabilities, gameplay imbalances, and other issues that could reflect poorly on the EverQuest brand. If players have negative experiences with THJ, they may attribute those negative experiences to the EverQuest franchise as a whole, damaging Daybreak's reputation and goodwill in ways that cannot be quantified or repaired with monetary damages. *See*, *e.g*., *Warner Bros. Ent. Inc. v. WTV Sys., Inc*., 824 F. Supp. 2d 1003, 1014 (C.D. Cal. 2011) (granting preliminary injunction where defendant's service threatens plaintiff's market "by offering a sub-optimal customer experience and, thus, tarnishing customers' perception of video on demand" for plaintiffs' copyrighted works).

### 2.    Measurable User Base Decline Threatens the EverQuest Franchise

As detailed in the Supplemental Chan Declaration, the launch of THJ has directly caused measurable harm to Daybreak's EverQuest business. It is well-established that evidence of customer loss supports a finding of irreparable harm. *Am.*

*Rena Int'l Corp v. Sis-Joyce Int'l Co*., No. CV 12-06972 DMG (JEMX), 2012 WL 12538385, at *9 (C.D. Cal. Oct. 15, 2012).

Here, statistical analysis of player activity demonstrates a clear correlation between THJ's growth and the decline in official EverQuest server populations:

- ███████████████████████████████████████████
  ███████████████████████████████████

  ██████████████████████████████████████████
  ████████████████████████████████████████
  ████████████████████████████████████████
  █████████████████████████

  █████████████████████████████████████████
  ████████████████

  ██████████████████████████████

  ████████████████████████████████████████

  █████████████████████████████████████████

  ███████████████████████████████████████ *Id*. ¶ 17.

At the same time that EverQuest has experienced unprecedented decline, THJ has grown exponentially due to the direct theft of EverQuest users. According to an anonymous December 2024 email sent to Daybreak's Privacy Officer mailbox, it was reported that THJ already had 2,000 users and was making $20,000 per month. Supp. Janda Decl. ¶ 15, Ex. 1. Today, THJ has more than 30,000 users and ████████ ██████████████████████ Supp. Chan Decl. ¶ 30; Supp. Janda Decl. ¶ 17, Ex. 3. Moreover, online activity demonstrates that THJ is stealing directly from EverQuest users. Supp. Janda Decl. ¶¶ 2-14.

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ███████████████████████████████████████████████

4 ███████████████████████████████████████████████

5 ███████████████████████████████████████████████

6 ███████████████████████████████████████████████

7 ███████████████████████████████████████████████

8 ████████████████████████ ████████

9    Given this ever-increasing threat to EverQuest's mere existence, a preliminary

10 injunction is warranted. *Am. Rena Int'l Corp*., No. CV 12-06972 DMG (JEMX),

11 2012 WL 12538385, at *9 (granting preliminary injunction where plaintiff "is also

12 threatened with extinction as a result of all of Defendants' unlawful activities");

13 *Nintendo of Am. Inc. v. Chan*, No. CV 09-4203JFW(PLAX), 2009 WL 2190186, at

14 *4 (C.D. Cal. July 21, 2009) (granting preliminary injunction where defendants'

15 illegal copying will "detract from [plaintiff's] consumer base"); *i4i Ltd. P'ship v.*

16 *Microsoft Corp*., 598 F.3d 831, 862 (Fed. Cir. 2010), aff'd, 564 U.S. 91, 131 S. Ct.

17 2238, 180 L. Ed. 2d 131 (2011) (granting permanent injunction where infringement

18 "rendered i4i's product obsolete for much of the custom XML market, causing i4i to

19 lose market share and change its business strategy to survive").

20        **3.    Incalculable Financial Harm**

21    While financial harm alone may not constitute irreparable harm, the financial

22 impact in this case is so significant and difficult to calculate that it contributes to the

23 irreparable nature of the harm. By capitalizing on EverQuest's IP and established

24 gaming community, THJ causes continuing harm to Daybreak's franchise value and

25 market position. Kitchen Decl. ¶¶ 27-31. ███████████████████

26 ███████████████████████████████████████████████

27 ███████████████████████████████████████████████

28 ████████████ Supp. Chan Decl. ¶ 39.

███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████ *Id.* ¶¶ 10, 32, 37-39. As Mr. Kitchen explained, player departure creates an accelerating effect where each departing player makes the remaining experience less attractive, encouraging additional departures. As guild membership declines, group activities become harder to organize, and the social ecosystem that originally attracted players deteriorates. This acceleration means that early intervention is critical - once the exodus reaches a certain threshold, it becomes extremely difficult to reverse. Kitchen Decl. ¶ 34; Supp. Chan Decl. ¶ 10. Thus, monetary damages are simply insufficient to compensate Daybreak for the harms caused by Defendant's illegal conduct as it is unlikely Daybreak will be able to revive EverQuest's customer base if Defendant succeeds in destroying it.

Due to the complexity of the gaming ecosystem and the indirect effects on player behavior mentioned by Ms. Chan and Mr. Kitchen, it is impossible to precisely quantify the full financial impact, rendering monetary damages an inadequate remedy. The harm to EverQuest's brand reputation and player community value, combined with the cascading effects throughout Daybreak's business model, constitutes irreparable harm that cannot be adequately compensated through monetary awards. *See Disney Enters., Inc*., 869 F.3d at 866 (noting that "although [defendant] argues that damages could be calculated based on licensing fees, the district court did not abuse its discretion in concluding that the loss of goodwill, negotiating leverage, and non-monetary terms in the Studios' licenses cannot readily be remedied with damages.").

## C.    The Balance of Equities Tips Sharply in Daybreak's Favor

When balancing the equities, the Court weighs "the competing claims of injury" and considers "the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks omitted).

The balance tips sharply in Daybreak's favor. Daybreak faces potential destruction of intellectual property it has developed and maintained for over two decades. THJ's continued operation threatens Daybreak's control over its IP, its reputation, and the franchise's existence.

On the other hand, Defendants would be enjoined from continuing infringing activities that they had no legal right to undertake in the first place. As the Ninth Circuit has noted, a defendant who knowingly infringes another's copyright "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities." *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995); *Synopsys, Inc.*, 401 F. Supp. 3d at 1074 (granting preliminary injunction where only harm to defendant is loss of "ill-gotten" benefit "from impermissibly accessing plaintiff's software").

The potential harm to Daybreak from continued infringement far outweighs any inconvenience to Defendants from being enjoined. Daybreak risks the collapse of its franchise; Defendants risk losing the ability to continue unlawful conduct. Any financial harm to Defendants is self-inflicted and not cognizable. *See id*.

## D.     A Preliminary Injunction is in the Public Interest

The final factor to consider is whether a preliminary injunction would serve the public interest. In intellectual property cases, there is a public interest in upholding the protections afforded by copyright law. *See*, *e.g.*, *Disney Enters., Inc.*, 869 F.3d at 867; *Apple Inc. v. Psystar Corp.*, 673 F. Supp. 2d 943, 950 (N.D. Cal. 2009), *aff'd*, 658 F.3d 1150 (9th Cir. 2011) (finding that an "injunction preventing Psystar from continuing to commit infringing and illegal, if not criminal, acts under the Copyright Act and DMCA would ensure that the public will continue to benefit from the creative fruits of Apple's labor").

Here, injunctive relief serves the public interest in multiple ways. It upholds the integrity of copyright law by preventing unauthorized use of intellectual property. It preserves the genuine EverQuest experience for legitimate players. It maintains

quality and security standards that protect consumers. Lastly, it ensures that creators of intellectual property can recoup their investments and continue to innovate.

## V.    **CONCLUSION**

For the foregoing reasons, Daybreak respectfully requests that the Court:

(a) enter a preliminary injunction enjoining Defendants and all persons in active concert or participation with them from developing, distributing, licensing, promoting, or otherwise making available the infringing THJ or any similar software that infringes Daybreak's copyrights; operating the website heroesjourneyemu.com and any other websites used to promote or distribute THJ; maintaining repositories at github.com/The-Heroes-Journey-EQEMU and any other online locations containing code for THJ; maintaining any public or private repositories containing code for THJ; operating any server emulation software that enables unauthorized access to Daybreak's EverQuest content; and using the EVERQUEST mark or any confusingly similar variations thereof;

(b) set a bond in the amount of $5,000 pursuant to Fed. R. Civ. P. 65(c); and

(c) grant such other relief as the Court deems just and proper.

Dated: June 16, 2025

Respectfully submitted,

DENTONS US LLP

By: *Nicholas B. Janda*
    Nicholas B. Janda
    Daniel A. Schnapp (*pro hac vice* pending)
    Monica B. Richman (*pro hac vice* forthcoming)
    Mary Kate Brennan (*pro hac vice* pending)

    *Attorneys for Plaintiff*
    *DAYBREAK GAME COMPANY, LLC*