NICHOLAS B. JANDA (SBN 253610)
nick.janda@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

MONICA B. RICHMAN (*pro hac vice* forthcoming)
monica.richman@dentons.com
DANIEL A. SCHNAPP (*pro hac vice*)
daniel.schnapp@dentons.com
MARY KATE BRENNAN (*pro hac vice*)
marykate.brennan@dentons.com
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800

*Attorneys for Plaintiff*
*DAYBREAK GAME COMPANY LLC*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYBREAK GAME COMPANY LLC,<br><br>Plaintiff,<br>v.<br><br>KRISTOPHER TAKAHASHI, ALEXANDER TAYLOR, and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 3:25-cv-01489-BAS-BLM<br><br>**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS SUPPLEMENTAL MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: August 12, 2025<br>Time: 10:30 a.m.<br>Ctrm: 12B |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2   **I.    INTRODUCTION** .................................................................................**5**

3   **II.   ARGUMENT** ......................................................................................**7**

4          **A.   Equitable estoppel fails to shield Defendants from liability.** ...........**7**

5          **B.   Daybreak did not delay and laches is inapplicable.**..........................**7**

6          **C.   Daybreak established a likelihood of success on the merits**.............**8**

7                **1.    Defendants infringe Daybreak's copyrights.** ..........................**8**

8                        **a.    Defendants infringe EverQuest's literal elements**........**9**

9                        **b.    Defendants infringe EverQuest's non-literal
elements** ..............................................................................**9**

10                     **c.    Defendants cannot rely on fair use as a defense.**.........**10**

11                **2.    Defendants violated the Digital Millennium Copyright

12                     Act.** ...................................................................................**10**

13                **3.    Defendants committed unfair competition**...........................**11**

14                        **a.    Defendants violated Section 43(a) of the Lanham
Act.** ..................................................................................**11**

15                **4.    Defendants breached the EverQuest EULA.** ........................**12**

16           **D.   Without preliminary relief, Daybreak will be irreparably

17               harmed.** ..........................................................................................**12**

18           **E.   The balance of equities and public interest favor Daybreak.**.........**14**

            **F.   Daybreak correctly sued Defendants Takahashi and Taylor.**........**14**

19   **III.  CONCLUSION** ...............................................................................**14**

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Am. Rena Int'l Corp., v. Sis-Joyce Int'l Co.*,
    No. CV 12-06972 DMG, 2012 WL 12538385
6
    (C.D. Cal. Oct. 15, 2012)..................................................................................13

7
*AMF Inc. v. Sleekcraft Boats*,
    599 F.2d 341 (9th Cir. 1979)............................................................................11
8

9
*Atari Games Corp. v. Nintendo of Am. Inc.*,
    975 F.2d 832 (Fed. Cir. 1992)..........................................................................10
10

11
*Bungie, Inc. v. Phoenix Digital Grp. LLC*,
    No. C21-0811 TSZ, 2024 WL 4008567
12
    (W.D. Wash. Aug. 30, 2024)............................................................................10

13
*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    20 Cal. 4th 163 (Cal. 1999) .......................................................................11, 12
14

15
*CyberMedia, Inc. v. Symantec Corp.*,
    19 F. Supp. 2d 1070 (N.D. Cal. 1998)................................................................9
16

17
*DISH Network L.L.C. v. Jadoo TV, Inc.*,
    No. 20-CV-01891-CRB, 2020 WL 5816579
18
    (N.D. Cal. Sept. 30, 2020) ................................................................................14

19
*Disney Enters., Inc. v. VidAngel, Inc.*,
20
    869 F.3d 848 (9th Cir. 2017).........................................................................8, 14

21
*Google LLC v. Oracle Am., Inc.*,
22
    593 U.S. 1 (2021) .............................................................................................10

23
*GoTo.com, Inc. v. Walt Disney Co.*,
24
    202 F.3d 1199 (9th Cir. 2000)..........................................................................11

25
*i4i Ltd. P'ship v. Microsoft Corp.*,
    598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) ...............................13
26

27
*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*,
    214 Cal. App. 4th 544 (Cal. Ct. App. 2013) ....................................................12
28

Case No. 3:25-cv-01489-BAS-BLM
REPLY ISO MOTION FOR PI

*Lilith Games (Shanghai) Co. v. UCool, Inc.*,
No. 15-CV-01267-SC, 2015 WL 5591612
(N.D. Cal. Sept. 23, 2015) ........................................................................... 10

*Mahroom v. Best W. Int'l, Inc.*,
2009 WL 248262 (N.D. Cal. Feb. 2, 2009) ...................................................... 13

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
629 F.3d 928 (9th Cir. 2010) ........................................................................ 9

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
518 F. Supp. 2d 1197 (C.D. Cal. 2007) .......................................................... 7

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
886 F.3d 803 (9th Cir. 2018) ....................................................................... 13

*Neo4j, Inc. v. PureThink, LLC*,
480 F. Supp. 3d 1071 (N.D. Cal. 2020) .......................................................... 13

*Oracle Am., Inc. v. Google Inc.*,
750 F.3d 1339 (Fed. Cir. 2014) ..................................................................... 9

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014) .................................................................................... 12

*In re Pomona Valley Med. Grp., Inc.*,
476 F.3d 665 (9th Cir. 2007) ....................................................................... 11

*Sega Enters. v. Accolade, Inc.*,
977 F.2d 1510 (9th Cir. 1992) ...................................................................... 10

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
846 F. Supp. 2d 1063 (N.D. Cal. 2012) .......................................................... 8

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
315 F. Supp. 3d 1147 (C.D. Cal. 2018) .......................................................... 8

*Triad Sys. Corp. v. Se. Express Co.*,
64 F.3d 1330 (9th Cir. 1995) ....................................................................... 14

**Statutes**

17 U.S.C. § 1201 ........................................................................................ 11

## I.  **INTRODUCTION**

Defendants want this Court to believe that they are "just another not-for-profit emulator." In fact, Defendants have created an unauthorized, infringing derivative work that is a blatant rip-off of EverQuest, and have set up a competing business which steals customers and exploits Defendants' intellectual property, without paying for its development costs. Defendants know that the cost of developing a video game like EverQuest "is usually in excess of $60M . . . in some cases running in excess of $250M." Karlsson Decl. ¶ 11.

Defendants also want this Court to believe that Daybreak has sat idly by and allowed other emulators to thrive, "without…taking any action to stop the alleged intellectual property infringement." Opp. at 10. This assertion is false. In fact, while Daybreak loves its true fans, some of whom enjoy creating private copies of the original version of EverQuest (colloquially, "emulators"), Daybreak has never stated or implied that any emulator can operate without authorization.

In that spirit, Daybreak has authorized two popular emulators, Project 1999 ("P99") and Project Quarm, to operate subject to important written restrictions. These restrictions include, as a matter of illustration, that the emulators remain personal fan projects that emulate only the early version of EverQuest, with no changes to gameplay, and a prohibition on sales of anything. As the former lead of the EverQuest development team, Holly Longdale, succinctly stated in a 2019 article: "The Project 1999 guys are not malicious or trying to steal our money."

Indeed, Defendants do not, as they cannot, identify a single revenue generating emulator authorized by Daybreak. Conversely, Defendants systematically modify Daybreak's copyrighted material to offer a competing revenue generating company that entirely relies upon Daybreak's intellectual property. The THJ universe that Defendants are marketing as their own is an ***exact replica*** of EverQuest's iconic characters, settings, narratives, and other unique characteristics.

Case No. 3:25-cv-01489-BAS-BLM
REPLY ISO MOTION FOR PI

1  Defendants have also made every attempt to steal Daybreak's customers by
2  giving them an unauthorized "God mode" version of the game that allows players to
3  burn through content at an unhealthy pace. While they pretend to give "gifts" in
4  return for "donations," these are in fact sales transactions for virtual items called
5  Echoes of Memory ("EOM") that generate significant revenue for Defendants.

6  In March 2025, after starting their illicit business without authorization from
7  Daybreak, Defendants engaged their defense counsel to send an email to Daybreak's
8  general counsel seeking a "marketing collaboration" while failing to identify
9  anything about an emulator, EverQuest, THJ, Defendants, or a single detail that might
10  be a tip-off. Defendants have always been aware that their actions violate Daybreak's
11  intellectual property. For example, on July 17, 2025—after Daybreak sought
12  injunctive relief—Defendant Takahashi stated during a public livestream that he
13  hoped the outcome of this litigation would be that Defendants would get a "license."

14  As set forth herein, Daybreak has established likelihood of success because
15  Defendants have admitted to, *inter alia*, copyright infringement.

16  Moreover, Daybreak established in its underlying brief that it will suffer
17  irreparable harm if Defendants are not preliminarily enjoined. Worsening matters, it
18  has become clear through Defendants' Opposition and an accounting of Defendants'
19  illicit profits that ████████████████████████████████████████████████
20  ████████████████████████████. Defendants also admit in their papers that THJ
21  has "accumulated approximately 22,600 unique users" from its launch through July
22  1, 2025. Taylor Decl. ¶ 19.

23  Daybreak respectfully submits that this Court must step in now and put a stop
24  to this ongoing and catastrophic harm caused by Defendants. Without an injunction,
25  Daybreak will continue to suffer irreparable damage to its business and goodwill.
26  The stakes for the real EverQuest game and the development team that support it
27  could not be higher. Without preliminary injunctive relief from this Court, the future
28  of EverQuest, and the livelihoods of the people who operate the game, are in peril.

Case No. 3:25-cv-01489-BAS-BLM
REPLY ISO MOTION FOR PI

## II. ARGUMENT

### A. Equitable estoppel fails to shield Defendants from liability.

Equitable estoppel does not apply where a defendant relies on the plaintiff's purported conduct towards other, unrelated, dissimilarly situated third parties. Daybreak's behavior with and towards third-parties is irrelevant. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1225 (C.D. Cal. 2007). Further, there is "no rule in copyright . . . that a copyright holder is bound to pursue either *all* infringers or *none* at all." *Id*. (emphasis added).[1]

In any event, THJ does not operate like other, authorized EverQuest projects. Daybreak entered into written agreements with P99 and Project Quarm setting forth detailed restrictions. Reply Chan Declaration ("Reply Chan Decl.") ¶ 20, Ex. D. Defendants acknowledge that Daybreak's written agreement with P99 "establishes … guidelines." Opp. at 17. Specifically, both P99 and Project Quarm operate subject to agreements containing important restrictions set by Daybreak (*e.g.*, they remain personal fan projects emulating only the early version of the EverQuest, offer no changes to gameplay, and provide no sales outlets). Defendants were aware of P99's contractual restrictions and were specifically warned by the developer of P99 that "you could get in trouble" for THJ's commercial activities. Reply Chan Decl. ¶ 21.

Unlike P99 and Project Quarm, THJ changes gameplay and generates revenue at Daybreak's expense. Defendants acknowledge this critical difference with P99. Opp. at 12. ██████████████████████████████████████████████ ████████████████████████ Reply Chan Decl. ¶ 15, Ex. A.

### B. Daybreak did not delay and laches is inapplicable.

Defendants' delay argument rests—precariously—on a single, vague email sent to Daybreak's Privacy Officer's Mailbox on December 12, 2024. Supplemental

---

[1] In the cases Defendants cite, the plaintiffs were estopped for knowing of ***the defendants'***—not a third parties'—allegedly infringing conduct and allowing the conduct to continue. *See* Opp. at Section IV(B)(1).

1  Janda Decl., Ex. 1. The anonymous email (which does not mention THJ or

2  Defendants' names/pseudonyms) was automatically diverted to the recipient's junk

3  email folder at the time it was sent and was not discovered until after this litigation

4  was initiated. Reply Chan Decl. ¶ 5.

5      In the preliminary injunction context, courts in this Circuit "'are loath to

6  withhold relief solely' because of delay, which 'is not particularly probative in the

7  context of ongoing, worsening injuries.'" *Disney Enters., Inc. v. VidAngel*, Inc., 869

8  F.3d 848, 866 (9th Cir. 2017). The same holds true for Daybreak's unfair competition

9  claims. *See SunEarth, Inc. v. Sun Earth Solar Power Co*., 846 F. Supp. 2d 1063, 1082

10  (N.D. Cal. 2012) (granting PI).[2] Regardless, Daybreak promptly brought this action

11  within three months after it learned of the true scope of Defendants' infringement,

12  which is shorter than any time identified in Defendants' case law.

13      **C.**    **Daybreak established a likelihood of success on the merits.**

14      THJ *only exists* by Defendants' unlawful repurposing and exploiting of

15  Daybreak's protected works. Defendants modify Daybreak's copyright protected

16  code, infringe EverQuest's non-literal elements (*e.g.*, characters and Norrath), and

17  generate funds from THJ as a result of their infringement.

18      **1.**    **Defendants infringe Daybreak's copyrights.**

19      Software "contains three distinct layers of content: literal elements, individual

20  non-literal elements, and dynamic non-literal elements . . . All three are works of

21  authorship that can merit copyright protection." *Ticketmaster L.L.C. v. Prestige Ent.*

22  *W., Inc.*, 315 F. Supp. 3d 1147, 1160 (C.D. Cal. 2018). As detailed below, THJ

23  infringes all three layers of EverQuest: (i) source code; (ii) individual non-literal

24  elements (*e.g*, individual audiovisual components such as the Iconic EverQuest

25  Characters); and (iii) dynamic non-literal elements (*e.g.*, the "real-time experience of

26

27  _____

28  [2] Defendants again cite inapposite cases. Unlike the facts in those cases, here, Daybreak simultaneously filed its Complaint and TRO motion. Dkt. No. 1, 5.

1    traveling through different worlds, hearing their sounds, viewing their structures,

2    encountering their inhabitants and monsters, and encountering other players."). *MDY*

3    *Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 954 (9th Cir. 2010). Daybreak

4    addresses the non-literal elements together below.

5                    **a.      Defendants infringe EverQuest's literal elements**

6    Defendants committed copyright infringement by modifying Daybreak's

7    copyrighted files to create THJ. Reply Kitchen Declaration ("Reply Kitchen Decl.")

8    ¶¶ 5, 21, 24; Opp. at 23 ("Defendants' alteration of . . . files"). Defendants even

9    acknowledge that they modified Daybreak's files (*i.e.*, committed infringement).

10   Opp. at 23. While they describe it as "rudimentary," it is anything but. *Id*.

11   Even a small amount of modification or copying constitutes infringement.

12   *CyberMedia, Inc. v. Symantec Corp*., 19 F. Supp. 2d 1070, 1077 (N.D. Cal. 1998).

13   Defendants claim that a majority of their modified files do not contain protected

14   expression. Opp. at 23. This argument fails. First, "runtime" files are still protected

15   by copyright. *Oracle Am., Inc. v. Google Inc*., 750 F.3d 1339, 1355 (Fed. Cir. 2014).

16   Further, "runtime" files contain compiled object code and proprietary data authored

17   by Daybreak, and they control how the client operates at runtime. Reply Kitchen

18   Decl. ¶ 6. THJ modifies and replaces these runtime files to alter the execution

19   behavior of the EverQuest client, enabling unauthorized access and display of

20   Daybreak's copyrighted content. *Id*. ¶ 8.

21   Defendants fail to address their other unlawful acts of modification, including

22   adding and deleting files. Kitchen Report ¶ 149; Reply Kitchen Decl. ¶¶ 5, 21, 24.

23                    **b.      Defendants infringe EverQuest's non-literal elements**

24   Defendants infringe Daybreaks' individual and dynamic, non-literal elements.

25   *See* Karlsson Decl. ¶ 18 (conceding that THJ displays Daybreak's copyrighted visual

26   elements). Copyright law considers these protected expression, separate from the

27   literal source code itself. *See MDY Indus., LLC*, 629 F.3d at 954. Without Daybreak's

28

Case No. 3:25-cv-01489-BAS-BLM
                                                                     REPLY ISO MOTION FOR PI

1  non-literal elements, THJ would not exist. There would be no characters, no Norrath,

2  no game, no players. *See*, *e.g.*, Takahashi Decl. ¶¶ 10-11; 36-37.

3      Defendants cite no authority for their argument that THJ's use of Daybreak's

4  non-literal elements does not constitute copyright infringement. Opp. at 22. THJ is

5  not independently developed; it modifies Daybreak's protected files to display

6  proprietary game assets without authorization. Reply Kitchen Decl. ¶¶ 5, 18, 21, 24.[3]

7      Moreover, THJ's modifications to EverQuest and new storylines constitute

8  unauthorized derivate works. *Bungie, Inc. v. Phoenix Digital Grp. LLC*, No. C21-

9  0811 TSZ, 2024 WL 4008567, at *3 (W.D. Wash. Aug. 30, 2024) (modification of

10  audiovisual display in video game constituted unauthorized derivative work).

**c.      Defendants cannot rely on fair use as a defense.**

12      The fair use doctrine does not apply here. Defendants' purpose in modifying

13  EverQuest's code was not to "study its functional requirements," but to create a

14  *derivative* (*i.e.*, not an entirely new) work. *Sega Enters. v. Accolade, Inc.*, 977 F.2d

15  1510, 1522 (9th Cir. 1992). Nor was Defendants' use "consistent with that creative

16  'progress' that is the basic constitutional objective of copyright itself." *Google LLC

17  v. Oracle Am., Inc.*, 593 U.S. 1, 30 (2021). Defendant's modifications were "an

18  excuse to exploit commercially or otherwise misappropriate protected expression".

19  *Atari Games Corp. v. Nintendo of Am. Inc.*, 975 F.2d 832, 844 (Fed. Cir. 1992).

**2.      Defendants violated the Digital Millennium Copyright Act.**

21      Defendants claim that THJ does not "attempt to connect to Daybreak's

22  servers." Opp. at 24. The EverQuest client (the program installed on a user's

---

24  [3] In *Lilith Games (Shanghai) Co. v. UCool, Inc.*, the Court found a likelihood of
25  success on the infringement of both the literal (code) and non-literal (user interface)
   elements of the plaintiff's game and noted that "infringement will be found where
26  the non-literal elements expressed by a game's source code—including the user
   interface—are substantially similar to another game, even though there are many
27  different ways to write the source code to create those non-literal elements." No. 15-
28  CV-01267-SC, 2015 WL 5591612, at *8 (N.D. Cal. Sept. 23, 2015).

Case No. 3:25-cv-01489-BAS-BLM
                                             REPLY ISO MOTION FOR PI

computer) is designed to communicate with Daybreak's authentication servers to verify a user's credentials before gameplay can begin. Without that connection, the game remains locked and unusable. Reply Chan Decl. ¶ 30-32; Reply Kitchen Decl. ¶¶ 12-14. THJ's installer modifies the EverQuest client to redirect authentication requests to an unauthorized third-party server. This redirection disables Daybreak's access control system and enables users to launch and play EverQuest without any communication with Daybreak's infrastructure. In doing so, THJ circumvents the technological measures that control access to Daybreak's copyrighted game environment, violating DMCA's prohibition against circumvention. *See* 17 U.S.C. § 1201(a)(1), (a)(2).

### 3.   Defendants committed unfair competition.

#### a.   Defendants violated Section 43(a) of the Lanham Act.

Defendants do not mention the critical factors under *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). Nevertheless, the Court need not engage in a prong-by-prong analysis of those factors because Defendants admit to directly copying EverQuest. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000) (emphasis added).

Defendants do not argue that there are any minor (let alone major) differences between THJ and EQ's protected trade dress. Therefore, Plaintiff has demonstrated that it is likely to succeed on its trade dress infringement claim. *See GoTo.com, Inc.*, 202 F.3d at 1206.

### I.   UCL Claims

The UCL's "coverage is sweeping" and enables courts to remedy "wrongful business conduct *in whatever context such activity might occur*." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 165, 180-81 (Cal. 1999) (emphasis added.); *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 675 (9th Cir. 2007) (The UCL "embrac[es] anything that can properly be called a business practice.").

As set forth in the Reply Chan Decl., Defendants' conduct "significantly threatens or harms competition." ¶¶ 27-29; *Cel-Tech Commc'ns*, 20 Cal. 4th at 187 (emphasis added). Daybreak demonstrated a likelihood of success on its UCL claim because Defendants have, minimally and in bad faith: (i) created, operated, and promoted THJ; and (ii) established a sophisticated sales and revenue model while falsely calling it a "donation" system. Defendants' illegal conduct allows and encourages consumers to utilize THJ while diverting them away from EverQuest. *See*, *e.g.*, *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 566-67 (Cal. Ct. App. 2013) (UCL "has as a major purpose the preservation of fair business competition") (citations and quotations omitted).

### 4.    Defendants breached the EverQuest EULA.

Defendants concede that they breached the EverQuest EULA. Opp. at 26. To the extent Defendants claim that they were "induced" by Daybreak to breach the contract, this simply repackages their meritless equitable estoppel argument. *See supra* Section II.A.

### D.    Without preliminary relief, Daybreak will be irreparably harmed.

*First*, as discussed above, the timing of Daybreak's motion does not bar equitable relief, as Defendants have not established "extraordinary circumstances." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 685 (2014); *see also supra* Section II.B.

*Second*, the evidence demonstrates that EverQuest's decline corresponds directly with THJ's launch. Reply Chan Decl. ¶¶ 24-26. The alleged "contradictions" identified by Defendants are red herrings. For example, Defendant Taylor concedes that THJ has "accumulated approximately 22,600 unique users" from its launch through July 1, 2025. Taylor Decl. ¶ 19. Further, the cherry-picked excerpts from the EG7 presentations do not support Defendants' claims. Defendants incorrectly argue that EG7's quarterly reports were inconsistent and that EverQuest's numbers declined in June 2025 not due to direct competition from THJ, but because

Case No. 3:25-cv-01489-BAS-BLM
REPLY ISO MOTION FOR PI

1    Daybreak's Fangbreaker server launch in May 2025 was poorly received. Opp. at 30-

2    31. In fact, EG7 reported a decline for EverQuest in Q1 2025, although at that time

3    Daybreak was not yet aware of the effect that THJ was having on EverQuest's

4    performance.   Reply Chan Decl. ¶ 6. Moreover, there is substantial evidence that

5    Fangbreaker was well received at launch in late May 2025, but by that time THJ had

6    positioned itself as a direct competitor of EverQuest, with the most viewed YouTube

7    video about Fangbreaker entitled "EverQuest 2025: Fangbreaker TLP vs. Heroes'

8    Journey – Which Server Should You Play?"  *Id*. ¶¶ 8-10.

9       *Third*, the evidence shows myriad irreparable harm to Daybreak as a result of

10   Defendants' bad acts. *See* Motion at 25-29.[4] THJ's infringing activity threatens the

11   very existence of EverQuest and cannot be remedied by monetary damages. *See*

12   Reply Chan Decl. ¶ 27-29. This is exactly the kind of irreparable harm that courts

13   issue preliminary injunctions to address. For example, in *Mahroom v. Best W. Int'l,*

14   *Inc.*, the Court noted that a "[m]ajor disruption of a business can be as harmful as its

15   termination and thereby constitute[s] irreparable injury" and that "significant

16   damages still may constitute irreparable injury if the business is threatened." No. C

17   07-2351 JF (HRL), 2009 WL 248262, at *3 (N.D. Cal. Feb. 2, 2009) (citations

18   omitted); *see also Am. Rena Int'l Corp., v. Sis-Joyce Int'l Co.*, No. CV 12-06972

19   DMG (JEMX), 2012 WL 12538385, at *9 (C.D. Cal. Oct. 15, 2012) (granting

20   preliminary injunction where plaintiff "is also threatened with extinction as a result

21

22

23

24   [4] Defendants' argument that Daybreak cannot claim loss of goodwill due to "naked
     licensing" is flawed. Opp. at 29. Naked licensing cannot exist "where no trademark
25   license existed" because there is no requirement for "a trademark owner to police the
     quality of goods produced by a third party who has no right to use the trademark[.]"
26   *Neo4j, Inc. v. PureThink, LLC*, 480 F. Supp. 3d 1071, 1078 (N.D. Cal. 2020). Thus,
     the existence of unlicensed infringing emulators cannot prevent Daybreak's recovery
27   on a *copyright* claim.

28

                                              Case No. 3:25-cv-01489-BAS-BLM
                                              REPLY ISO MOTION FOR PI

1  of all of Defendants' unlawful activities").[5]

2  **E.    The balance of equities and public interest favor Daybreak.**

3  Defendants acknowledge that the cost of developing a video game like

4  EverQuest "is usually in excess of $60M . . . in some cases running in excess of

5  $250M." Karlsson Decl. ¶ 11. Here, the balance of equities favors Daybreak.

6  Daybreak spent millions and 25 years in developing EverQuest whereas Defendants

7  illegally stole EverQuest's assets wholesale.

8  In intellectual property cases, there is a public interest in upholding the

9  protections afforded by copyright law. *See, e.g., Disney Enters., Inc.*, 869 F.3d at 867.

10  Moreover, any supposed "harm" to the public interest if THJ were enjoined is not

11  cognizable where THJ is built on blatant infringement and unfair competition. A

12  defendant who knowingly infringes another's copyright "cannot complain of the

13  harm that will befall it when properly forced to desist from its infringing activities."

14  *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995).

15  **F.    Daybreak correctly sued Defendants Takahashi and Taylor.**

16  The law is clear that "officers and directors are personally liable if they are the

17  "guiding spirit" behind the infringement." *DISH Network L.L.C. v. Jadoo TV, Inc.*,

18  No. 20-CV-01891-CRB, 2020 WL 5816579, at *4 (N.D. Cal. Sept. 30, 2020).

19  Defendant Takahashi admits that he developed THJ (Takahashi Decl. ¶ 38) and

20  Taylor confirms that he "partnered" with Takahashi "to create THJ." Taylor Decl. ¶

21  4; *see also* Comp. ¶ 4.

22  **III.    CONCLUSION**

23  For the foregoing reasons, Daybreak respectfully requests that the Court enter

24  a preliminary injunction in the form set forth in Daybreak's Proposed Order.

25

26

27  [5] *See also* Motion at 28 citing *Nintendo of Am. Inc. v. Chan*, No. CV 09-4203JFW(PLAX), 2009 WL 2190186, at *4 (C.D. Cal. July 21, 2009); *i4i Ltd. P'ship*

28  *v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

1    Dated: August 6, 2025          Respectfully submitted,

2                                   DENTONS US LLP

3                                   By: *Daniel A. Schnapp*
                                        Daniel A. Schnapp (*pro hac vice*)
4                                       Nicholas B. Janda
                                        Monica B. Richman (*pro hac vice*
5                                       forthcoming)
                                        Mary Kate Brennan (*pro hac vice*)
6

7                                       *Attorneys for Plaintiff*
                                        *DAYBREAK GAME COMPANY, LLC*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 3:25-cv-01489-BAS-BLM
REPLY ISO MOTION FOR PI