NICHOLAS B. JANDA (SBN 253610)
nick.janda@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

MONICA B. RICHMAN (*pro hac vice* forthcoming)
monica.richman@dentons.com
DANIEL A. SCHNAPP (admitted *pro hac vice*)
daniel.schnapp@dentons.com
MARY KATE BRENNAN (admitted *pro hac vice*)
marykate.brennan@dentons.com
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800

*Attorneys for Plaintiff*
*Daybreak Game Company LLC*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAYBREAK GAME COMPANY LLC,<br><br>Plaintiff,<br>v.<br><br>KRISTOPHER TAKAHASHI, ALEXANDER TAYLOR, and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 3:25-cv-01489-BAS-BLM<br><br>**REPLY DECLARATION OF GARRY KITCHEN IN SUPPORT OF PLAINTIFF'S SUPPLEMENTAL MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: August 12, 2025<br>Time: 10:30 a.m.<br>Ctrm: 12B |

# REPLY DECLARATION OF GARRY KITCHEN

I, Garry Kitchen, declare as follows:

## I. INTRODUCTION AND PURPOSE

1. I submit this supplemental declaration in response to factual and technical assertions made in the opposition brief filed by Defendants Kristopher Takahashi and Alexander Taylor on July 30, 2025 (Dkt. 50), in connection with Plaintiff Daybreak Game Company LLC's Motion for a Preliminary Injunction.

2. The purpose of this declaration is to rebut certain factual mischaracterizations and technical claims made by Defendants regarding the functionality of The Heroes' Journey ("THJ"), its relationship to Daybreak's EverQuest client, and the nature of THJ's modifications to EverQuest software and asset files.

3. I previously submitted a declaration and expert report in this matter (Dkt. 38-6 and Dkt. 38-7). I incorporate those opinions by reference and supplement them here based on my review of the Defendants' opposition papers and the additional materials referenced therein.

## II. REBUTTAL OF DEFENDANTS' CLAIMS

### A. *THJ Does Not Merely "Redirect" the EverQuest Client—It Uses it To Create a New Unauthorized THJ Client*

4. Defendants assert that THJ merely points an "obsolete" EverQuest client to an alternate server (Dkt. 50 at 10), implying that no modification of the client software occurs. This assertion is inaccurate.

5. As I explained in my prior declaration and expert report, the THJ installer and patching tools systematically modify 234 individual files within the EverQuest client package, and use the modified files in the creation of a new, unauthorized THJ client. These include files governing maps, UI layouts, authentication processes, spell data, loading screens, and other core game components (Dkt. 38-6 ¶¶ 22–23; Dkt. 38-7 ¶ 149).

These modifications are implemented automatically during THJ's installation process. They affect how the newly-created THJ client behaves at runtime and override the original EverQuest client architecture in order to enable communication with an unauthorized server.

B. *THJ's Alteration of the Runtime Behavior of the EverQuest Client*

6. In computer software, the term "runtime files" refers to the set of executable and data files that are accessed, loaded, or dynamically generated while a program is running. In a game like EverQuest, these include compiled code modules (such as .dll files), data archives (such as .s3d asset containers), configuration files, user interface scripts, animation data, and other files used by the client to render and manage gameplay during execution.

7. At runtime, the client dynamically loads proprietary asset files and executable modules in order to display characters, environments, interfaces, and other game content.

8. The THJ installer alters this runtime environment by replacing and modifying dozens of configuration files that control the client's startup sequence and network behavior.

9. These changes are not limited to static data or user preferences. They directly modify how the new, unauthorized client behaves at runtime. As a result, when a user launches the THJ-modified client, they experience a derivative version of EverQuest that operates outside of Daybreak's control but is still built on its copyrighted code and assets.

10. Defendants consistently refer to the "obsolete EverQuest client" as if it is intact, unmodified, and simply communicating with an emulator server. However, this description is highly misleading. Once the EverQuest client is loaded onto the machine, THJ methodically (in a well-documented series of steps discussed in my first report), copies and/or modifies from the downloaded EverQuest file the

copyrighted assets necessary to create a new, unauthorized EverQuest client, through a process of additions, patches, and deletions.

C.   *The Change to eqhost.txt Is Not Trivial—It Is a Circumvention*

11.   Defendants characterize THJ's modification of the eqhost.txt file as a superficial change that merely redirects the client to a different server. This is inaccurate—the change does not have a superficial effect.

12.   In the EverQuest client architecture, the eqhost.txt file serves as a gatekeeper for authentication. It specifies the hostname of the login server that the client must contact in order to initiate session validation and gameplay access (Dkt. 38-6 ¶ 24; Dkt. 38-7 ¶¶ 43, 49).

13.   By rewriting this file to point to unauthorized domains such as projecteq.net, THJ disables Daybreak's control over client access and enables the EverQuest software assets to operate outside the intended server ecosystem. In my opinion, this constitutes a deliberate circumvention of access control mechanisms (Dkt. 38-6 ¶ 24; Dkt. 38-7 ¶¶ 43, 49).

14.   THJ's installer also modifies additional configuration files (such as eqlsClient.ini) to redirect the login path and suppress connections to Daybreak's infrastructure (Dkt. 38-6 ¶ 25).

E.   *THJ's Development Pipeline Demonstrates Commercial-Grade Engineering*

15.   Based on my technical analysis, the THJ platform exhibits characteristics of a professionally managed and engineered game service. Defendants' attempt to characterize THJ as a mere "fan emulator" is not supported by the technical record.

16.   THJ maintains at least nine public GitHub repositories to support client patching, asset deployment, and server synchronization. These repositories reflect collaborative version control practices and active multi-developer engagement (Dkt. 38-6 ¶ 13; Dkt. 38-7 ¶ 44).

17. The THJ patching infrastructure includes automated distribution tools, file integrity verification mechanisms, and rollback functionality—all typical of commercial software deployment pipelines (Dkt. 38-7 ¶ 44).

18. Based on these observations, I concluded that THJ is not an amateur modding project but a systematically engineered derivative implementation of Daybreak's EverQuest platform, designed to replicate and redirect gameplay experience using Daybreak's proprietary software and assets.

### III. RESPONSE TO DEFENDANTS' ATTACK ON MY PRIOR TESTIMONY

19. In their opposition brief, Defendants reference a declaration I submitted in *Lilith Games (Shanghai) vs. uCool, Inc. and uCool Ltd.* No. 3:15-cv-01267-SC (N.D. Cal. 2015), and contend that my expert opinions in that matter contradict the conclusions I have reached in this case. That characterization is incorrect and misrepresents the scope of my prior analysis and the factual differences between the two cases.

20. In *Lilith*, the plaintiff was not asserting any copyright claims with respect to the visual elements of its software. It was in that context that I stated that the plaintiff "cannot rely on these visual elements to support a claim of infringement or misappropriation of its actual source code" and that, ultimately, any similarities in the artwork, in that case, were not indicative of similarities in underlying source code.

21. Here, Daybreak is expressly asserting infringement of its copyrights in its software, the graphics and other audio-visual assets accompanying the software, and the creative elements of the game itself. Moreover, Defendants readily admit that the artwork being displayed in THJ is identical to EverQuest and that they are copying and modifying the EverQuest client software to reproduce the same models and texture files found in Daybreak's asset libraries (Dkt. 38-6 ¶¶ 18-19; Dkt. 38-7 ¶¶ 47(b)–(e)). *See also* Dkt. No. 50-1 (Declaration of Kristopher Takahashi) at ¶ 19 ("They [the graphics] are identical because they are the same graphics.").

22. Also, in this case, there is no need to infer similarities of underlying source code from similarities in graphics. As I explain in detail in my initial report, Defendants misappropriate Plaintiffs' copyrighted code in the form of the downloaded EverQuest client file and then make modifications to the code files, with the result being a new THJ-authored client file which is heavily based on Daybreak's copyrighted work product. Of equal importance, there is no question of when this this occurs, as Defendants do it right in the open, every time their installer and "patcher" software executes. It is a classic example of being caught with one's hand in the cookie jar.

23. In sum, in *Lilith*, I was asked to evaluate whether the game Heroes Charge was technically derived from Lilith's game Soul Hunters. That declaration did not involve or address client-server circumvention, installer modification of protected code, or the repurposing of proprietary assets through executable patches. It was focused entirely on whether two independently developed mobile games shared underlying source code.

24. In contrast, THJ is not a separate or independently authored game. It requires the user to download Daybreak's copyrighted EverQuest client and then applies systematic modifications to 234 client-side files (Dkt. 38-6 ¶¶ 22–23; Dkt. 38-7 ¶ 149). THJ further relies on unmodified Daybreak-authored asset files for character models, environments, UI components, and animations (Dkt. 38-6 ¶¶ 17–21; Dkt. 38-7 ¶¶ 41–43, 47).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 6, 2025, at Cooperstown, New York.



Garry Kitchen