Benjamin Bruce Anger, SBN 269145
ben.anger@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
600 Anton Boulevard
Costa Mesa, CA 92626
T: (714) 830-0600 / F: (714) 830-0700

JOSHUA M. DALTON (*pro hac vice*)
josh.dalton@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
T: (617) 341-7700 / F: (617) 341-7701

*Counsel for Defendants Kristopher Takahashi
and Alexander Taylor*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAYBREAK GAME COMPANY LLC, | CASE NO. 3:25-CV-01489 |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** |
| vs. | |
| KRISTOPHER TAKAHASHI; ALEXANDER TAYLOR; Does 1-20, Inclusive, | Date: October 3, 2025<br>Place: Courtroom 12b 12th Floor<br>Judge: Hon. Cynthia Bashant |
| Defendants. | **NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT.** |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................ 1

II. BACKGROUND ......................................................................................................... 1

III. ARGUMENT ............................................................................................................. 5

    A.  The Court Must Compel Arbitration of Daybreak's Claims. ........................... 5

        1.  The FAA Requires the Court to Enforce Arbitration Agreements ............ 5

        2.  The EULA Delegates Issues of Arbitrability to the Arbitrator ................. 6

        3.  The Arbitration Agreement Is Valid and Enforceable .............................. 8

        4.  Daybreak's Claims Fall Within the Scope of the Arbitration Clause ....... 8

        5.  This Action Should Be Stayed Pending Completion of the Arbitration Proceedings. ................................................................... 11

IV. CONCLUSION ....................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................................................. 5, 8

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ............................................................................ 6, 7

*Campbell v. CubeSmart*,
  2025 WL 251429 (S.D. Cal. Jan. 21, 2025) ......................................................... 11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) ............................................................................ 5, 9

*Clarium Capital Management LLC v. Choudhury*,
  2009 WL 331588 (N.D. Cal. Feb. 11, 2009) ........................................................... 8

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023) ............................................................................................. 11

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985) ............................................................................................. 10

*DiGiacomo v. Ex'pression Ctr. for New Media Inc.*,
  2008 WL 4239830 (N.D. Cal. Sept. 15, 2008) ....................................................... 9

*Dream Theater, Inc. v. Dream Theater*,
  124 Cal. App. 4th 547 (2004) ................................................................................ 7

*Ferguson v. Corinthian Colls., Inc.*,
  733 F.3d 928 (9th Cir. 2013) ................................................................................. 9

*Ferrell v. CubeSmart*,
  2025 WL 592795 (S.D. Cal. Feb. 24, 2025) ......................................................... 11

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
  97 F.4th 1190 (9th Cir. 2024) ................................................................................ 6

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ................................................................................................. 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ......................................................................................... 6, 7

*Jastremski v. Smith Barney, Inc.*,
  1994 WL 777206 (S.D. Cal. Oct. 24, 1994) ...................................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) ................................................................................................ 6

*Nguyen v. Tesla, Inc.*,
  2020 WL 2114937 (C.D. Cal. Apr. 6, 2020) .................................................... 11

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
  724 F.3d 1069 (9th Cir. 2013) ............................................................................ 7

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010) .............................................................................................. 6

*Rissi, Rissi v. T-Mobile USA, Inc.*,
  2025 WL 108187 (S.D. Cal. Jan 15, 2025) ...................................................... 11

*S.T.G. by and through Garcia v. Epic Games, Inc.*,
  2024 WL 4375782 (S.D. Cal. Oct. 2, 2024) ..................................................... 11

*Sandquist v. Lebo Auto.*,
  1 Cal. 5th 233 (2016) .......................................................................................... 6

*Shearson/Am. Express, Inc. v. McMahon*,
  482 U.S. 220 (1987) ............................................................................................ 8

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ......................................................................... 8, 9

*Smith v. Spizzirri*,
  601 U.S. 472 (2024) .......................................................................................... 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 2650689 (N.D. Cal. July 6, 2011) ..................................................... 9

*ValueSelling Assocs., LLC v. Temple*,
  2009 WL 3736264 (S.D. Cal. Nov. 5, 2009) ................................................ 9, 10

*Vogel v. Vogel*,
  2014 WL 12575815 (C.D. Cal. June 23, 2014) ............................................... 10

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989) ............................................................................................ 5

**Statutes**

9 U.S.C. § 2 .......................................................................................................... 5, 8

9 U.S.C. § 3 ............................................................................................ 1, 10, 11, 12

9 U.S.C. § 4 ................................................................................................................ 6

Digital Millenium Copyright Act ............................................................................. 4

Federal Arbitration Act ................................................................................... 5, 6, 8

## I. INTRODUCTION

As alleged in Daybreak's Complaint, Defendants had to accept the terms of an End-User License Agreement to play EverQuest ("EQ"). Daybreak's operative EULA (defined below) requires Defendants to arbitrate "[a]ny dispute" with Daybreak and mandates that arbitrators, not courts, should resolve any disputes, including disputes about the scope or validity of its arbitration provisions. That ends the analysis. The Court need not analyze whether the Plaintiff's claims come within the scope of its own arbitration provisions, assess the validity of the arbitration agreement, or make any other inquiry. The Court should compel arbitration of Plaintiff's claims and stay the proceedings.

If, however, the Court reaches the question of whether the Plaintiff's claims fall within the scope of the arbitration provisions in the EULA, the answer is yes. The EULA mandates the arbitration of "[a]ny dispute." The EULA later exempts from arbitration claims brought in small claims court and claims for equitable relief for infringement or other misuse of intellectual property. Yet, neither exception applies to Daybreak's state law claims, including its Breach of Contract, Unfair Competition, and Unjust Enrichment Under California Common Law claims.

Where (1) there is an agreement to arbitrate, and (2) the agreement encompasses at least some of the claims in dispute, the court must compel arbitration. 9 U.S.C. § 3. Therefore, if the Court reaches the issue of arbitrability (and it need not), it should find that the arbitration provisions apply to at least some of Plaintiff's claims and stay the litigation pending arbitration of those claims. In that scenario, the Court should stay all of Plaintiff's claims.

## II. BACKGROUND

Released in 1999, EQ is a fantasy-themed, massively multiplayer online role-playing game ("MMORPG") that was developed by Verant Interactive and co-created by John Smedley, the former President of Sony Online Entertainment ("SOE," Daybreak's predecessor). To access EverQuest and play online, players are first required

to create an account and accept the End-User License Agreement. Mr. Takahashi created his EverQuest account and first accepted Sony's End-User License Agreement in the summer of 2000, and Mr. Taylor created his EverQuest account and first accepted Sony's End-User License Agreement in or around December 2001. *See* Takahashi Decl. ¶ 2; Taylor Decl. ¶ 2. Since making their accounts, Mr. Takahashi last played EverQuest in May 2025, and Mr. Taylor last played EverQuest in June 2020. *See* Takahashi Decl. ¶ 4; Taylor Decl. ¶ 4. The parties do not dispute that both Defendants Kris Takahashi and Alexander Taylor played EverQuest and thus subsequentially agreed to the terms set forth in the EULA.

Daybreak updated the End-User License Agreement in February 2018 (the "2018 EULA") and then again in June 2022 (the "2022 EULA" and collectively with the 2018 EULA the "EULA"). *See* Takahashi Decl. ¶ 3; Taylor Decl. ¶ 3. Defendants each agreed to those updated terms when they played EverQuest. *See* Takahashi Decl. ¶ 4; Taylor Decl. ¶ 4. Under the introductory section of both the 2018 EULA and the 2022 EULA, it states:

> Your continued use of any Game(s) following our making available any revised version of the Agreement will mean that you accept the revised version. If you do not agree to any changes made to the Agreement, you may not access or use the Software, and you may not play the Game.

(the "**Agreement Modification**" provision). Consistent with the agreement modification provisions, Plaintiff confirms in its Complaint that players could not access their EverQuest account without accepting the operative EULA (and subsequent modifications thereto). *See* Compl. ¶¶ 8, 9.

Section 12 ("**DISPUTE RESOLUTION; ARBITRATION; CLASS ACTION WAIVER**") of the 2018 and 2022 EULAs contains the arbitration agreements.[1] At the outset, Section 12.1 states "[a]ny Dispute, whether based in contract, tort, statute, fraud,

---

[1] Section 12 of the February 2018 and June 2022 EULAs contain identical arbitration provisions. Thus, Defendants citations to portions of Section 12 relate to both the February 2018 and June 2022 EULAs.

misrepresentation or any other legal theory, shall be settled through Negotiation (as defined below in Section 12.2) or Arbitration (as defined below in Section 12.3). . . ."[2] *See* Ex. 1 at 6; Ex. 2 at 14. The EULA mandates that the parties arbitrate "[a]ny dispute," and

> except for any Excluded Disputes (as hereinafter defined), SUCH DISPUTES WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR ("**Arbitration**") INSTEAD OF IN A COURT BY A JUDGE OR JURY AND YOU AND DAYBREAK AGREE THAT YOU AND DAYBREAK ARE WAIVING THE RIGHT TO TRIAL BY A JURY.

*See* Ex. 1 at 6-7; Ex. 2 at 14-15 (emphasis in original).

The EULA further clarifies the scope of disputes falling under the arbitrator's authority, noting, "[t]he Arbitration will be administered by the American Arbitration Association under its Consumer Arbitration Rules, as amended by this Daybreak Terms of Service. The Consumer Arbitration Rules are available online at www.adr.org." *Id.* In other words, this section vests the arbitrator with exclusive authority to resolve not only disputes related to Daybreak's services but also disputes regarding the interpretation and enforceability of the arbitration agreement itself.

Next, the EULA contains certain "Excluded Disputes," which are limited to:

> (a) any Dispute relating to the infringement, misappropriation and/or other misuse of intellectual property rights other than patent rights (including, without limitation, claims seeking injunctive relief); (b) any Dispute relating to the violation, misappropriation and/or other misuse of confidential information (including, without limitation, claims seeking injunctive relief); (c) any Dispute relating to the enforcement of an

---

[2] Daybreak violated the terms of the EULA in failing to engage in any "Negotiation" with Defendants prior to filing this lawsuit. *See* Ex. 1 at 6; Ex. 2 at 14 ("If a Dispute arises, you and Daybreak first shall attempt in good faith to resolve it promptly by Negotiation as set forth below in Section 12.2, and neither you nor Daybreak may commence Arbitration with respect to any Dispute unless you and Daybreak first have unsuccessfully pursued Negotiation as provided below in Section 12.2 (i.e., the parties are unable to resolve the Dispute in writing within the below thirty (30) day period or if either party refuses to comply with the provisions of any written Negotiation settlement").

Arbitration award; and/or (d) any Dispute that qualifies for small claims court.

*See* Ex. 1 at 6; Ex. 2 at 14. Plaintiff asserts nine claims against Defendants, including Direct Copyright Infringement, Copyright Infringement by Inducement, Violation of the Digital Millenium Copyright Act, Trademark Dilution, Federal Unfair Competition, California Trademark Dilution, Breach of Contract, Unfair Competition, and Unjust Enrichment Under California Common Law. At least some of Plaintiff's claims fall squarely within the broad scope of Daybreak's own respective arbitration provisions.

Plaintiff attached to its Complaint Exhibit A, suggesting it is the operative End-User License Agreement. *See* ECF No. 1-2. But that agreement, updated on December 2, 2008, governed the relationship between players and Daybreak's predecessor, Sony Online Entertainment LLC, and "DESCRIBES THE TERMS ON WHICH SONY ONLINE ENTERTAINMENT LLC ("SOE") OFFERS YOU ACCESS TO AN ACCOUNT (THE "ACCOUNT") TO PLAY THE EVERQUEST." *Id.* (emphasis in original). It is not applicable to Daybreak, which issued amended End-User License Agreements in both February 2018 and June 2022. To the extent Daybreak is attempting to rely on Sony Entertainment's End-User License Agreement (likely because, unlike Daybreak's, the Sony agreement does not incorporate a mandatory arbitration provision), it may not do so. The Agreement Modification provision makes the June 2022 EULA the applicable agreement to the dispute with Mr. Takahashi and the February 2018 EULA the applicable agreement to the dispute with Mr. Taylor, both of which include (i) a mandatory arbitration for "[a]ny dispute"; (ii) a requirement that "[i]f a Dispute arises, you and Daybreak first shall attempt in good faith to resolve it promptly by Negotiation"; (iii) the incorporation of the "American Arbitration Association under its Consumer Arbitration Rules. . ."; and (iv) the same "Excluded Disputes." *See* Ex. 1 at 6-7; Ex. 2 at 14-15.

## III. ARGUMENT

Daybreak mandated all users of EverQuest agree to the terms of its EULAs, which included an arbitration agreement that required all parties to pursue claims through arbitration rather than in court and delegated to the arbitrator any questions regarding the scope and enforceability of the arbitration agreement. This Court should therefore hold Daybreak to the terms of the EULA it drafted, order Daybreak to arbitrate its claims pursuant to the Federal Arbitration Act ("FAA"), and stay this litigation pending completion of those proceedings.

### A. The Court Must Compel Arbitration of Daybreak's Claims.

The Court should find that the parties have a valid agreement to arbitrate and that the parties have clearly and unmistakably delegated questions regarding arbitrability to the arbitrator.

#### 1. The FAA Requires the Court to Enforce Arbitration Agreements

The FAA reflects the well-established federal policy favoring arbitration and requires that arbitration agreements be rigorously enforced nationwide. The FAA reflects both a "liberal federal policy favoring arbitration, . . . and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and internal quotation marks omitted). It requires courts to "give effect to the contractual rights and expectations of the parties," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989), and provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Under the FAA, the court must determine: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). But "[w]hen the parties have clearly and unmistakably delegated questions regarding

arbitrability to the arbitrator, the court need not conduct further inquiries beyond the existence of the arbitration agreement." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1194 (9th Cir. 2024); *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) ("a court must enforce an agreement that . . . clearly and unmistakably delegates arbitrability questions to the arbitrator[.]") (internal quotations omitted).

The FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. In reviewing such motions, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Here, Daybreak includes as an exhibit, cites to, and relies upon the existence of that End-User License Agreement to support its claims. *See* Compl. ¶¶ 8(a), 9(a), 18, 61-64. Because of the Agreement Modification provision, Daybreak's EULA automatically became the operative EULA, which, in turn, contains the robust arbitration agreement in Section 12, as detailed above. Thus, the Court should enforce the arbitration agreement.

**2.    The EULA Delegates Issues of Arbitrability to the Arbitrator**

The question of whether this dispute is subject to arbitration is an issue for the arbitrator, not this Court. "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *see also Sandquist v. Lebo Auto.*, 1 Cal. 5th 233, 243 (2016) ("'[W]ho decides' [issues of arbitrability] is a matter of party agreement"); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) ("[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions

of 'arbitrability', such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy.") (citations and quotation marks omitted).

Under Daybreak's EULA, the parties "clearly and unmistakably" agreed to delegate gateway issues of arbitrability to the arbitrator. Daybreak incorporated the AAA Consumer Arbitration Rules into the EULA, which state, "[t]he Arbitration will be administered by the American Arbitration Association under its Consumer Arbitration Rules, as amended by this Daybreak Terms of Service. The Consumer Arbitration Rules are available online at www.adr.org." *See* Ex. 1 at 6-7; Ex. 2 at 14-15. Those AAA rules—specifically Rule 7(a)—state that the arbitrator has "the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." *See* Rule R-7(a), AAA Commercial Arb. Rules, 2018 WL 2117639, at *6.

Courts in this circuit have routinely held that incorporation of AAA rules evidences the parties' intent to delegate questions of arbitrability to the arbitrator. *See, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 557 (2004) (incorporation of AAA Rules deemed "clear and unmistakable evidence of the intent that the arbitrator will decide whether a Contested Claim is arbitrable."). Under these circumstances, the court "may not override the contract . . . [and] possesses no power to decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 529 (finding this to be true "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless").

Because the parties clearly and unmistakably intended to delegate "gateway" questions of arbitrability and enforceability to the arbitrator—as evidenced by Daybreak's incorporation of the AAA Consumer Arbitration Rules—the Court should refer Daybreak's claims against Defendants to the AAA for arbitration. Any disputes regarding arbitrability must be resolved there, by the arbitrator.

### 3. The Arbitration Agreement Is Valid and Enforceable

Arbitration agreements governed by the FAA are presumed to be "valid, irrevocable, and enforceable." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987). This presumption of validity reflects the "fundamental principle that arbitration is a matter of contract," *AT&T Mobility LLC*, 131 S. Ct. at 1745 (citations omitted), and Congress's intent behind the FAA: to reverse longstanding judicial hostility toward arbitration and evince a "liberal federal policy favoring arbitration agreements," *see Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The FAA therefore mandates enforcement of an arbitration clause unless grounds exist "at law or in equity for the revocation of any contract." 9 U.S.C. § 2. And to show that the arbitration provision is invalid or does not encompass the claims at issue, the "burden is on the party opposing arbitration" to prove unconscionability. *Shearson/Am. Express, Inc.*, 482 U.S. 220 at 227.

The Complaint alleges that Daybreak's EULA is enforceable. *See* Compl. ¶¶ 61-64. Defendants agree. This should end the Court's inquiry.

### 4. Daybreak's Claims Fall Within the Scope of the Arbitration Clause

Given that the EULA's arbitration agreement delegates questions of arbitrability to the arbitrator, Defendants need only show a basis for demanding arbitration that is not "wholly groundless." *Clarium Capital Management LLC v. Choudhury*, 2009 WL 331588, at *5 (N.D. Cal. Feb. 11, 2009). Even if arbitrability were before the Court rather than the arbitrator (it is not), Daybreak's claims fall within the scope of the arbitration provision wherein claims "need only 'touch matters' covered by the

[arbitration clause] . . . and all doubts are to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

Here, the broad arbitration provision encompasses "[a]ny Dispute, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory, shall be settled through Negotiation (as defined below in Section 12.2) or Arbitration (as defined below in Section 12.3). . ." *See* Ex. 1 at 6; Ex. 2 at 14. It further mandates arbitration for "any controversy, claim or dispute arising out of or relating to this Agreement or any aspect of the relationship between [Defendants] and Daybreak. . ." *See id.* The Ninth Circuit treats the phrase "any claim arising from or related to" in an arbitration clause as "broad and far reaching." *Chiron*, 207 F.3d at 1131; *see also In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 2650689, at *5 (N.D. Cal. July 6, 2011) ("[T]he language 'related to' must be read broadly, to encompass any matter that touches the contractual relationship between the parties. This must include matters that, while not arising directly under the contractual relationship, are nevertheless related to it.").

The factual allegations "need only touch matters covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula*, 175 F.3d at 721. Thus, courts have consistently found that each type of claim alleged in Daybreak's Complaint is appropriate for arbitration where, as here, each touches on the subject matter of the parties' agreement. *See Chiron Corp.*, 207 F.3d at 1131 (holding that a breach of contract claim clearly "touches" the underlying agreement); *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 938 (9th Cir. 2013) (holding that UCL, FAL and CLRA claims are arbitrable, including those that seek injunctive relief); *DiGiacomo v. Ex'pression Ctr. for New Media Inc.*, 2008 WL 4239830, at *8-9 (N.D. Cal. Sept. 15, 2008) (compelling equitable claims to arbitration where they touch on the subject matter of the contract; holding that "arbitrators have the power to grant all legal and equitable remedies, including declaratory and injunctive relief.") (citations omitted); *ValueSelling Assocs., LLC v. Temple*, 2009 WL 3736264, at

*6 (S.D. Cal. Nov. 5, 2009) ("As the unjust enrichment claim is an extension of the other [] claims, it too is subject to arbitration").

Plaintiff may argue that its copyright and trademark claims are excluded from arbitration under the EULA and this exclusion precludes arbitration for Daybreak's other claims. This argument fails because all of Daybreak's claims rely on the same nucleus of operative facts, i.e., conduct intimately and necessarily relating to the THJ's status of an emulator, its respective operations, and the relationships between the parties imposed by virtue of the EULA. For example, Plaintiff alleges that the "EULA constitutes a valid and binding contract between Plaintiff and all users of EverQuest software," Compl. ¶ 118, and "Defendants have not only violated [EULA] provisions themselves but actively have induced and encouraged others to breach the EULA," *id.* ¶ 63.

Courts in the Ninth Circuit, including this District, routinely compel arbitration of copyright claims that raise factual issues that touch on the contractual relationship between the parties to a broad arbitration agreement. *See, e.g.*, *Jastremski v. Smith Barney, Inc.*, 1994 WL 777206, at *2, *5-7 (S.D. Cal. Oct. 24, 1994) (compelling arbitration of copyright claims which "require[d] an exploration of [the parties'] employment relationship" and "[the defendant's] business"); *Vogel v. Vogel*, 2014 WL 12575815, at *3 (C.D. Cal. June 23, 2014) (compelling arbitration of copyright claim that were "relate[d] to intellectual property [parties] were tasked with managing under the [relevant] [a]greement," which contained an arbitration provision); *ValueSelling Assocs., LLC*, 2009 WL 3736264, at *4 (compelling arbitration of copyright and trademark claims where "copyright and trademark infringement claims are dependent upon the relationship and the contracts entered into by the parties" and "the only way Defendant had access to the materials in order to infringe upon them, was by virtue of his contractual relationship with Plaintiffs," which contract contained an arbitration provision). Thus, there is no reasonable dispute that at least some of the causes of action in the Complaint come within the scope of the EULA.

### 5.   This Action Should Be Stayed Pending Completion of the Arbitration Proceedings.

Courts are required to "rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Pursuant to its plain language, Section 3 of the FAA provides that a court "shall . . . stay the trial of the action until" the contemplated arbitration "has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). Here, a valid arbitration agreement exists; thus, the court must order the parties to arbitrate and stay the litigation. *See Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

Courts in this District routinely stay litigation pending resolution of arbitration proceedings. *See, e.g.*, *Ferrell v. CubeSmart*, 2025 WL 592795, at *4 (S.D. Cal. Feb. 24, 2025) (staying "action pending completion of arbitration"); *Nguyen v. Tesla, Inc.*, 2020 WL 2114937, at *5 (C.D. Cal. Apr. 6, 2020) ("The Court finds that a stay is proper—even incumbent upon the Court—in these circumstances."); *Campbell v. CubeSmart*, 2025 WL 251429, at *7 (S.D. Cal. Jan. 21, 2025) (same); *Rissi, Rissi v. T-Mobile USA, Inc.*, 2025 WL 108187, at *9 (S.D. Cal. Jan 15, 2025) (same); *S.T.G. by and through Garcia v. Epic Games, Inc.*, 2024 WL 4375782, at *9 (S.D. Cal. Oct. 2, 2024) (same). This Court should do the same here.

Absent a stay, Defendants will be prejudiced by being forced to litigate in this forum despite their agreement with Daybreak to arbitrate, and any continued litigation would improperly invade the province of the arbitrator. As the Supreme Court recently said:

> If the district court could move forward with pre-trial and trial proceedings while the appeal on arbitrability was ongoing, then many of the asserted benefits of arbitration (efficiency, less expense, less intrusive discovery, and the like) would be irretrievably lost . . . Absent a stay, parties also

could be forced to settle to avoid the district court proceedings (including discovery and trial) that they contracted to avoid through arbitration.

*Coinbase, Inc. v. Bielski*, 599 U.S. 736, 743 (2023). Given the pending motion to compel arbitration and the risk of wasting party and judicial resources if this case ultimately proceeds before an arbitrator, Defendants respectfully request that the Court stay the litigation pending the completion of arbitration.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion to Compel Arbitration and Stay Litigation, consistent with 9 U.S.C. § 3, pending the outcome of arbitration.

Dated: August 22, 2025                    Respectfully submitted,

By: */s/ Joshua M. Dalton*
Benjamin Bruce Anger, SBN 269145
**MORGAN, LEWIS & BOCKIUS LLP**
600 Anton Boulevard
Costa Mesa, CA 92626
Telephone: (714) 830-0441
ben.anger@morganlewis.com

Joshua M. Dalton (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110-1726
Telephone: (617) 341-7700
josh.dalton@morganlewis.com

*Attorneys for Defendants Kristopher Takahashi and Alexander Taylor*