1  NICHOLAS B. JANDA (SBN 253610)
   nick.janda@dentons.com
2  DENTONS US LLP
   601 South Figueroa Street, Suite 2500
3  Los Angeles, California 90017-5704
   Telephone: (213) 623-9300
4  Facsimile: (213) 623-9924

5  MONICA B. RICHMAN (*pro hac vice*)
   monica.richman@dentons.com
6  DANIEL A. SCHNAPP (*pro hac vice*)
   daniel.schnapp@dentons.com
7  MARY KATE BRENNAN (*pro hac vice*)
   marykate.brennan@dentons.com
8  DENTONS US LLP
   1221 Avenue of the Americas
9  New York, New York 10020-1089
   Telephone: (212) 768-6700
10 Facsimile: (212) 768-6800

11 *Attorneys for Plaintiff*
12 *DAYBREAK GAME COMPANY LLC*

13              UNITED STATES DISTRICT COURT

14              SOUTHERN DISTRICT OF CALIFORNIA

15

16 DAYBREAK GAME COMPANY LLC,          Case No. 3:25-cv-01489-BAS-BLM

17              Plaintiff,              **DAYBREAK'S OPPOSITION TO
                                        DEFENDANTS' MOTION TO
18      v.                             COMPEL ARBITRATION AND
                                        STAY LITIGATION**
19 KRISTOPHER TAKAHASHI,
   ALEXANDER TAYLOR, and DOES 1-       **NO ORAL ARGUMENT UNLESS
20 20, inclusive,                       ORDERED BY THE COURT**

21
                                        Date: October 3, 2025
22              Defendants.             Ctrm: 12B

23

24

25

26

27

28

Case No. 3:25-cv-01489-BAS-BLM
Daybreak's Opposition to Defendants' Motion
to Compel Arbitration and Stay Litigation

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT.................................................................1

   A.   Background .................................................................................1

II.  STATEMENT OF FACTS .....................................................................5

   A.   Defendants have actively litigated this matter before this Court...............................................................................5

   B.   Defendants waited over two months to file this motion...........6

   C.   Defendants voluntarily entered into the Stipulated TRO. ........................................................................................6

   D.   Defendants attempt to rely on inapplicable EULAs. ................7

      1.   The RoF EULA.................................................................8

      2.   Daybreak's Current Player EULAs....................................8

III. LEGAL STANDARD .............................................................................9

   A.   This Court may determine questions of arbitrability. ..............9

   B.   Any purported right to arbitration can be waived...................10

   C.   This Court maintains broad discretion in determining a stay.................................................................................10

IV.  ARGUMENT .......................................................................................11

   A.   Defendants waived the right to arbitrate. ...............................11

   B.   This Court maintains the authority to determine arbitrability.................................................................................13

   C.   The RoF EULA applies...........................................................14

   D.   Estoppel prevents Defendants from evading the RoF EULA.................................................................................15

E.    Even if the Player EULAs apply, all of Daybreak's claims remain non-arbitrable. ...................................... 16

F.    The Court should not voluntarily stay this case. ..................... 18

G.    Any mandatory stay under *Coinbase* should not dissolve injunctive relief previously issued by this Court. ............................................................................. 19

V.    CONCLUSION ........................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvarado v. Rockwell Collins, Inc.*,
    No. CV 23-400-JFW(JCX), 2023 WL 5505877 (C.D. Cal. May 24,
    2023) ...................................................................................................... 17

*American Honda Motor Co., Inc. v. Coast Distribution System, Inc.*,
    No. C 06-04752 JSW, 2007 WL 672521 (N.D. Cal. Feb. 26, 2007) ............... 18

*Armstrong v. Michaels Stores, Inc.*,
    59 F.4th 1011 (9th Cir. 2023) ...................................................... 10, 11

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ............................................... 10, 13, 14

*Clinton v. Jones*,
    520 U.S. 681 (1997) .................................................................. 10, 18

*Coinbase, Inc. v. Bielski*,
    599 U.S. 736 (2023) ...................................................................... 4, 19

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) .......................................................................... 19

*Eminence Healthcare, Inc. v. Centuri Health Ventures, LLC*,
    74 Cal.App.5th 869 (2022) ................................................................ 17

*Evans v. Synopsys, Inc.*,
    34 F.4th 762 (9th Cir. 2022) ............................................................. 19

*Franklin v. Cmty. Reg'l Med. Ctr.*,
    998 F.3d 867 (9th Cir. 2021) ............................................................. 15

*Grey v. American Mgmt. Services*,
    204 Cal.App.4th 803 (2012) .............................................................. 16

*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56 (1982) (per curiam) ........................................................ 19

*Hebei Hengbo New Materials Tech. Co., Ltd. v. Apple, Inc.*,
    344 F. Supp. 3d 1111 (N.D. Cal. 2018) .............................................. 12

*Hill v. Xerox Bus. Servs., LLC*,
  59 F.4th 457 (9th Cir. 2023) ................................................................... 10

*Jackson v. Amazon.com, Inc.*,
  65 F.4th 1093 (9th Cir. 2023) ................................................................. 16

*Landis v. North American Co.*,
  299 U.S. 248 (1936) ......................................................................... 18, 19

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ........................................................... 18, 19

*Louis v. TPG Funding, LLC*,
  No. 24-CV-03011-JD, 2025 WL 860504 (N.D. Cal. Mar. 19, 2025) ............... 17

*Martin v. Yasuda*,
  829 F.3d 1118 (9th Cir. 2016) ........................................... 11, 12, 14, 15

*Montez v. Chase Home Fin. LLC*,
  No. 11-CV-530 JLS WMC, 2011 WL 2729445 (S.D. Cal. July 13,
  2011) ................................................................................................. 18

*Morgan v. Sundance, Inc.*,
  142 S. Ct. 1708 (2022) ..................................................................... 10, 19

*Murphy v. Roblox Corp.*,
  No. 23-CV-1940 TWR (BLM), 2025 WL 2327100 (S.D. Cal. July
  9, 2025) ............................................................................................. 11

*Nessim v. Fliff, Inc.*,
  No. 523CV01048SSSSHKX, 2024 WL 1600649 (C.D. Cal. Jan. 5,
  2024) ................................................................................................. 14

*In re PG&E Corp. Sec. Litig.*,
  100 F.4th 1076 (9th Cir. 2024) ............................................................... 10

*Sonico v. Charter Commun., LLC*,
  No. 19-CV-01842-BAS-LL, 2020 WL 1910356 (S.D. Cal. Apr. 20,
  2020) ................................................................................................... 9

*Sywula v. Teleport Mobility, Inc.*,
  No. 21-CV-01450-BAS-SBC, 2023 WL 4630620 (S.D. Cal. July
  18, 2023) ................................................................................ 10, 11, 12

*Tompkins v. 23andMe, Inc.*,
  No. 5:13-CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25,
  2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) .................................................. 13, 14

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574 (1960) ........................................................................................ 16

*Wilhoite v. Hou*,
  No. 3:23-CV02333 BEN-MSB, 2024 WL 2869986, at *5 (S.D. Cal.
  June 6, 2024)................................................................................................... 19

**Statutes**

9 United States Code § 4 ........................................................................................ 10

**Rules and Regulations**

Federal Rules of Civil Procedure Rule 12(b)(6)....................................................... 11

## I.     **PRELIMINARY STATEMENT**

Only after vigorously defending this lawsuit and opposing Daybreak's motions for a temporary restraining order and a preliminary injunction, and ten days after the oral argument on Daybreak's Motion for a Preliminary Injunction, did Defendants Kristopher Takahashi ("Takahashi") and Alexander Taylor ("Taylor") (collectively, "Defendants") institute this Motion to Compel Arbitration and Stay Litigation ("Motion to Arbitrate" or "Motion").

Defendants, however, waived their right to arbitrate by participating in substantial litigation on the merits for two months before bringing their motion. Furthermore, Defendants are estopped from arguing for the application of any end-user license agreement ("EULA"), other than the one that is embedded in the proprietary source code that Defendants stole from Daybreak, which does not contain an arbitration provision. As set forth in the accompanying September 19, 2025 Declaration of Jennifer Chan, when misappropriating EverQuest and its constituent software and code to create, develop, and operate THJ, Defendants even took the Rain of Fear EULA, which does not contain any reference to arbitration. Yet, even if the newer Daybreak EULA applies, all claims in this lawsuit are still expressly carved out of that arbitration clause.

### A.     **Background**

Plaintiff initiated this action on June 14, 2025 as a result of Defendants' blatant and willful theft of Daybreak's intellectual property related to EverQuest. In its Motion for a Preliminary Injunction ("PI Motion"), Daybreak demonstrated how, *inter alia*, Defendants engaged in systematic copyright infringement and DMCA violations by operating THJ using Daybreak's copyrighted material. THJ requires its users to install and run the Rain of Fear ("RoF") version of the EverQuest client and then applies systematic modifications to enable connectivity to unauthorized server infrastructure. These modifications constitute unauthorized derivative works of Daybreak's copyrighted software and circumvent technological measures

implemented by Daybreak to control access to its copyrighted works. THJ also infringes three copyrighted layers of EverQuest's content: (i) source code; (ii) individual non-literal elements (*e.g.*, the Iconic EverQuest Characters); and (iii) dynamic non-literal elements (*e.g.*, the experience of traveling through the world of Norrath).

The evidence Daybreak submitted in support of the PI Motion demonstrated that THJ's infringing activity threatens the very existence of EverQuest and cannot be remedied by monetary damages. In addition to Daybreak's loss of control over its intellectual property and resulting loss of goodwill, the launch of THJ has directly caused immeasurable harm to Daybreak's EverQuest business.

Oral argument on Daybreak's motion for injunction occurred on August 12, 2025 ("PI Hearing"). Defendants did not seek any stay of this litigation until ten days later, on August 22, 2025. Although Defendants inserted a footnote in their Opposition to the PI Motion ("PI Opposition" or "PI Opp.") that they purportedly intended to file a motion to stay on or before August 15, 2025, they did not do so by that date. Defendants also did not raise any purported desire to seek to compel arbitration and stay this litigation at the PI Hearing or even raise an arbitration provision as a basis for a stay until ten days after the PI Hearing.

Indeed, in their Motion to Arbitrate, Defendants do not even attempt to demonstrate why arbitration would be the proper forum or why litigation before this Court presents any hardship or inequity.

In the interim, however, Defendants engaged in substantive litigation on the merits of Daybreak's PI Motion. Among other things, Defendants voluntarily entered into a stipulated temporary restraining order which the Court so-ordered on June 27, 2025 ("Stipulated TRO"), filed 385 pages of documents in opposition to the PI Motion (including declarations from each Defendant, two third parties, and one purported "expert," as well as 43 exhibits), filed 47 pages on the eve of the PI Hearing as part of a proposed supplemental declaration in further support of their PI

Case No. 3:25-cv-01489-BAS-BLM
Daybreak's Opposition to Defendants' Motion to
Compel Arbitration and Stay Litigation

Opposition, and participated in oral argument at the PI Hearing. Only then, well-after the PI Hearing concluded, did Defendants file the Motion to Arbitrate in which they now argue that all pending claims should be sent to arbitration and this litigation stayed in its entirety.

As shown below, Defendants' Motion, which amounts to forum shopping, fails for numerous reasons.

At the outset, Defendants waived their right to arbitrate. First, Defendants knew of the arbitration provisions in the EULAs they now seek to rely on, as indicated by their declarations filed in support of the Motion to Arbitrate.

Second, Defendants opposed the PI Motion which goes to the merits of Daybreak's claims, among other substantial engagement in their defense of this litigation (*e.g.*, agreeing to the Stipulated TRO and purportedly complying with it).[1]

Even if Defendants did not waive their alleged right to arbitration of any of the claims, Defendants are still estopped from arguing that any claims should be arbitrated.

THJ misappropriated Daybreak's intellectual property, which includes the EverQuest RoF executable file. The RoF EULA is actually embedded into THJ because Defendants literally stole it along with other portions of Daybreak's code. Unlike the EULAs Defendants seek to rely on, the RoF EULA explicitly states: "Both parties submit to personal jurisdiction in California and further agree that any cause of action relating to this Agreement shall be brought in the County of San Diego, State of California (if under State law) or the Southern District of California (if under federal law)." Clearly, Defendants needed to rely on the other EULAs to even make

---

[1] In the Motion to Arbitrate, Defendants take the position that they (as individuals) accepted the terms a 2018 EULA and 2022 EULA, which both contain an arbitration provision that includes a carveout covering all claims in this litigation. Prior to filing this Motion, Defendants took the contrary position that Another Quest LLC should be the named defendant instead of them.

this Motion to Arbitrate because the RoF EULA has no reference to arbitration whatsoever.

Even if the EULAs containing an arbitration provision applied, which they do not, the arbitration provision contains an express carveout for "any Dispute *relating to* the infringement, misappropriation and/or other misuse of intellectual property rights other than patent rights (including, without limitation, claims seeking injunctive relief)" (emphasis added).

This carveout expressly excludes from arbitration all intellectual property claims (other than patents) and all related claims. Here, that language covers *every* claim asserted by Daybreak at the heart of this litigation, including its claims for copyright and trademark infringement, and its claims under the DMCA and the Lanham Act. Daybreak's unfair competition and unjust enrichment claims arise out of the same operative facts. Therefore, they are clearly "related to" its intellectual property claims and are therefore also excluded. Moreover, as explained below, the unfair competition and unjust enrichment claims should be excluded from arbitration on the basis that the intellectual property claims, which cannot be arbitrated, predominate in this litigation.

Given the absolute lack of merit in Defendants' Motion Arbitrate in light of the EULAs, and total lack of explanation in Defendants' papers as to why arbitration is a preferable forum, the question arises as to the nature of Defendants' tactics. One plausible explanation is that Defendants may be attempting to exploit the Supreme Court's recent decision in *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023). In *Coinbase*, the Supreme Court held that an appeal of the denial of a motion to compel arbitration automatically stays the underlying district court proceedings. Under this framework, the denial of Defendants' Motion to Arbitrate could result in an automatic stay under *Coinbase*. This would allow Defendants to indefinitely stay this

case.[2]

Yet, if Defendants seek an interlocutory appeal, Daybreak will suffer even greater harm than what it already established during the PI Motion briefing and oral argument due to the need to engage in a potentially lengthy appellate. *See* PI Order. Therefore, Daybreak respectfully submits that this Court deny the Motion to Arbitrate in its entirety.

## II.    STATEMENT OF FACTS

### A.    Defendants have actively litigated this matter before this Court.

Daybreak initiated this action on June 14, 2025. (ECF No. 1.) After more than two months of litigation related to Daybreak's request for immediate injunctive relief, Defendants filed their Motion to Arbitrate (ECF No. 61) on August 22, 2025 (*i.e.*, ten days after the Court's August 12, 2025 PI Hearing (ECF No. 58.)).

During that time, Defendants participated in and defended the litigation before this Court. (*See*, *e.g.*, ECF Nos. 22, 26, 27, 33, 43, 48, 50, 56, 58, 59)

Specifically, Defendants:

- Opposed Daybreak's Motion to Shorten Time to Hear Amended TRO Application (ECF No. 22);

- Jointly filed a Motion for Order to (i) Enter Stipulated Order, (ii) Convert July 2, 2025 Hearing into Status Conference, (iii) Schedule PI Hearing, and (iv) Set Briefing Schedule on PI Motion (ECF No. 26);

- Filed a Response to Daybreak's Amended Motion for TRO (ECF No. 27);

- Filed their PI Opposition (ECF No. 50);

- Sought leave to file a supplemental declaration in further support of their PI Opp. ("Proposed Supplemental PI Filing") (ECF No. 56);

- Appeared for and participated in the PI Hearing (ECF No. 58); *see also* PI Hearing Transcript; and

- Requested an extension of time to respond to the Complaint (ECF No. 59).

---

[2] Defendants claimed during the Court's August 12, 2025 PI Hearing that enjoining Defendants from operating THJ would "essentially end[] THJ." PI Hearing Transcript, Ex. A to the September 19, 2025 Declaration of Daniel A. Schnapp, at 14:7.

In opposing Daybreak's PI Motion, Defendants made a voluminous filing of 385 pages, including the following purported evidence:

- Declaration of Takahashi ("Takahashi PI Decl.") (ECF No. 50-1);

- Declaration of Zachary Karlsson ("Karlsson Decl.") (ECF No. 50-2), Defendant's purported "expert" (*see id.* at ¶ 4);

- Declaration of Taylor (ECF No. 50-3);

- Declaration of Chris Miles (ECF No. 50-4), "lead developer and a core maintainer of EQEmulator" (*id.* at ¶ 2);

- Declaration of Jeffrey Butler (ECF No. 50-5), who previously worked for EverQuest (*see id.* at ¶¶ 2-3); and

- 43 exhibits.

Defendants then made another 47-page filing the afternoon before the PI Hearing in relation to their unsuccessful attempt to submit supplemental evidence to bolster their PI Opposition. *See* Proposed Supplemental PI Filing (ECF No. 56); August 12, 2025 Minute Order (ECF No. 58) (denying Defendants' Motion for Leave to file Supplemental Declaration). Defendants' Proposed Supplemental PI Filing included a Supplemental Karlsson Declaration and six exhibits. (ECF Nos. 56-2 – 56-8).

## B.    Defendants waited over two months to file this motion.

In their PI Opposition, Defendants included a footnote stating that they "intend to file a motion to stay *on or before August 15, 2025*." PI Opp. at 17, n. 5 (emphasis added). Defendants, however, did not meet their own self-proclaimed deadline. Moreover, at the August 12, 2025 PI Hearing, Defendants did not mention any purported arbitration agreements or proffer any desire to compel arbitration and seek to stay the litigation. *See* PI Hearing Transcript.

## C.    Defendants voluntarily entered into the Stipulated TRO.

Defendants voluntarily entered into a temporary restraining order (ECF No. 26), which this Court so-ordered on June 27, 2025 ("Stipulated TRO") and agreed to this Court's authority to hear this case. (ECF No. 29.)

Under the Stipulated TRO, Defendants agreed, *inter alia*:

- That "*the Court* retains the power to enforce any violation by Defendants . . . of this Order." *Id*. at 2 (emphasis added);

- That they would suspend updates to THJ "until permitted to do so *by this Court* or by agreement of the Parties." *Id*. at 3 (emphasis added); and

- To place the following language on THJ's Discord server and its website: "The Heroes' Journey is currently subject to pending litigation brought by Daybreak Game Company LLC regarding intellectual property and other related matters. While that case proceeds, a Stipulated Order found here [with hyperlink] has been agreed to by the Parties in that litigation and *is subject to enforcement by the United States District Court for the Southern District of California*." *Id*. at 4 (emphasis added).

The Stipulated TRO also expressly permitted Defendants to raise arguments challenging personal jurisdiction and venue in the briefing or at the PI Hearing. *Id*. at 5. Defendants, however, did not do so. *See* PI Opp.; Proposed Supplemental PI Filing; PI Hearing Transcript.

### D.    Defendants attempt to rely on inapplicable EULAs.

Defendants have taken two, contradictory positions in this litigation:

- Pre-Motion to Arbitrate: Another Quest LLC, not Defendants Takahashi and Taylor, is the proper defendant. *See*, *e.g.*, Stipulated TRO at 1, n. 1 ("Defendants alleges that the company that operates THJ – Another Quest LLC – is the proper defendant in this matter, and allege that Daybreak has improperly named the company's two members, Mr. Takahashi and Mr. Taylor, in this lawsuit."); PI Opp., Section IV(B)(4) titled "Daybreak's Complaint Names Improper Defendants."

- Motion to Arbitrate: Defendants Takahashi and Taylor are proper Defendants and purportedly are bound by the Player EULAs. *See generally* Motion to Arbitrate (The first sentence of the Motion states, "Defendants had to accept the terms of an End-User License Agreement to play EverQuest." *Id*. at 1.).

Defendants take the latter position to try and retrofit themselves into the Player EULAs which contain an arbitration provision (albeit with an explicit carveout for the exact type of claims central to this litigation). *See*, *e.g.*, *id*. at 4 ("the June 2022 EULA [is] the applicable agreement to the dispute with Mr. Takahashi and the February 2018 EULA [is] the applicable agreement to the dispute with Mr. Taylor"). The RoF EULA, however, is what applies.

1

### 1.    The RoF EULA

To develop and create THJ, Defendants modified the EverQuest RoF executable file. Expert Report of Garry Kitchen ("Kitchen Report") (ECF No. 38-7) at ¶ 68; 9/19/25 Chan Decl. at ¶ 2; *see also* Takahashi PI Decl. at ¶ 22 ("We chose the ROF client…"); Karlsson Decl. at ¶ 18 (discussing THJ's use of RoF). Defendants, *inter alia*, breached Daybreak's RoF EULA (ECF No. 1-2). *See* Kitchen Report at ¶¶ 68-87, 139; Chan Decl. at ¶ 4; *see also* Complaint at ¶¶ 61-64, 117-123. Mr. Karlsson confirmed that "the only way to play THJ is to use an obsolete, but authentic, EQ client," *i.e.*, RoF. Karlsson Decl. at ¶¶ 1, 18.

The RoF EULA includes the following jurisdiction and venue clause:
Both parties submit to *personal jurisdiction in California* and further agree that *any cause of action relating to this Agreement shall be brought in* the County of San Diego, State of California (if under State law) or *the Southern District of California (if under federal law)*.

RoF EULA at ¶ 16 (emphasis added).[3]

In developing and creating THJ, Defendants embedded the RoF EULA into THJ. *See* Kitchen Report at ¶¶ 68, 82, 85, 87 ("Daybreak files that make up EverQuest: Rain of Fear have been downloaded from Steam . . . and moved into The Heroes' Journey game folder."); Karlsson Decl. at ¶ 52; September 19, 2025 Declaration of Jennifer Chan ("9/19/25 Chan Decl.") at ¶¶ 3-6.

### 2.    Daybreak's Current Player EULAs

Daybreak acknowledges the existence of its 2018 EULA (ECF No. 61-5) and current EULA, dated June 8, 2022 ("Current EULA") (ECF No. 61-4) (collectively, "Player EULAs"). The Player EULAs include the following arbitration provision with a carveout for, *inter alia*, copyright infringement:

---

[3] While the RoF EULA "describes the terms on which Sony Online Entertainment LLC ("SOE")" provides permission to access RoF (RoF EULA), in 2015, SOE was acquired by a private buyer and renamed Daybreak Game Company LLC. Complaint at ¶ 18.  SOE and Daybreak are, in fact, the same legal entity.

If you and Daybreak are unable to resolve any Dispute through Negotiation or if either you or Daybreak refuses to comply with the provisions of any written Negotiation settlement, then, except for any Excluded Disputes (as hereinafter defined), SUCH DISPUTES WILL BE RESOLVED THROUGH FINAL AND BINDING ARBITRATION BEFORE A NEUTRAL ARBITRATOR ("Arbitration") INSTEAD OF IN A COURT BY A JUDGE OR JURY AND YOU AND DAYBREAK AGREE THAT YOU AND DAYBREAK ARE WAIVING THE RIGHT TO TRIAL BY A JURY. As used in this Agreement, ***"Excluded Dispute" collectively means: (a) any Dispute relating to the infringement, misappropriation and/or other misuse of intellectual property rights other than patent rights (including, without limitation, claims seeking injunctive relief)***; (b) any Dispute relating to the violation, misappropriation and/or other misuse of confidential information (including, without limitation, claims seeking injunctive relief); (c) any Dispute relating to the enforcement of an Arbitration award; and/or (d) any Dispute that qualifies for small claims court.

2018 EULA at 12.3; Current EULA, Section 12.3 (emphasis added).

## III.    LEGAL STANDARD

### A.    This Court may determine questions of arbitrability.

"[Q]uestion[s] of arbitrability include certain gateway matters that are presumptively for courts to decide[.]" *Sonico v. Charter Commun., LLC*, No. 19-CV-01842-BAS-LL, 2020 WL 1910356, at *3 (S.D. Cal. Apr. 20, 2020) (denying without prejudice the defendants' motion to compel arbitration and stay proceedings). This Court has identified "gateway questions of arbitrability to include whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Id.* (internal citation omitted).

Moreover, "there is a presumption that courts will decide which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding questions of arbitrability." *Id.* (internal citation omitted). "Thus, a district court must determine (1) whether a valid arbitration agreement exists and, if so, (2) whether the

agreement covers the relevant dispute." *Id.* citing 9 U.S.C. § 4; *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (internal citation omitted).

### B. Any purported right to arbitration can be waived.

"[T]he test for waiver of the right to compel arbitration consists of two elements: (1) knowledge of an existing right to compel; and (2) intentional acts inconsistent with that right." *Sywula v. Teleport Mobility, Inc.*, No. 21-CV-01450-BAS-SBC, 2023 WL 4630620, at *5 (S.D. Cal. July 18, 2023) (citing *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022)); *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023) (affirming denial of motion to compel arbitration). A party opposing arbitration need not show prejudice to prevail. *See Hill*, 59 F.4th at 468. The party opposing arbitration also no longer bears a "heavy" burden to overcome some presumption against waiver. *Sywula*, 2023 WL 4630620, at *5 (citing *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023) ("there is no longer a thumb on the scale in favor of arbitration")). Rather, "courts must hold a party to its arbitration contract just as the court would to any other kind [of contract]." *Id.* (quoting *Morgan* 142 S. Ct. at 1713).

### C. This Court maintains broad discretion in determining a stay.

This Court has broad discretion in determining stays and the "power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). The Ninth Circuit has "identified three non-exclusive factors courts must weigh when deciding whether to issue a docket management stay: (1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024) (internal citation omitted).

## IV. **ARGUMENT**

### A. **Defendants waived the right to arbitrate.**

The Player EULAs do not apply here. *See supra* Section II(D) and *infra* Section IV(B). Even if the Players EULAs' arbitration provisions applied (which they do not), Defendants waived their right to arbitrate because they sought a decision on the merits of Daybreak's claims by opposing the PI Motion before attempting to arbitrate. *See*, *e.g.*, *Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (affirming denial of defendants' motion to compel arbitration after finding the moving parties' Rule 12(b)(6) motion evinced active litigation of the case in pursuit of a judgment on the merits).

A party seeking to compel arbitration based on a contractual agreement generally waives that right when it "(1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Armstrong*, 59 F.4th at 1015 (internal quotation omitted). No "concrete test" for waiver exists, so to assess whether a party "took acts inconsistent with its right to arbitration, '[courts] consider the totality of the parties' actions.'" *Id*. at 1014–15 (quoting *Hill*, 59 F.4th at 471); *see also Sywula*, 2023 WL 4630620, at *7 ("length of delay is just factor that gives color to the totality of Defendant's conduct").

Here, Defendants made a strategic decision not to seek to compel arbitration until after the PI Hearing and actively sought to litigate the underlying merits by opposing Daybreak's PI Motion. *See* PI Opposition, Proposed Supplemental PI Filing, and PI Hearing Transcript; *see also Murphy v. Roblox Corp.*, No. 23-CV-1940 TWR (BLM), 2025 WL 2327100, at *8 (S.D. Cal. July 9, 2025) ("Defendant has repeatedly sought to take advantage of this forum by asking this Court—over a protracted period of time—to dismiss this action. The Court therefore concludes that Defendant has waived its right to compel arbitration.").

1    Defendants knew of the Player EULAs prior to Daybreak filing this litigation.
2    *See generally Sywula*, 2023 WL 4630620, at *6 (this Court inferred that the
3    defendants were aware of the arbitration provision in part because of documents
4    proffered alongside the motion to compel arbitration). In his Declaration in support
5    of this Motion to Arbitrate, Takahashi attested, "[t]hroughout the years that I played
6    EverQuest, I understand that EverQuest modified its applicable End-User License
7    Agreement." Takahashi MTA Decl. at ¶ 1. He also attested that the Current EULA
8    "is the operative End-User License Agreement for me." *Id*. at ¶ 2. Taylor made
9    analogous attestations related to the 2018 EULA. *See* Taylor MTA Decl. at ¶¶ 3-4.
10   Defendants do not address that the RoF EULA is part of the code they stole. *See*
11   *generally id*. and Takahashi MTA Decl.

12   Defendants also engaged in acts inconsistent with their purported right to
13   arbitration when "considering the totality of [their] actions." *Sywula*, 2023 WL
14   4630620, at *7. Specifically, they participated in "active litigation in pursuit of a
15   decision on the merits of" Daybreak's claims by opposing Daybreak's PI Motion
16   with, *inter alia*, significant evidentiary submissions. *Martin*, 829 F.3d at 1118,
17   (finding that precedent shows "[s]eeking a decision on the merits of a key issue
18   indicates an intentional and strategic decision to take advantage of the judicial
19   forum"); *c.f. Sywula*, 2023 WL 4630620, at *7 (holding that the aggregate of
20   movant's acts did not indicate that movant sought a decision on the merits of key
21   issues). Defendants additionally devoted "considerable time and effort" to, among
22   other things, negotiating and jointly entering the Stipulated TRO. *See supra* Section
23   II(B).

24   Therefore, the equitable doctrine of waiver should be applied. *See Hebei*
25   *Hengbo New Materials Tech. Co., Ltd. v. Apple, Inc.*, 344 F. Supp. 3d 1111 (N.D.
26   Cal. 2018) (denying motion to compel and holding that manufacturer acted
27   inconsistently with its right to arbitrate).

28

**B.     This Court maintains the authority to determine arbitrability.**

To the extent Defendants claim that any questions of arbitrability are delegated to an arbitrator (*i.e.*, not this Court) because of references to the AAA Commercial Arbitration Rules in the Player EULAs, that argument fails.

The default rule is that courts adjudicate arbitrability; unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. *Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016). Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so. *Id.*

Here, the evidence is clear that there was no intent to submit the question of arbitrability to the arbitrator. The arbitration clause explicitly states, "[the customer] and Daybreak may apply to the applicable court in the District of Delaware or Southern District of California" for, *inter alia*, claims relating to intellectual property infringement. 2018 EULA at 12.1; Current EULA, Section 12.1. Thus, either party may proceed directly to a court of competent jurisdiction to litigate such claims. Moreover, in the Players' EULA, the AAA Consumer Rules apply only to the administration of an arbitration, not to the question of arbitrability or to claims expressly excluded from arbitration: "The Arbitration will be administered by the American Arbitration Association under its Consumer Arbitration Rules…." The facts in *Brennan* are inapposite. *See generally,* 796 F.3d 1125. In that case, the issue referred to the arbitrator was whether the arbitration clause was unconscionable. *Brennan* did not address a scenario where, as here, the arbitration clause expressly excludes the claims at issue from being arbitrated, and the AAA rules apply only to the administration of a claim that is not excluded from arbitration. *Id.*

Second, since the *Brennan* decision was issued, courts have declined to apply its holding to consumer arbitration clauses. In *Tompkins*, the court declined to find

that incorporation of the AAA rules was sufficient to establish delegation in a contract between a DNA testing service and individual consumers. 2014 WL 2903752, at *11–12. The *Tompkins* court contrasted the facts before that court, where customers bought and obtained DNA tests and agreed to the terms of service online, with the facts of *Oracle*, where two technology companies negotiated and entered into a licensing agreement. *Id*. (citing *Oracle*, 724 F.3d 1069). The *Tompkins* court held, "[t]here is good reason not to extend this doctrine [in *Oracle*] from commercial contracts between sophisticated parties to online click-through agreements crafted for consumers." *Id*. at *11. There is substantial support in Ninth Circuit courts for the proposition that *Brennan*'s holding should not be applied to consumer arbitration clauses. *Nessim v. Fliff, Inc.*, No. 523CV01048SSSSHKX, 2024 WL 1600649, at *6 (C.D. Cal. Jan. 5, 2024) (collecting cases).

For these reasons, this Court should maintain its authority to determine arbitrability under the Player EULAs and not immediately compel arbitration on a threshold issue of the Player EULAs' applicability.

## C.    The RoF EULA applies.

Defendants concede that they used the RoF client to develop THJ. *See*, *e.g.*, Takahashi PI Decl. at ¶ 22; Karlsson Decl. at ¶ 18. Indeed, Defendants embedded the RoF EULA in the THJ software (*i.e.*, the RoF EULA is part and parcel of what Defendants stole from Daybreak). 9/19/25 Chan Decl. at ¶¶3-6. Yet, the RoF EULA contains a jurisdiction clause establishing this Court's personal jurisdiction over Defendants whereas the Player EULAs contain arbitration provisions (albeit with non-patent intellectual property carveouts). Accordingly, Defendants' arguments that the RoF EULA does not apply ring hollow.

Indeed, manipulating the facts to seek to compel arbitration constitutes impermissible forum shopping. As the Ninth Circuit in *Martin* held:

> A party that signs a binding arbitration agreement ... has a choice: it can either seek to compel arbitration or agree to litigate in court. It cannot choose both.

> A party may not delay seeking arbitration until after the district court rules against it in whole or in part; *nor may it belatedly change its mind after first electing to proceed in what it believed to be a more favorable forum.* Allowing it to do so would result in a waste of resources for the parties and the courts and would be manifestly unfair to the opposing party.

829 F.3d at 1128 (emphasis added). Here, Defendants did not merely change their minds. Rather, they are engaging in impermissible gamesmanship by picking and choosing which EULA they want to apply for a perceived litigation advantage.

### D. Estoppel prevents Defendants from evading the RoF EULA.

In evaluating equitable estoppel, courts "look[ ] at the relationship between the parties and their connection to the alleged violations." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 875 (9th Cir. 2021). In *Franklin*, the Ninth Circuit analyzed circumstances surrounding the written travel-nurse-assignment contract at issue in that case. *Id.* at 875. The Ninth Circuit held, "[b]ecause the nurse's claims against the hospital turned on the staffing agency's performance under its contract, we held that the nurse's claims against the hospital were 'intimately founded in and intertwined with' her employment contract with the staffing agency." *Id.*

Here, Daybreak's claims—including but not limited to its copyright claims — are "intimately founded in and intertwined with" Defendants' misappropriation of RoF, including the RoF EULA. *Id.*; *see also*, *e.g.*, Complaint at ¶¶ 8, 9, 31, 33, 41, 61-64, 75, 94, 117-123; Kitchen Report. Defendants concede that they utilized RoF to create THJ (*see*, *e.g.*, Karlsson Decl., at ¶ 18), the entire RoF EULA is embedded in THJ. 9/19/25 Chan Decl. at ¶¶3-6. Yet, Defendants do not even mention RoF in the Motion to Arbitrate. *See generally* Motion to Arbitrate.[4]

Based on Defendants' actions (*i.e.*, infringement of RoF and wholesale misappropriation of the RoF EULA into THJ), equitable estoppel prevents them from taking that position which seeks to harm Daybreak.

---

[4] Defendants state that "Plaintiff attached to its Complaint Exhibit A." Id. at 4. The RoF EULA is Exhibit A to Daybreak's Complaint. (ECF No. 1-2.)

**E.    Even if the Player EULAs apply, all of Daybreak's claims remain non-arbitrable.**

In deciding whether a dispute must be arbitrated, the Court looks "first to the content of the arbitration clause." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1101 (9th Cir. 2023). Here, the Player EULAs contain an arbitration clause which clearly carves out the main claims in this litigation (*i.e.*, copyright claims): "'Excluded Dispute' collectively means: (a) any Dispute ***relating to*** the infringement, misappropriation and/or other misuse of intellectual property rights other than patent rights (including, without limitation, claims seeking injunctive relief)." 2018 EULA at 12.3; Current EULA, Section 12.3 (emphasis added).

Next, courts "look at the nature of the dispute" and "[i]n determining if a dispute falls within the scope of an arbitration clause . . . examine the factual allegations raised in the complaint." *Jackson*, 65 F.4th at 1101.

Here, Daybreak filed suit against Defendants due to Defendants' blatant theft of EverQuest and Daybreak's copyrights. *See*, *e.g.*, PI Motion at 1; Complaint at ¶¶ 1, 17-94. Defendants do not contest that the litigation centers on copyright claims. *See*, *e.g.*, PI Opp. at 1 (discussing THJ's use of "Daybreak's intellectual property"); *id*. at 4, fn. 2 (stating that a PI standard "applies with even greater force in copyright infringement cases"); PI Hearing Transcript at 11:7-8 (Defendants asked the Court to discuss "predicate issues" involving estoppel on Daybreak's intellectual property claims); *id*. at 26:21-24 ("I won't go any further on the likelihood of success on copyright and everything . . .").

As Defendants concede, the Player EULAs contain an exception exempting Daybreak's copyright and other intellectual property claims from arbitration. 2018 EULA at 12.3; Current EULA, Section 12.3; Motion to Arbitrate at 1. A foundational tenet of claim arbitrability is that "[a] party cannot be required to submit to arbitration any dispute which [it] has not agreed to submit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *Grey v. American Mgmt.*

*Services*, 204 Cal.App.4th 803, 805-809 (2012). "Arbitration is strictly a matter of consent and, therefore, a party cannot be required to arbitrate a dispute that it has not agreed to submit to arbitration." *Eminence Healthcare, Inc. v. Centuri Health Ventures, LLC*, 74 Cal.App.5th 869, 875 (2022) (internal citation omitted). Therefore, Daybreak's copyright and trademark claims are not arbitrable. *See*, *e.g.*, *Alvarado v. Rockwell Collins, Inc.*, No. CV 23-400-JFW(JCX), 2023 WL 5505877, at *3 (C.D. Cal. May 24, 2023) (holding that the plaintiff's unlawful business practice claim was not subject to arbitration because of the arbitration agreement's carve-out).

Yet, Defendants seek to compel arbitration of ***all*** of Daybreak's claims. *See* Motion to Arbitrate. That request should be rejected. The express language of the arbitration clause excludes all disputes "relating to" intellectual property infringement (other than patents). 2018 EULA at 12.3; Current EULA, Section 12.3. Here, every claim asserted by Daybreak is either a copyright claim (*see*, *e.g.*, Complaint at ¶¶ 70-94), a trademark claim (*see*, *e.g.*, *id.* at ¶¶ 95-102, 110-116) or a related claim: unfair competition arises from Defendants' misuse of Daybreak's trademarks (*see*, *e.g.*, *id.* at ¶¶ 103-109, 124-130); breach of contract arises from Defendants' misappropriation of EverQuest, including but not limited to its copyrights (*see*, *e.g.*, *id.* at ¶¶ 117-123); and unfair enrichment arises from Defendants' development, operation, and promotion of THJ, which occurred through, *inter alia*, infringement of Daybreak's copyrights and trademarks (*see*, *e.g.*, *id.* at ¶¶ 131-135). Indeed, all of Daybreak's claims arise out of the same operative facts, namely, Defendants' brazen theft of the EverQuest game and related intellectual property.

Thus, none of Daybreak's claims against Defendants are arbitrable under the Player EULAs' carveouts. *See*, *e.g.*, *Louis v. TPG Funding, LLC*, No. 24-CV-03011-JD, 2025 WL 860504, at *2 (N.D. Cal. Mar. 19, 2025) (in denying motion to compel arbitration, the court held that the plaintiff's "claims plainly come within the scope

of the 'related to this Agreement' carveout to arbitration" and the defendant's "efforts to sidestep the plain language of the arbitration clause [were] unavailing.").

### F.    The Court should not voluntarily stay this case.

Here, the three non-exclusive factors courts in the Ninth Circuit evaluate in deciding whether to issue a docket management stay favor Daybreak.

First, a stay of this litigation will cause even greater irreparable harm to Daybreak. As Daybreak set forth in its preliminary injunction briefing and at the PI Hearing, Daybreak would have continued suffering irreparable harm had Defendants not been preliminarily enjoined. *See* PI Motion; *see also* PI Reply; PI Hearing Transcript; *see also* Order Granting Motion for Preliminary Injunction ("PI Order"). (ECF No. 66.)

Second, "[t]he proponent of a stay bears the burden of establishing its need." Clinton, 520 U.S. at 708. Defendants, however, did not even attempt to demonstrate hardship or inequity if a stay is denied, let alone establish a "clear case." *See Landis v. North American Co.*, 299 U.S. 248, 255-57 (1936); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005). Rather, Defendants perfunctorily claim that "[a]bsent a stay," they will be "forced to litigate in this forum." Motion to Arbitrate at 11. That is not enough. *See*, *e.g.*, *Lockyer*, 398 F.3d at 1112 ("being required to defend a suit, without more, does not constitute a "clear case of hardship or inequity."). In fact, many courts find "the hardship attendant with being forced to defend a lawsuit is irrelevant...." *American Honda Motor Co., Inc. v. Coast Distribution System, Inc.*, No. C 06-04752 JSW, 2007 WL 672521, *2 (N.D. Cal. Feb. 26, 2007); *Montez v. Chase Home Fin. LLC*, No. 11-CV-530 JLS WMC, 2011 WL 2729445, at *1 (S.D. Cal. July 13, 2011) (rejecting the argument for stay based on the fact that the defendant "may be put to the significant burden and expense of engaging in potentially broad-ranging and expensive discovery.").

Third, issuing a stay in this case would not further the orderly course of justice. Rather, it would condone Defendants' gamesmanship. Defendants even attempt to

mislead the Court by citing to a 1985 case to support the proposition that "Courts are required to 'rigorously enforce agreements to arbitrate.'" PI Opp. at 11 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). In 2022, however, the Supreme Court held, "[n]o longer is there a 'special' rule favoring arbitration." *Morgan*, 142 S. Ct. at 1713.

In sum, a stay is inappropriate. *See*, *e.g.*, *Lockyer*, 398 F.3d at 1110–12. In *Lockyer*, the Ninth Circuit held, "[i]f there is even a fair possibility that the stay. . . will work damage to someone else,' the party seeking the stay 'must make out a clear case of hardship or inequity." *Id.* citing *Landis*, 299 U.S. at 254. Defendants do not make such an attempt. Thus, the case should not be stayed.

### G. Any mandatory stay under *Coinbase* should not dissolve injunctive relief previously issued by this Court.

In 2023, the Supreme Court held that interlocutory appeals of denials of motions to compel arbitration result in automatic stays of district court litigation. Coinbase, 599 U.S. 736. A pending appeal divests a lower court of its ability to issue or modify any orders encompassed by the appeal. *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *Evans v. Synopsys, Inc.*, 34 F.4th 762, 776 (9th Cir. 2022) (same).

An automatic stay does not, however, dissolve any injunctive relief issued by the district court prior to the filing of the notice of appeal. For example, in *Wilhoite v. Hou*, this Court maintained a temporary restraining order (which was issued prior to the notice of appeal being filed) during the stay pending appeal. No. 3:23-CV02333 BEN-MSB, 2024 WL 2869986, at *5 (S.D. Cal. June 6, 2024); *see also* PI Order. Here, the PI Order should remain in place if the case is stayed. *See* PI Order.

## V.   **CONCLUSION**

In light of the foregoing, Daybreak respectfully requests that the Court deny Defendants' Motion to Compel in its entirety and grant any such other relief as it deems just and proper.

Dated: September 19, 2025                  Respectfully submitted,

DENTONS US LLP
By: *Daniel A. Schnapp*
    Daniel A. Schnapp (*pro hac vice*)
    Monica B. Richman (*pro hac vice*)
    Nicholas B. Janda
    Mary Kate Brennan (*pro hac vice*)

*Attorneys for Plaintiff*
*DAYBREAK GAME COMPANY, LLC*