Benjamin Bruce Anger, SBN 269145
    ben.anger@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
600 Anton Boulevard
Costa Mesa, CA 92626
T: (714) 830-0600 / F: (714) 830-0700

JOSHUA M. DALTON (*pro hac vice*)
    josh.dalton@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
T: (617) 341-7700 / F: (617) 341-7701

*Counsel for Defendants Kristopher Takahashi and Alexander Taylor*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYBREAK GAME COMPANY LLC, | CASE NO. 3:25-CV-01489 |
| Plaintiff, | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY LITIGATION** |
| v. | |
| KRISTOPHER TAKAHASHI; ALEXANDER TAYLOR; Does 1-20, Inclusive, | |
| Defendants. | Date: October 3, 2025<br>Place: Courtroom 12b 12th Floor<br>Judge: Hon. Cynthia Bashant |
| | **NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT.** |

## I. INTRODUCTION

Plaintiffs' Opposition ("Opp.") does not address the binding law in Defendants' motion that compels arbitration of Daybreak's claims. Reduced to its meritless essence, the Opposition's theory is that, because Defendants responded to emergency motions (Motion for Temporary Restraining Order and Motion for Preliminary Injunction), it cannot move to compel arbitration. Not surprisingly, no law and not a single cited authority supports Plaintiff's position.

First, Daybreak attempts to circumvent its own arbitration agreement by completely disregarding and failing to mention the "Agreement Modification Provision" within its EULA, which states, "continued use of any Game(s) following our making available any revised version of the Agreement will mean that you accept the revised version. *If you do not agree to any changes made to the Agreement, you may not access or use the Software*, and you may not play the Game." Daybreak alleges Defendants used "RoF client [software] to develop THJ" and "embedded the RoF EULA in the THJ software," (Opp. at 14) (emphasis added), but, at the same time, takes the position that Defendants somehow accessed and used Daybreak's RoF software without agreeing to the Agreement Modification provision contained in both the 2018 and 2022 EULAs, which are the operative EULAs.

Second, the Court should reject Daybreak's specious argument that Defendants waived their right to arbitrate. Plaintiff states "Defendants *sought* a decision on the merits by *opposing* the PI Motion before attempting to arbitrate." (Opp. at 11.) Defendants responded to Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction, in part, because the arbitration clause potentially carved out emergency relief. In any event, Defendants have neither filed an answer, served or responded to discovery, exchanged initial disclosures, nor asked the Court to weigh in on the merits of Plaintiff's claims. Indeed, Defendants have maintained that those questions are for the arbitrator, not the Court.

While Daybreak may feign surprise over this filing, Daybreak has known

about this Motion for many months. In opposing Plaintiff's Supplemental Motion for Preliminary Injunction, Defendants stated their intention to file a motion "pursuant to Daybreak's End User License Agreement, which mandates arbitration for 'any controversy, claim or dispute arising out of or relating to this Agreement or any aspect of the relationship between [Defendants] and Daybreak. . .'" (Dkt. 50 at 17.) Daybreak also fails to cite a single authority in support of its waiver arguments. Instead, Daybreak relies upon an inapposite case in which the court found that a party could not file a motion to compel *after* it had filed a Rule 12(b)(6) motion. Here, Defendants have not filed a Rule 12 motion and instead explicitly "reserve[d] the right to file a Rule 12(b) motion in accordance with any schedule set by the Court. *See Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 (9th Cir. 1988) (holding that a prior motion to stay based on grounds other than Rule 12 did not bar a later Rule 12(b) motion)." (Dkt. 60 at 2.) Daybreak's waiver arguments are without merit.

Third, the Court should voluntarily stay this litigation pending the resolution of the arbitration. Daybreak ignores and fails to address Section 3 of the FAA, which provides the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Defendants have made such a request. (Mot. at 11-12.) This Court should stay this litigation pending arbitration.

## II. PLAINTIFF MUST ARBITRATE ITS CLAIMS

Daybreak does not mention the Federal Arbitration Act ("FAA") in its opposition. It does not rebut that the FAA reflects the well-established federal policy favoring arbitration and requires that arbitration agreements be rigorously enforced nationwide. It further does not contest that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury*

*Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Instead, Daybreak makes three arguments that seek to invalidate its own EULA: (i) the EULA Daybreak contends is at issue ("RoF EULA") does not contain an arbitration clause; (ii) Defendants waived their right to arbitrate; and (iii) the court, not the arbitrator, has the authority to determine arbitrability of the claims. These arguments fail for the reasons set forth below.

### A. The Applicable EULAs are the 2018 and 2022 EULAs, Not the RoF EULA.

Daybreak states that the RoF EULA is the applicable EULA to this litigation and argues Defendants used "RoF client [software] to develop THJ" and "embedded the RoF EULA in the THJ software." (Opp. at 14.) But, the RoF EULA is not even Daybreak's EULA – it governed the relationship between players and Daybreak's predecessor, Sony Online Entertainment LLC, and was effective in 2008 (i.e., more than seven years before Daybreak acquired EverQuest in 2015). (*See* Mot. at 4.)

An exercise in misdirection, Daybreak maintains, "Defendants do not even mention RoF in the Motion to Arbitrate." (Opp. at 15.) Not so. Defendants argued extensively in their Motion that the RoF EULA was "not applicable to Daybreak." (Mot. at 4). Specifically, Defendants explained:

> [The RoF EULA] is not applicable to Daybreak, which issued amended End-User License Agreements in both February 2018 and June 2022. ***To the extent Daybreak is attempting to rely on Sony Entertainment's End-User License Agreement*** (likely because, unlike Daybreak's, the Sony agreement does not incorporate a mandatory arbitration provision), ***it may not do so. The Agreement Modification provision makes the June 2022 EULA the applicable agreement to the dispute with Mr. Takahashi and the February 2018 EULA the applicable agreement to the dispute with Mr. Taylor***, both of which include (i) a mandatory arbitration for "[a]ny dispute"; (ii) a requirement that "[i]f a Dispute arises, you and Daybreak first shall attempt in good faith to resolve it promptly by Negotiation"; (iii) the incorporation of the "American Arbitration Association under its Consumer Arbitration Rules. . ."; and (iv) the same "Excluded Disputes." See Ex. 1 at 6-7; Ex. 2 at 14-15.

*Id.* (emphasis added).[1] Daybreak cannot plausibly argue that Defendants "have accessed and used the EverQuest software and, in doing so, agreed to be bound by the terms of the EULA," (Dkt. 1 at ¶ 119), while, at the same time, suggesting that the Agreement Modification provision set forth in the 2018 and 2022 EULAs is inapplicable to this lawsuit.

Daybreak fails to respond to its "Agreement Modification Provision" and, as a result, concedes this argument. *See Malibu Behavioral Health Servs. Inc. v. Magellan Healthcare, Inc.*, 2020 WL 7646974, at *4 (C.D. Cal. Dec. 23, 2020) ("A failure to address an argument in opposition to a motion [] constitutes a concession of that argument."); *Hammarlund v. C.R. Bard, Inc.*, 2015 WL 5826780, at *6 (C.D. Cal. Oct. 2, 2015) ("Plaintiff has apparently conceded this claim by failing to respond to Defendants' argument."). The terms of both the 2018 and 2022 EULA note that a person's "continued use. . . will mean that you accept the revised version. If you do not agree to any changes made to the Agreement, *you may not access or use the Software*, and you may not play the Game." *See* Defs.' Ex. 1 at 6-7; Ex. 2 at 14-15 (emphasis added). Daybreak has "effectively abandoned" any contrary position, which supports granting the Motion in its entirety. *Montgomery v. Specialized Loan Servicing, LLC,* 772 F. App'x 476, 477 (9th Cir. 2019).[2]

---

[1] Daybreak's equitable estoppel argument is also without merit. Equitable estoppel "allows *a nonsignatory* to invoke arbitration when parties do not sign the arbitration agreement," *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021) (emphasis added), and when the signatory's claims are "intimately founded in and intertwined with the underlying contract." *Herrera v. Cathay Pac. Airways Ltd.*, 2024 WL 3010471, at *4 (9th Cir. June 14, 2024). Here, it has no application to this dispute because Plaintiff alleges Defendants were signatories of the arbitration agreement when they allegedly "accessed and used the EverQuest software and, in doing so, *agreed to be bound by the terms of the EULA*." (Dkt. 1 at ¶ 119) (emphasis added). The Court should reject Plaintiff's estoppel argument.

[2] Daybreak also does not contest that it violated its 2018 and 2022 EULAs in failing to engage in any "Negotiation" with Defendants prior to filing this lawsuit. (*See* Mot. at 3.)

### B. Defendants Did Not Waive Their Right to Arbitrate

Daybreak next argues "Defendants waived their right to arbitrate because they sought a decision on the merits of Daybreak's claims by opposing the PI Motion before attempting to arbitrate." (Opp. at 11.) But, no such waiver has occurred here.

As the Court noted in *Parsittie v. Schneider Logistics, Inc.*, the "'[w]aiver of the right to arbitration is disfavored because it is a contractual right, and thus any party arguing waiver of arbitration bears a heavy burden of proof.' Accordingly, '[a]ny examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements.'" 2023 WL 2629869, at *4 (C.D. Cal. Feb. 8, 2023) (quoting *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988)). While "[t]here is no concrete test to determine whether a party has acted inconsistent with its right to arbitrate," the Ninth Circuit has explained that this should be a "holistic inquiry" and it should center on whether a defendant "actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *United Specialty Ins. Co. v. Clean & Sober Media LLC*, 2021 WL 3623300, at *3 (C.D. Cal. Apr. 16, 2021) (quoting *Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019)) (emphasis added). For a motion to rise to the level of waiver, it must seek to litigate a "key merits issue that would preclude relief as to one or more of plaintiffs' claims." *Martin*, 829 F.3d at 1126, n.4 (emphasis added).

Daybreak has made no such showing.[3] Here, Defendants timely moved to compel Daybreak's claims to arbitration after responding to the time sensitive TRO and Preliminary Injunction motions. Defendants have neither filed an answer, served

---

[3] Daybreak's EULA seeks to exempt "claims seeking injunctive relief." *See* Defs.' Ex. 1 at 6; Ex. 2 at 14. Before this Court could address the terms of the arbitration agreement, Defendants had made clear in their filings that they would move to compel arbitration. Defendants had no choice but to respond to emergency motions seeking injunctive relief and did not waive their right to arbitrate. Importantly, Daybreak does not cite a single authority supporting their argument that responding to emergency motions to avoid being shut down constitutes waiver.

or responded to discovery, exchanged initial disclosures, nor asked the Court to weigh in on the merits of Plaintiff's claims. Defendants simply defended against Plaintiff's motions. Daybreak cannot reasonably argue that these actions are inconsistent with Defendants' right to arbitrate or that Defendants' timing prejudiced Daybreak when Defendants noted in opposing the preliminary injunction that they "intend to file a motion to stay . . . pursuant to Daybreak's End User License Agreement." (Dkt. 50 at 17); *see Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) ("To prove prejudice, plaintiffs must show more than 'self-inflicted' wounds that they incurred as a direct result of suing in federal court contrary to the provisions of an arbitration agreement.").

Daybreak reliance on *Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) is inapposite. As Daybreak concedes, the *Martin* court denied Defendants' motion to compel because defendants had filed a Rule 12(b)(6) motion prior to the motion to compel. (Opp. at 11.) Unlike *Martin*, Defendants have not filed a Rule 12 Motion here and explicitly reserved "the right to file a Rule 12(b) motion in accordance with any schedule set by the Court." (Mot. at 2.)

*Sywula v. Teleport Mobility, Inc.*, 2023 WL 4630620, at *5 (S.D. Cal. July 18, 2023) is similarly inapposite. There, the defendants moved to compel arbitration approximately *18 months into the lawsuit*. *Id.* at *7 (emphasis added). During that time, the defendants had moved to transfer venue, moved to dismiss on jurisdictional grounds, and participated in a significant amount of discovery—including serving written discovery, obtaining production of thousands of documents from the plaintiff, and deposing the plaintiff. *Id.* at *8-10. Despite that amount of discovery, the court rejected plaintiff's claim of waiver, holding that the plaintiff was required to "show something more than mere delay," and "bears the burden to establish that, while Defendants sat idly upon their right to arbitrate, they undertook a conscious decision . . . to seek judicial judgment on the merits of [the] arbitrable claims" *Id.* at *7 (internal citations omitted). In reaching this conclusion, the court directly contrasted

the facts before it with the Ninth Circuit's decision in *Martin*, where the defendant was found to have waived arbitration rights after successfully moving to dismiss on a key merits issue before moving to compel arbitration. *Id.* (citing *Martin*, 829 F.3d at 1122). Thus, the Court should deny Daybreak's waiver argument.

### C. The EULA Delegates Issues of Arbitrability to the Arbitrator, Not The Court

The question of whether this dispute is subject to arbitration is an issue for the arbitrator, not this Court. Contrary to Daybreak's contentions, (Opp. at 13–14), any further challenge to the enforceability of the Arbitration Agreement must be decided by the arbitrator, as courts must enforce agreements to delegate "gateway" arbitration disputes. *See, e.g., Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71–76 (2010) (clause granting arbitrator "exclusive authority" to resolve enforceability delegated unconscionability challenges to the arbitrator). Daybreak argues that references to the AAA rules, (Opp. at 12-13), are not an effective delegation, but the "overwhelming weight of authority" holds that reference to AAA rules is sufficient for delegation. *Bloom v. ACT, Inc.*, 2018 WL 6163128, at *4 (C. D. Cal. Oct. 24, 2018) ("[t]he general trend … is to allow arbitrability delegation vis-à-vis the incorporation of AAA rules, regardless of the parties' sophistication"); (Mot. at 6-8).

Importantly, while Daybreak states, "courts have declined to apply its holding to consumer arbitration clauses," Opp. at 13, it cites a single case (*Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014)) that has been deemed "at odds with the prevailing trend of case law." *Zenelaj v. Handybook Inc.*, 82 F. Supp. 3d 968, 973 (N.D. Cal. 2015). Courts have recognized that the portion of *Tompkins* Plaintiff cites is "outdated" in light of the Ninth Circuit's subsequent decision in *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) and have found that the incorporation of AAA rules in an arbitration agreement "constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Khraibut v. Chahal*, 2016 WL 1070662, at *4 (N.D. Cal. Mar. 18, 2016).

Daybreak cannot outrun the clear and unmistakable authority in Defendants Motion (Mot. at 6-8) that "gateway" questions of arbitrability and enforceability are reserved for the arbitrator, particularly where Daybreak has incorporated the AAA Consumer Arbitration Rules.

### D. Daybreak's Claims Fall Within the Scope of the Arbitration Clause

Even if arbitrability were before the Court, rather than the arbitrator, Daybreak's claims fall within the scope of the arbitration provision wherein claims "need only touch matters covered by the [arbitration clause] . . . and all doubts are to be resolved in favor of arbitrability." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) (internal citations omitted). As Daybreak concedes, "all of Daybreak's claims arise out of the same operative facts." (Opp. at 17.) And, the factual allegations "need only touch matters covered by the contract containing the arbitration clause and all doubts are to be resolved in favor of arbitrability." *Simula*, 175 F.3d at 721. For the reasons set forth in Defendants' Motion, (Mot. at 8-10), courts in the Ninth Circuit, including this District, routinely compel arbitration of copyright claims that raise factual issues that touch on the contractual relationship between the parties to a broad arbitration agreement. The Court should do the same here.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court compel arbitration and stay any remaining claims the Court finds are not subject to arbitration.

| | | |
|---|---|---|
| 1 | Dated: September 26, 2025 | Respectfully submitted, |
| 2 | | By: */s/ Joshua M. Dalton* |
| | | Benjamin Bruce Anger, SBN 269145 |
| 3 | | **MORGAN, LEWIS & BOCKIUS LLP** |
| | | 600 Anton Boulevard |
| 4 | | Costa Mesa, CA 92626 |
| | | Telephone: (714) 830-0441 |
| 5 | | ben.anger@morganlewis.com |
| 6 | | Joshua M. Dalton (*pro hac vice*) |
| | | **MORGAN, LEWIS & BOCKIUS LLP** |
| 7 | | One Federal Street |
| | | Boston, MA 02110-1726 |
| 8 | | Telephone: (617) 341-7700 |
| | | josh.dalton@morganlewis.com |
| 9 | | |
| 10 | | *Attorneys for Defendants Kristopher Takahashi and Alexander Taylor* |