NICHOLAS B. JANDA (SBN 253610)
nick.janda@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

MONICA B. RICHMAN (*pro hac vice*)
monica.richman@dentons.com
DANIEL A. SCHNAPP (*pro hac vice*)
daniel.schnapp@dentons.com
MARY KATE BRENNAN (*pro hac vice*)
marykate.brennan@dentons.com
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020-1089
Telephone: (212) 768-6700
Facsimile: (212) 768-6800

*Attorneys for Plaintiff*
*DAYBREAK GAME COMPANY LLC*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYBREAK GAME COMPANY LLC,<br><br>Plaintiff,<br><br>v.<br><br>KRISTOPHER TAKAHASHI, ALEXANDER TAYLOR, and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 3:25-cv-01489-BAS-BLM<br><br>**DAYBREAK'S OPPOSITION TO DEFENDANTS' EMERGENCY MOTION FOR AN ADMINISTRATIVE STAY OF PRELIMINARY INJUNCTION OR FOR CLARIFICATION REGARDING THE SCOPE OF PRELIMINARY INJUNCTION**<br><br>**NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT**<br><br>Date: October 24, 2025<br>Ctrm: 12B |

Case No. 3:25-cv-01489-BAS-BLM
Daybreak's Opposition to Defendants'
Emergency Motion for an Administrative Stay of
Preliminary Injunction or for Clarification
Regarding the Scope of Preliminary Injunction

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | STATEMENT OF FACTS | 2 |
| | A. Procedural history | 2 |
| | B. Irreparable harm | 3 |
| | C. Online commentary regarding THJ | 4 |
| | D. Defendants' post-PI Order actions | 5 |
| | E. Post-PI Order online discussions | 5 |
| | F. Defendants' prior and pending motion seeking a stay | 6 |
| III. | LEGAL STANDARD | 7 |
| | A. Fed. R. Civ. P 62 | 7 |
| | B. Administrative stays | 7 |
| | C. Modification to provisional remedies | 7 |
| IV. | ARGUMENT | 8 |
| | A. The PI Order should not be administratively stayed. | 8 |
| | B. No significant changes in facts or law warrant revising the PI Order. | 9 |
| | C. If modified, the PI Order will result in further irreparable harm. | 9 |
| V. | DEFENDANTS' PROPOSED MODIFICATIONS SHOULD NOT BE ADOPTED | 12 |
| | A. "[M]aking available THJ or any ~~similar~~ new software" | 12 |
| | B. "[T]hat substantially replaces THJ ~~infringes Daybreak's copyrights~~" | 13 |

  C. "[M]aintaining any public ~~or private~~ repositories containing code for THJ" .................................................................. 13

  D. "~~[O]perating any server emulation software that enables unauthorized access to Daybreak's *EverQuest* copyrighted works~~" ........................................................................ 14

  E. "[U]sing the EVERQUEST mark or any confusingly similar variations thereof as a trademark" ............................... 15

VI. CONCLUSION ............................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado v. Wolf*,
  945 F.3d 1223 (9th Cir. 2019) ............................................................................. 8

*Am. Rena Int'l Corp., v. Sis-Joyce Int'l Co.*,
  No. CV 12-06972 DMG, 2012 WL 12538385 (C.D. Cal. Oct. 15, 2012) ......................................................................................................... 10

*Coinbase, Inc. v. Bielski*,
  599 U.S. 736 (2023) ....................................................................................... 6, 7

*H&R Block, Inc. v. Block, Inc.*,
  2022 WL 2132208 (W.D. Mo. May 20, 2022) .................................................. 9

*McCormack v. Hiedeman*,
  694 F.3d 1004 (9th Cir. 2012) ........................................................................... 8

*Natl. Abortion Fedn. v. Ctr. for Med. Progress*,
  793 Fed. Appx. 482 (9th Cir. 2019) ........................................................... 1, 7, 9

*United States v. Texas*,
  144 S. Ct. 797 (2024) ........................................................................................ 7

**Statutes**

17 U.S.C. § 1201(a)(1) and (a)(2) ............................................................................ 2

**Rules and Regulations**

Federal Rules of Civil Procedure

  Rule 62(a) .......................................................................................................... 7

  Rule 62(c) .......................................................................................................... 7

  Rule 62(d) .......................................................................................................... 7

  Rule 65 ............................................................................................................ 10

  Rule 65(d)(2) .................................................................................................. 10

## I. PRELIMINARY STATEMENT

After illegally operating THJ for almost one year, and following Daybreak's posting of a $1,000,000.00 bond, Defendants are finally subject to this Court's well-reasoned and comprehensive Order granting a preliminary injunction ("PI Order"). Defendants now ask this Court for an administrative stay, or in the alternative, an "emergency" modification of the PI Order ("Motion to Stay" or "Motion"). Under Ninth Circuit law, Defendants "bear[ ] the burden of establishing that a significant change in facts or law warrants revision of the injunction." *Natl. Abortion Fedn. v. Ctr. for Med. Progress*, 793 Fed. Appx. 482, 484 (9th Cir. 2019).

In their Motion, Defendants completely fail to establish any "emergency," proffer any change in facts or law, or even cite to controlling law that supports their position. Instead, Defendants seek an end-run around the PI Order by attempting to parse the language of the PI Order despite not having raised the same purported issues during the preliminary injunction briefing and hearing.

Even more alarmingly, Defendants essentially ask this Court to craft a new order which would permit Defendants and those acting in concert with them to frustrate this Court's PI Order.

Already, there are serious signs that the sanctity of the PI Order may be in jeopardy. For example, despite the injunction being in effect, Defendants refuse to stop soliciting money from third-parties directly related to THJ.

Moreover, since the PI Order has been in effect, multiple online commentators have discussed a desire for the infringing THJ code to be moved to foreign jurisdictions such as China and Russia.

Equally concerning, the online discussions related to THJ also demonstrate a desire for the infringing THJ code to leak, or worse, that it has already leaked. If this occurred, Daybreak would not only be further irreparably harmed but possibly have no legal recourse at all, and this Court's Order could be obstructed.

In their Motion, Defendants suggest deeply troubling modifications to the governing Court Order. Defendants' sanctionable desire to not comply with the PI Order as issued by, *inter alia*, maintaining the infringing code could have far reaching repercussions for Daybreak, including but not limited to a leak or a movement of THJ to overseas servers.

Accordingly, Daybreak respectfully submits this Court should deny Defendants' emergency motion in all respects.

## II. STATEMENT OF FACTS

### A. Procedural history

Daybreak initiated this action on June 14, 2025 as a result of Defendants' blatant and willful theft of Daybreak's intellectual property related to EverQuest. (ECF No. 1). In its Motion for a Preliminary Injunction ("PI Motion") (ECF No. 38), Daybreak demonstrated how, *inter alia*, Defendants engaged in systematic copyright infringement and DMCA violations by operating THJ using Daybreak's copyrighted material. *See also* Order Granting Motion for Preliminary Injunction ("PI Order") (ECF No. 66) ("[T]he Court is persuaded that Daybreak has demonstrated a likelihood of success on the merits of its direct copyright infringement claim. . . the Court is persuaded that Daybreak has demonstrated a likelihood of success on the merits of its claims that its claims that Defendants violated 17 U.S.C. § 1201(a)(1) and (a)(2).")

On September 19, 2025, after Daybreak's PI Motion was fully briefed (*see* ECF Nos. 50 and 53) and the Court heard oral argument (ECF Nos. 58 and 73-2), the Court issued the PI Order.

The PI Order, *inter alia*, required Daybreak to post a $1,000,000.00 bond and file proof same with the Court within seven days of the issuance of the PI Order (*i.e.*, September 26, 2025). (*Id*. at 30). Daybreak filed proof of issuance of the bond on September 23, 2025 (see ECF No. 74).

Per the PI Order, the injunction went into effect on the day Daybreak posted the bond (*i.e.*, September 23, 2025). (*See* PI Order at 30) ("The injunction . . . shall be effective immediately upon the posting of this bond.") Also per the PI Order, "[t]his injunction shall remain in effect until the entry of a final judgment in this action or until further order of the Court." (*Id*.)

The PI Order, among other things:

> ENJOINS Defendants, along with their officers, directors, agents, employees, and all persons or entities acting in active concert or participation with them, from: developing, distributing, licensing, promoting, or otherwise making available THJ or any similar software that infringes Daybreak's copyrights; operating the website heroesjourneyemu.com and any other websites used to promote or distribute THJ; maintaining any public or private repositories containing code for THJ, including at github.com/The-Heroes-Journey-EQEMU or any other online repository; operating any server emulation software that enables unauthorized access to Daybreak's EverQuest copyrighted works; and using the EVERQUEST mark or any confusingly similar variations thereof.

(*Id*.) (emphasis in the original.)

On September 23, 2025, Defendants filed a purported "Emergency" Motion for an Administrative Stay of Preliminary Injunction or for Clarification Regarding the Scope of Preliminary Injunction. (ECF No. 75).

**B.  Irreparable harm**

In the PI Order, the Court held that it "is persuaded that Daybreak has shown that Defendants' conduct is likely to cause irreparable harm" (PI Order at 27) for, *inter alia*, the following reasons:

- "[T]he Court is persuaded that THJ directly competes with EverQuest for users, and the evidence demonstrates not only likely actual harm to Daybreak's market but also the potential for further loss." (PI Order at 24-25).

- "Here, the record suggests harm to Daybreak's player base that likely undermines its market share, as statistical analysis reveals a 'correlation between THJ's growth and the decline in official EverQuest server populations.' (Supp. Mot. 27:3–4.)" (*Id*. at 26).

- "On this showing, the erosion of market share that threatens to undermine Daybreak's business model, along with the enabling of ongoing third-party infringement by THJ users, the Court is persuaded that Daybreak is experiencing harms that cannot be quantified or repaired with monetary damages." (*Id*.) (Internal citation omitted).

- "Taken together, the statistical evidence and THJ user statements support a reasonable inference that THJ competes with EverQuest, that players have migrated from EverQuest to THJ, and that Defendants' conduct is the proximate cause of the irreparable harm Plaintiff is likely to suffer absent relief." (*Id*. at 26-27).

- "Moreover, the Court agrees with Daybreak that THJ operates without Daybreak's quality assurance or security controls, which 'exposes players to potential security vulnerabilities, gameplay imbalances, and other issues that could reflect poorly on the EverQuest brand.' (Supp. Mot. 26:12–14.)." (*Id*. at 27).

- "Such unauthorized access to *EverQuest* copyrighted works undermines Daybreak's control over its intellectual property, risks reputational damage, and threatens its long-term goodwill in ways that are not readily . . . remedied with damages." (*Id*.) (Internal citation omitted).

### C.  Online commentary regarding THJ

Defendants are not the only individuals involved in THJ. For example, in support of their Opposition to PI Motion, Defendants submitted declarations from the following three third-parties:

- Zachary Karlsson: "My name is Zachary Karlsson, but I use 'Ozuri' online. I currently serve as an advisor to Another Quest LLC." (Declaration of Zachary Karlsson ¶ 1, ECF No. 50-2).

- Chris Miles: "I am known in the EverQuest Emulator community as 'Akkadius' or 'Akk.'" (Declaration of Chris Miles ¶ 1, ECF No. 50-4).

- Jeffrey Butler: "I have avidly played THJ since late 2024 and have been happy to donate to support their development efforts on more than one occasion. I have participated in several online streams in support of THJ, both to lend the weight of my experience with the franchise and to ensure any players who might be interested in their unique offering are aware of THJ." (Declaration of Jeffrey Butler ¶¶ 24-25, ECF No. 50-5).

These declarations confirm that in addition to Defendants, many individuals involved with THJ operate online using pseudonyms.

Both prior to and throughout the course of this litigation, THJ has been the subject of online discussions, including on Discord, Reddit, and YouTube. (*See* Supplemental Declaration of Nicholas B. Janda ("Supp. Janda Decl.") ¶¶ 2-14, ECF No. 38-2). Defendants have participated in and fostered certain of these discussions, especially on the THJ Discord channel. (*See id.*; *see also* September 26, 2025 Declaration of Nicholas B. Janda ("9/26 Janda Decl.")¶¶ 2, 16-17).

### D. Defendants' post-PI Order actions

Upon information and belief, on September 24, 2025, third-party access to THJ became disabled. (*See* 9/26 Janda Decl. ¶ 5).

Despite the injunction being in effect, Defendants refuse to stop soliciting money from third-parties directly related to THJ. (*See id.* at ¶ 17-18, Ex. 2).

While the Motion references "forthcoming motions for reconsideration and to stay pending appeal, and if necessary, until the Ninth Circuit resolves any motion for stay pending appeal pursuant to Federal Rule of Appellate Procedure 8," Defendants have not filed either. (Motion at 1).

### E. Post-PI Order online discussions

Since Defendant Takahashi posted the following on the THJ Discord channel, many individuals have discussed the PI Order: "As most of you are aware, the judge has granted Daybreak its request for a preliminary injunction . . . We tried everything we could . . ." (9/26 Janda Decl. ¶ 5).

While, upon information and belief, Defendants removed the THJ channels on Discord and Reddit on or about September 24, 2025 (*id.* at ¶ 5), an individual using the pseudonym "laziesathlete" posted about a "new THJ Reddit sub: r/TheHeroesJourneyTHJ." (*Id.* at ¶ 6). Other Discord posts indicate that the THJ Discord channel was renamed "Legends Rest." (*See id.* at ¶ 8). Discord discussions

regarding the THJ Discord also state, "Defendants are probably laying low and keeping it archived till some of the heat dies down." (*Id*. at ¶ 7).

Also since the PI Order went into place, multiple online commentators have discussed a desire for the infringing THJ code to leak:

- **"Hope somebody leaks the code and database and then anyone can make their own THJ server."** (***Id*. at ¶ 13**).

- **"Lets [sic] just hope the code for THJ gets leaked. I heard that an earlier version of the code from before the lawsuit was filed had already leaked online prior to the lawsuit but those who have it won't say where it got leaked to. I just want to host my own THJ for me and my friends."** (***Id*. at ¶ 10**).

- **"I will be checking this sub everyday hoping for a 'leak.'"** (***Id*. at ¶ 11**).

- **"I hope they leak the source code and core database to GitHub."** (***Id*. at ¶ 12**).

Other online commentators discussed having the infringing THJ code and servers moved to jurisdictions that could frustrate this Court's authority to enforce the injunctive relief (*e.g.*, China and Russia). (*See id*. at ¶¶ 15).

### F. Defendants' prior and pending motion seeking a stay

On August 12, 2025, ten days after oral argument on Daybreak's PI Motion, Defendants filed their still-pending Motion to Compel Arbitration and Stay Litigation ("Motion to Arbitrate"). (ECF No. 61). Daybreak opposed the Motion to Arbitrate on September 19, 2025 ("Opposition to Motion to Arbitrate") (ECF Nos. 71-73). In this Motion, Defendants reiterate the same request their previously made in their Motion to Arbitrate – that this Court should stay the case. (*See generally* Motion to Arbitrate, Section III(A)(5); Motion).

As set forth in Daybreak's Opposition to Defendants' Motion to Arbitrate (ECF No. 71), Defendants may be attempting to exploit the Supreme Court's recent decision in *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023). In *Coinbase*, the Supreme Court held that an appeal of the denial of a motion to compel arbitration automatically stays the underlying district court proceedings. Under this framework, the denial of

Defendants' Motion to Arbitrate could result in an automatic stay under *Coinbase*. This would allow Defendants to indefinitely stay this case.

### III. LEGAL STANDARD

#### A. Fed. R. Civ. P 62

Rule 62(a) provides generally that execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the district court orders otherwise. Fed. R. Civ. P. 62(a). Under Rule 62(c), there is no automatic stay, even if an appeal is taken from an interlocutory or final judgment in an action for an injunction. Fed. R. Civ. P. 62(c). While Rule 62(d) gives the district court the authority to suspend, modify, restore, or grant an injunction pending appeal, it does not confer upon the court the power to dissolve an injunction. Fed. R. Civ. P. 62(d).

#### B. Administrative stays

The Ninth Circuit "established that an administrative stay 'is only intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits, and does not constitute in any way a decision as to the merits of the motion for stay pending appeal.'" *Natl. Urb. League v. Ross*, 977 F.3d 698, 700 (9th Cir. 2020) (citing *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019)) (denying motion to stay the preliminary injunction pending appeal). An administrative stay "buys the court time to deliberate" when issues are not "easy to evaluate in haste." *United States v. Texas*, 144 S. Ct. 797, 798 (2024). An "[a]dministrative stay[ ] do[es] not typically reflect the court's consideration of the merits," but instead "reflects a first-blush judgment about the relative consequences" of the case. *Id*.

#### C. Modification to provisional remedies

"[A] district court may modify a provisional remedy, but the party seeking modification must demonstrate that a significant change in facts or law warrants revision." *Los Angeles Unified Sch. Dist. v. S&W Atlas Iron & Metal Co.*, Inc., No. 2:20-CV-05330-SB-SK, 2021 WL 6882311, at *3 (C.D. Cal. Dec. 26, 2021) (internal

citations omitted) (denying motion to modify because "Defendants have not satisfied their burden of showing a substantial change in circumstances . . . Nor have Defendants shown that they will be prejudiced by maintaining the current preliminary injunction because of alleged discovery and evidentiary abuses.").

## IV.   ARGUMENT

### A.   The PI Order should not be administratively stayed.

The legal standards for issuing both the preliminary injunctive relief at issue in this case and an administrative stay center on maintaining the status quo. *See Ross*, 977 F.3d at 700; *McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012); *see also Al Otro Lado v. Wolf*, 945 F.3d 1223, 1224 (9th Cir. 2019) ("A temporary stay in this context (sometimes referred to as an administrative stay) ***is only intended to preserve the status quo***." (Emphasis added)).

As the Court held in the PI Order, the Court "may issue preliminary injunctive relief to preserve the *status quo* between the parties pending a resolution of a case on the merits." (PI Order at 3) (internal citation omitted) (emphasis added). In issuing the PI Order, the Court further held, "[w]hile the injunction would require Defendants to 'take action,' Ninth Circuit precedent makes clear that an injunction which *restores the parties to the last uncontested **status quo** before the controversy arose*—e.g., where only the copyright owner exercised rights in its works— remains prohibitory in nature." (*Id.*) (emphasis added).

Like in *Ross*, "the status quo" here "would be seriously disrupted by an immediate stay of [this Court's] order." 977 F.3d at 700. As this Court already held:

> Here, the last uncontested status existed before Defendants began developing and distributing THJ, i.e., the conduct that gave rise to the present controversy and that Daybreak alleges infringes its copyrights and trademarks. Therefore, the requested injunction would not alter the "legally relevant relationship between the parties," *see Brewer*, 757 F.3d at 1060, ***since prior to the present controversy, Daybreak alone had the right to exploit and license EverQuest and Defendants had no lawful right to do so***. . . . Accordingly, the relief Daybreak seeks maintains the status quo and is therefore prohibitory in nature.

(PI Order at 6) (emphasis added).

Defendants' Motion is silent on how issuing the request administrative stay would maintain the status quo. (*See generally* Motion). Instead, Defendants cite a case where the Western District of Missouri did not grant the defendant's motion to stay pending appeal in its entirety. *H&R Block, Inc. v. Block, Inc.*, 2022 WL 2132208, at *1 (W.D. Mo. May 20, 2022). Throughout its decision, the *H&R Block* court held that the movant had not demonstrated "enough to justify a Rule 62 Stay." *Id*. In discussing the movant's failure to demonstrate it would be burdened as a result of the injunction, the *H&R Block* court held, "the Court has not ordered Block, Inc. to spend millions of dollars, *it has ordered Block, Inc. to stop violating H&R Block's trademark rights*." *Id*. (emphasis added).

### B.   No significant changes in facts or law warrant revising the PI Order.

Defendants seek modification of the PI Order. (*See generally* Motion). For this relief, Defendants "bear[ ] the burden of establishing that a significant change in facts or law warrants revision of the injunction." *Natl. Abortion Fedn*, 793 Fed. Appx. at 484 (citing *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000)) (affirming district court's preliminary injunction, holding movants failed to meet their burden). Defendants did neither. (*See* Motion). Defendants did not seek to submit additional evidence to the Court. (*See id*). Nor did Defendants identify any new law. (*See id*.). Therefore, Defendants' request to modify the PI Order fails.

### C.   If modified, the PI Order will result in further irreparable harm.

Even if Defendants had attempted to satisfy the burden of modifying the PI Order (which they did not), Defendants' requested modification to the PI Order would result in additional irreparable harm to Daybreak. (See, *e.g.*, PI Order at 26) (discussing THJ's harm to Daybreak's EverQuest player base).

Defendants' request that this Court modify its PI Order would provide Defendants and/or other persons who are in active concert or participation with Defendants a Court-approved way to continue infringing EverQuest (*e.g.*, rebuild and

host THJ offshore).[1] Consequently, Defendants would be irreparably harmed, which is exactly what the PI Order and any preliminary injunction seeks to stop. (*See* PI Order at 24-25) ("[T]he Court is persuaded that THJ directly competes with EverQuest for users, and **the evidence demonstrates not only likely actual harm to Daybreak's market but also the potential for further loss**.") (emphasis added); *Am. Rena Int'l Corp., v. Sis-Joyce Int'l Co.*, No. CV 12-06972 DMG (JEMX), 2012 WL 12538385, at *9 (C.D. Cal. Oct. 15, 2012) (granting preliminary injunction where plaintiff "is also threatened with extinction as a result of all of Defendants' unlawful activities").

The THJ-related discussions online confirm that there is a significant risk that Defendants and those working in concert with them will attempt to move their illegal game to foreign servers outside the jurisdiction of this Court. (*See* 9/26 Janda Decl. ¶ 15). Equally concerning, the THJ-related discussions online also demonstrate a desire for the infringing THJ code to leak. (*See id*. ¶¶ 10-13). On September 22, 2025, a Reddit user posting under the pseudonym GoodOl_Butterscotch stated, "I heard that an earlier version of the code . . . had already been leaked." (*See id*. ¶ 10). As this Court held, "[h]arm is irreparable if there is no adequate legal remedy, such as an award of damages." (PI Order at 25) (internal citation omitted). If either of these events occurred, Daybreak would not only be irreparably harmed but possibly have no legal recourse at all.

Contrary to Defendants' position, this Court did not abuse its discretion in issuing the PI Order. The plain language of Rule 65(d)(2) contemplates injunctions binding individuals and entities beyond the defendants, specifically "other persons who are in active concert or participation with" them. Fed. R. Civ. P. 65(d)(2)(C). The PI Order tracks Rule 65: "the Court **ENJOINS** Defendants, along with their officers, directors, agents, employees, and all persons or entities ***acting in active***

---

[1] Individuals currently named as Does may eventually, if necessary, be named as defendants in this lawsuit.

*concert or participation with them*." (PI Order at 30) (emphasis added). Indeed, the three third-party declarations Defendants filed in support of their Opposition to the PI Motion confirm that Defendants are not the only parties involved in THJ. (ECF Nos. 50-2, 50-4, 50-5).

Defendants argue that this Court's PI Order "irreparably destroy[s] Defendants' property" (*i.e.*, THJ, which infringes Daybreak's copyrights, *inter alia*). (Motion at 2). As this Court held, however, "Daybreak alone had the right to exploit and license EverQuest and ***Defendants had no lawful right to do so***." (PI Order at 6-7) (emphasis added). Defendants' stated desire to not comply with the PI Order by maintaining the infringing code could have far reaching repercussions for Daybreak, including but not limited to a leak or a movement of the THJ to overseas servers.

Moreover, Defendants do not cite any support regarding their request that the Court "clarify" its PI Order. (*See generally* Motion). The case Defendants cite to support their position that the Court should modify the PI Order because "it improperly goes beyond what is necessary to fully-protect" Daybreak is both dissimilarly postured to and distinguishable from this case. (Motion at 4-5). In *E. & J. Gallo Winery v. Gallo Cattle Co.*, the Ninth Circuit modified an injunction issued after summary judgment upon appeal, reviewing the district court decision under the abuse of discretion standard. 967 F.2d 1280, 1297 (9th Cir. 1992). The *Gallo* case involved a sibling dispute over the use of the name GALLO. *Id*. In modifying the district court's injunction, the Ninth Circuit first held that "in the context of the actual marketing environment, where Joseph sold cheese, the Winery sold wine, and Gallo Salame, under license from the Winery, sold meat and cheese," extending the injunction's "prohibition against audible broadcast advertisements to . . . *other product*" was "an abuse of discretion in the highly fact-specific area of trademark law." *Id*. at 1298. Second, the Ninth Circuit removed the injunction's reference to "descendants" in this dispute regarding the trademark GALLO between Gallo family members.

## V. DEFENDANTS' PROPOSED MODIFICATIONS SHOULD NOT BE ADOPTED

The question arises again as to the nature of Defendants' tactics given Defendants' failure to even attempt to meet their burden in seeking modification (*i.e.*, Defendants' Motion is devoid of new facts or law warranting modification). Defendants' proposed revisions to the PI Order could suggest intent of Defendants and/or those acting in concert with them to continue infringing Daybreak's protected EverQuest intellectual property.

While Daybreak maintains that the PI Order should not be modified for the reasons set forth above – especially to prevent additional irreparable harm – Daybreak addresses each proposed revision below.[2]

### A. "[M]aking available THJ or any ~~similar~~ new software"

Defendants must be enjoined from developing, distributing, licensing, promoting or otherwise making available *any* software that infringes Daybreak's copyrights. In sum, infringement of Daybreak's copyrights is infringement of Daybreak's copyrights regardless of when the infringing work was created. For example, if Defendants had been working on a different version of THJ with different features before September 19, 2025, this code would not be captured by the PI Order but is still a violative infringement.

Replacing "similar" with "new" also would allow Defendants to argue that any derivative works based on THJ are not "new." This would essentially nullify the PI Order.

---

[2] Daybreak took the sub headers a.-d. from Defendants' redlined proposed changes in their Motion. (*See* Motion at 5-6).

**B.     "[T]hat substantially replaces THJ ~~infringes Daybreak's copyrights~~"**

Defendants argue that the Court should "clarify that 'any similar software' is limited to only 'any new software' that would seek to skirt the order as to THJ only." (Motion at 3). The Court should not make this revision for at least three reasons.

First, "substantially replaced THJ" is vague and ambiguous. For example, it may not encompass a rewritten version of THJ where 20% of the infringing THJ codebase is different.

Second, changing "any similar software" to "substantially replaced THJ" creates exploitable loopholes in the Court-issued injunctive relief (*e.g.*, launching a player versus player server of THJ instead of THJ's original player versus environment server; releasing a version of THJ that includes different EverQuest expansion content).

Third, Defendants' proposed revision to "substantially replaced THJ" also improperly shifts the analysis. Rather than enjoining Defendants from infringing Daybreak's *intellectual rights*, the proposed language would enjoin Defendants from *offering a product that replaces THJ* (which is itself ambiguous).

**C.     "[M]aintaining any public ~~or private~~ repositories containing code for THJ"**

The PI Order as currently written is necessary to prevent any further continued development of software that infringes Daybreak's copyrights, *inter alia*. The distinction between a public and private repository is not relevant for copyright purposes. The infringement comes from the development of the software, not the publicity level of a repository. A private repository still allows continued development and collaboration.

  Moreover, if the repository is allowed to exist in a private manner, it may become impossible to enforce the PI Order. Daybreak and/or others will not be able to monitor if Defendants have continued to develop the infringing software.

  Additional, meeting Defendants' preservation obligations does not necessitate maintaining a code repository. Numerous third-party vendors can preserve source code offline, and out of the hands of Defendants, while maintaining all code structure and metadata.

  **D.** "~~**[O]perating any server emulation software that enables unauthorized access to Daybreak's *EverQuest* copyrighted works**~~"

  Here, Defendants overlook a critical word – **unauthorized**. (Motion at 3; PI Order at 30) (emphasis added). As detailed in Daybreak's Reply in further support of its PI Motion (ECF No. 53) ("PI Reply"), Daybreak has authorized two popular emulators, Project 1999 ("P99") and Project Quarm, to operate subject to important written restrictions including, *e.g.*, that the emulators remain personal fan projects that emulate only the early version of EverQuest, with no changes to gameplay, and a prohibition on sales of anything. (PI Reply at 5). As the Court held in the PI Order, "Daybreak alone had the right to exploit and license EverQuest . . . In fact, as the record reflects, Daybreak routinely 'sent cease and desist letters to ***unauthorized emulator operators*** when resources and circumstances warranted.'" (PI Order at 6-7) (citing Reply Declaration of Jennifer Chan ¶ 18, ECF No. 53-1, Ex. B; ECF No. 53-3). (emphasis added.)

  Deleting this sentence from the PI Order would undercut the PI Order's relief (*i.e.*, halting Defendants' infringement) because it would effectively sanction Defendants and/or those acting in concert with them to continue infringing Daybreak's intellectual property rights in EverQuest.

E. "[U]sing the EVERQUEST mark or any confusingly similar variations thereof **as a trademark**"

Defendants' suggested revision affirmatively confirming that they may continue using the EVERQUEST mark in any capacity simply indicates that they have plans for further projects that may infringe not only the EVERQUEST mark but Daybreak's copyrights and other protected material.

## VI. CONCLUSION

In light of the foregoing, Daybreak respectfully requests that the Court deny Defendants' Motion in its entirety and grant any such other relief as it deems just and proper.

Dated: September 26, 2025         Respectfully submitted,

DENTONS US LLP

By:  *Daniel A. Schnapp*
     Daniel A. Schnapp (*pro hac vice*)
     Monica B. Richman (*pro hac vice*)
     Nicholas B. Janda
     Mary Kate Brennan (*pro hac vice*)

*Attorneys for Plaintiff*
DAYBREAK GAME COMPANY, LLC