Benjamin Bruce Anger, SBN 269145
  ben.anger@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
600 Anton Boulevard
Costa Mesa, CA 92626
T: (714) 830-0600 / F: (714) 830-0700

JOSHUA M. DALTON (*pro hac vice*)
  josh.dalton@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
T: (617) 341-7700 / F: (617) 341-7701

*Counsel for Defendants Kristopher Takahashi
and Alexander Taylor*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYBREAK GAME COMPANY LLC, | CASE NO. 3:25-CV-01489 |
| Plaintiff, | **DEFENDANTS' MOTION FOR RECONSIDERATION** |
| v. | Date: November 14, 2025 |
| KRISTOPHER TAKAHASHI; ALEXANDER TAYLOR; Does 1-20, Inclusive, | Place: Courtroom 12b 12th Floor Judge: Hon. Cynthia Bashant |
| Defendants. | **NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT.** |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE that, on November 14, 2025, or as soon thereafter as the Court is available in Courtroom 12B of the federal courthouse located at 333 West Broadway, San Diego, California 92101, Defendants Kristopher Takahashi and Alexander Taylor ("Defendants") will, and hereby do, move for reconsideration of the Court's Order (ECF No. 66) on Plaintiff's Supplemental Motion for Preliminary Injunction (ECF Nos. 38). Defendants bring this Motion pursuant to Fed. R. Civ. P. 59(e), Southern District of California Local Rule 7.1(i), and the Court's inherent power to reconsider and modify an interlocutory order. Counsel for the Parties were unable to resolve any material disputes regarding this Motion and, accordingly, Defendants understand that Plaintiff intends to oppose the Motion.

Defendants' Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support hereof, the briefing on Plaintiff's Supplemental Motion for Preliminary Injunction and supporting documents, the papers of record on the docket, and such other papers and argument as may be offered to the Court hereafter.

Dated: October 14, 2025          Respectfully submitted,

By: */s/ Joshua M. Dalton*
Benjamin Bruce Anger, SBN 269145
**MORGAN, LEWIS & BOCKIUS LLP**
600 Anton Boulevard
Costa Mesa, CA 92626
Telephone: (714) 830-0441
ben.anger@morganlewis.com

Joshua M. Dalton (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Federal Street
Boston, MA 02110-1726
Telephone: (617) 341-7700
josh.dalton@morganlewis.com

*Attorneys for Defendants Kristopher Takahashi and Alexander Taylor*

Benjamin Bruce Anger, SBN 269145
  ben.anger@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
600 Anton Boulevard
Costa Mesa, CA 92626
T: (714) 830-0600 / F: (714) 830-0700

JOSHUA M. DALTON (*pro hac vice*)
  josh.dalton@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
T: (617) 341-7700 / F: (617) 341-7701

*Counsel for Defendants Kristopher Takahashi
and Alexander Taylor*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAYBREAK GAME COMPANY LLC, | CASE NO. 3:25-CV-01489 |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION** |
| v. | |
| KRISTOPHER TAKAHASHI; ALEXANDER TAYLOR; Does 1-20, Inclusive, | Date: November 14, 2025 Place: Courtroom 12b 12th Floor Judge: Hon. Cynthia Bashant |
| Defendants. | **NO ORAL ARGUMENT UNLESS ORDERED BY THE COURT.** |

1

# TABLE OF CONTENTS

2

**Page**

3    I.    INTRODUCTION ............................................................................. 1

4    II.    STANDARD OF REVIEW ............................................................... 1

5    III.    ARGUMENT .................................................................................... 2

6         A.    The Court Erred in Ordering Ultimate Relief to Plaintiff ................... 2

7         B.    The Court Should Reverse Its Finding Of Irreparable Harm .............. 3

8              1.    Statistical Data Does Not Show That THJ Caused a Decline for EQ Players ................................................................. 4

9
10              2.    Seven Anonymous User Comments on YouTube and Reddit May Not Support a Finding of Irreparable Harm ........... 5

11              3.    The Court Erred in Finding Reputational Harm and Goodwill .......................................................................... 9

12
13         C.    The Court Relied on an Erroneous Factual Conclusions to Support Key Elements of its Order ....................................................... 10

14
15         D.    The Court Applied an Improper Standard In Evaluating The Motion ................................................................................. 12

16    IV.    CONCLUSION ................................................................................ 13

17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3
**CASES**

4
5
*Am., Inc. v. Skechers USA, Inc.*,
   890 F.3d 747 (9th Cir. 2018) .................................................................. 9

6
7
*ArcSoft, Inc. v. CyberLink Corp.*,
   153 F. Supp. 3d 1057 (N.D. Cal. 2015) .......................................... 9, 10

8
9
*Artukovic v. Rison*,
   784 F.2d 1354 (9th Cir. 1986) ............................................................... 3

10
11
*Battelle Energy All., LLC v. Southfork Sec., Inc.*,
   980 F. Supp. 2d 1211 (D. Idaho 2013) ................................................ 12

12
13
*Cabrera v. Cordis Corp.*,
   134 F.3d 1418 (9th Cir. 1998) ............................................................... 7

14
*Daubert v. Merrell Dow Pharm., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ................................................................. 6

15
16
*DealDash Oyj v. ContextLogic Inc.*,
   2018 WL 3820654 (N.D. Cal. Aug. 10, 2018) .................................... 12

17
18
*Dorfmann v. Boozer*,
   414 F.2d 1168 (D.C. Cir. 1969) (per curiam) ...................................... 2

19
20
*Duran v. U.S. Bank*,
   59 Cal. 4th 1 (2014) ............................................................................... 6

21
22
*Garcia v. Google Inc.*,
   786 F.3d 733 (9th Cir. 2015) ......................................................... 12, 13

23
24
*Gross v. GG Homes, Inc.*,
   2021 WL 4804464 (S.D. Cal. Oct 14, 2021) ........................................ 1

25
*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ......................................................... 9, 10

26
27
*In re Wireless Telephone Services Antitrust Litigation*,
   385 F. Supp. 2d 403 (S.D.N.Y. 2005) ................................................... 7

28

*Kalani v. Starbucks Corp.*,
   2016 WL 693251 (N.D. Cal. Feb. 22, 2016).........................................................3

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009)...............................................................................12

*Plumbing v. Belodedov*,
   2018 WL 888965 (E.D. Cal. Feb. 14, 2018).......................................................12

*Rodgers v. Watt*,
   722 F.2d 456 (9th Cir. 1983).................................................................................1

*Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*,
   5 F.3d 1255 (9th Cir. 1993)...................................................................................2

*Senate of State of Cal. v. Mosbacher*,
   968 F.2d 974 (9th Cir. 1992).................................................................................2

*Shaw v. Experian Information Solutions, Inc.*,
   2016 WL 7634441 (S.D. Cal. April 4, 2016).......................................................2

*U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers Local Union No. 3, AFL–CIO*,
   313 F.Supp.2d 213 (S.D.N.Y. 2004)....................................................................6

*United States v. Houser*,
   804 F.2d 565 (9th Cir. 1986).................................................................................1

*Univ. of Texas v. Camenisch*,
   451 U.S. 390 (1981) ..............................................................................................2

**STATUTES**

Lanham Act......................................................................................................9, 10

**RULES**

Civil L.R. 7.1(i) .......................................................................................................1

Civil L.R. 7.1(i)(1)...................................................................................................1

# I.  INTRODUCTION

In its order granting Plaintiff's Supplemental Motion for Preliminary Injunction, (Dkt. 66 ("Order")), the Court quoted pleading standards for an "extraordinary remedy" of a preliminary injunction. But, instead of strictly applying the heightened pleading standard for mandatory injunctions, the Court examined Plaintiff's allegations as though they were subject to the more lenient requirements of a prohibitory injunction. The Court also erred in granting final relief to Plaintiff on a preliminary injunction motion. In so doing, the Order sidestepped the requirements of binding Ninth Circuit law.

Additionally, in finding irreparable harm and denying Defendants' laches and estoppel defenses, the Court made factual statements and conclusions that are otherwise unsupported and, at times, directly contradictory to the evidence in the record. As a result, and as set forth fully below, Defendants respectfully request that the Court reconsider its Order and deny Plaintiff's Supplemental Motion for Preliminary Injunction.

# II.  STANDARD OF REVIEW

"All rulings of a trial court are subject to revision at any time before the entry of judgment." *Gross v. GG Homes*, *Inc.*, 2021 WL 4804464, at *1 (S.D. Cal. Oct 14, 2021) (quoting *United States v. Houser*, 804 F.2d 565, 567 (9th Cir. 1986)). Under Local Rule 7.1(i), a party may apply for reconsideration when a "motion or any application or petition for an order or other relief has been made to a judge and has been refused in whole or in part." Civil L.R. 7.1(i)(1). Motions for reconsideration are within the discretion of the trial court. *Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir. 1983) (en banc).

A party seeking reconsideration must show "what new or different facts and circumstances are claimed to exist which did not exist, or which were not shown, upon such prior application." *Id.* Reconsideration is appropriate when a district court: "(1) is presented with newly discovered evidence, (2) committed clear error or the

initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Shaw v. Experian Information Solutions, Inc.*, 2016 WL 7634441, at \*1 (S.D. Cal. April 4, 2016) (quoting *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). "Ultimately, whether to grant or deny a motion for reconsideration is in the 'sound discretion' of the district court." *Id.* (citations omitted).

## III. ARGUMENT

Here, the Court committed a clear error in its findings and conclusions.

### A.    The Court Erred in Ordering Ultimate Relief to Plaintiff

Even assuming Plaintiff was to ultimately prevail based on a complete record, injunctions do not automatically follow even from final judgments of infringement, much less preliminary findings based on a limited record. "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). As a result, it is generally inappropriate at the "preliminary-injunction stage to give a final judgment on the merits." *Id.*

The Ninth Circuit has rejected preliminary injunctions, like the one the Court ordered here, which seek "judgment on the merits in the guise of preliminary relief" and called them "highly inappropriate." *See Senate of State of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992); *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (per curiam) ("[A] preliminary injunction should not work to give a party essentially the full relief he seeks on the merits."). Indeed, the relief ordered here effectively grants Daybreak full and final relief on its claims by completely shuttering THJ. By way of limited example, per the express terms of the Order, Defendants are enjoined from "maintaining any public or private repositories containing code[1] for THJ, including at github.com/The-Heroes-Journey-EQEMU or

---

[1] As discussed in Defendants' Opposition (Dkt. 50 at 11-12), Defendants created THJ (and thousands of other EQEmu emulators created their own projects) based upon "EQEmu's fan-written, clean-room, reverse engineered, open-source code," which

any other online repository." (Order at 30.) But, to the extent the Court mandates Defendants must permanently delete the code in their private repositories, such actions will cause irreparable injury and potentially spoliate evidence needed for this motion for reconsideration, an appeal to the Ninth Circuit Court of Appeals, and/or for discovery in this matter. Importantly, this deletion would unnecessarily provide Plaintiff the ultimate requested remedy, not a preliminary remedy, and would make it impossible to recover the code and thus render moot any further litigation. *See Kalani v. Starbucks Corp.*, 2016 WL 693251, at *5 (N.D. Cal. Feb. 22, 2016) ("[m]ootness of an appeal can constitute irreparable harm") (citing *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986)).

Put simply, because the Court's relief would provide permanent and final resolution, it cannot be awarded through a motion for a preliminary injunction; instead, such relief would have to come through a permanent injunction issued after a determination of Plaintiff's case on the merits. This Court erred in improperly granting full relief to Plaintiff in advance of a full adjudication on the merits.

### B.    The Court Should Reverse Its Finding Of Irreparable Harm

The Court was "persuaded that Daybreak has shown that Defendants' conduct is likely to cause irreparable harm." (Order at 27.) The Court based this finding on (i) "the erosion of market share that threatens to undermine Daybreak's business model"; (ii) "statistical data showing a decline in EverQuest's player base since THJ's launch;" (iii) "a declaration from [Daybreak's] attorney, Nicholas Janda"; and (iv) the "Court[']s agree[ment] with Daybreak that THJ operates without Daybreak's quality assurance or security controls." (*Id.* at 27-28.) Each of these conclusions constitute a clear error because there is insufficient evidence in the record to support the Court's conclusions, and, at times, evidence that directly contradicts its conclusions.

---

has been online for nearly two decades (available at https://github.com/EQEmu/Server).

1

### 1.   Statistical Data Does Not Show That THJ Caused a Decline for EQ Players

In finding irreparable harm, the Court held "the record suggests harm to Daybreak's player base that likely undermines its market share, as statistical analysis reveals a '*correlation* between THJ's growth and the decline in official EverQuest server populations.'" (Order at 26) (emphasis added). But, there has been absolutely no "statistical analysis" done in this matter – Daybreak has not provided any statistical inputs, it has not hired any expert to interpret any so-called data, it has not conducted any consumer surveys, etc. Rather, Daybreak provided limited "data points" and asked this Court to simply assume correlation equates to causation. The Court then relied upon this limited data to extrapolate that – without any statistical quality controls or analysis or consumer surveys – there had been an "erosion of [EverQuest's] market share." Looking at the evidence in the record, there is no support for such a finding.

Plaintiff provided its daily active users, or "DAU." Defendants also provided the daily active users in the EQEmu Community for the same period of time – for which THJ *was one of hundreds* of emulators operating in the EQEmu space (i.e., the numbers below do not imply that these users had all been playing THJ). The below chart summarizes the average daily active users for EverQuest and EQEmu:

|  | **EverQuest Daily Active Users** | **EQEmu Daily Active Users** |
|---|---|---|
| June 2024 | ███ users[2] | n/a |
| June 2025 | ███ users[3] | 5,936 users[4] |

In other words, Daybreak attributes a decline of more ███ daily active users from June 2024 to June 2025 to THJ, who, at most, had only some portion of an average of *5,936* daily active users during that same period of time. In other words,

---

[2] *See* Dkt. 38-1 (Chan Decl.) ¶ 27(a).
[3] *See id.* ¶ 27(b).
[4] *See* Dkt. 50-3 (Taylor Decl.) ¶ 21, Exs. 32-37.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW

Daybreak lost ***almost*** ▮ the amount of ***total*** EQEmu daily users (of which THJ is merely a subset and one of hundreds of EQEmu servers) over a one-year period and seeks to blame Defendants for this loss.[5] The Court's finding that THJ has caused "the erosion of market share. . . [that] threatens to undermine Daybreak's business model" lacks any factual basis and is unsupported by the data supplemented by Daybreak. *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 2014 WL 4312021, at *10 (N.D. Cal. Aug. 28, 2014) (finding no irreparable harm where, "while [plaintiff] has shown that it has lost business, it has not shown any connection between that lost business and defendants' use of the [allegedly infringing mark]"). This finding is clearly erroneous.

### 2.    Seven Anonymous User Comments on YouTube and Reddit May Not Support a Finding of Irreparable Harm

Because statistical causation can never be extrapolated from seven anonymous, excerpted, and self-selected YouTube and Reddit comments as being representative of an entire data set and community sentiment, at no point has Daybreak reliably demonstrated EverQuest's decline was caused by THJ. Rather, Daybreak maintained EverQuest's decline "corresponds" with the launch of THJ. *See* Dkt. 38 (Pls.' Supp. Mot.) at 17 ("Here, statistical analysis of player activity demonstrates a clear ***correlation*** between THJ's growth and the decline in official EverQuest server populations") (emphasis added); Dkt. 53 (Pl.'s Reply) at 12 ("the evidence demonstrates that EverQuest's decline ***corresponds*** directly with THJ's launch") (emphasis added).

In finding irreparable harm, the Court agreed Daybreaks' so-called "statical

---

[5] Additionally, the number of active EQEmu players in September of 2024 was shown to be around 5,628 daily players, *see* Dkt. 50-42 (Ex. 37), and, in June of 2025, there were around 5,936 daily players, *see* Dkt. 50-40 (Ex. 37). Thus, the number of daily active EQEmu players increased by only 308 players in the period from October 2024 (THJ's launch) until June 2025 (when this lawsuit was filed).

Based on this data, it is reasonable to conclude that THJ players were primarily comprised of EQEmu players, not EverQuest players. But, even assuming that all 308 additional EQEmu players (i.e., the difference in EQEmu players from September 2024 and June 2025) came from EverQuest, this is but a mere fraction of the losses Daybreak somehow attributes to THJ.

data" alone would "suggest only correlation rather than causation." (Dkt. 66 at 27.) The Court noted "Plaintiff supplements this evidence with a declaration from its attorney . . . highlight[ing] comments posted by THJ fans on YouTube videos posts describing the THJ gaming experience," *id.,* and reasoned, "***[t]aken together***, the statistical evidence and THJ user statements support a reasonable inference that THJ competes with EverQuest, that players have migrated from EverQuest to THJ, and that Defendants' conduct is the proximate cause of the irreparable harm Plaintiff is likely to suffer absent relief." (Dkt. 60 at 26-27.) (emphasis added).

This Court's reliance on seven anonymous, excerpted, and self-selected comments (i.e., non-randomized, biased, and small sample size) posted on a handful of online YouTube videos and Reddit posts as evidence of anything, let alone as the extra proof needed to get Daybreak over the line on causation (i.e., drawing conclusions from the bias and limited sample size and extrapolating those comments as representative of an entire community), is clearly erroneous. *See Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1321 (9th Cir. 1995) (a "statistically significant relationship" between the drug and alleged birth defects that was too weak to establish causation "would not be helpful, and indeed would only serve to confuse the jury" and was inadmissible); *Duran v. U.S. Bank*, 59 Cal. 4th 1, 38 (2014) ("The essence of the science of inferential statistics is that one may confidently draw inferences about the whole from a representative sample of the whole. . . . Inferences from the part to the whole are justified only when the sample is representative."); *U.S. Info. Sys., Inc. v. Int'l Broth. of Elec. Workers Local Union No. 3, AFL–CIO*, 313 F.Supp.2d 213, 233 (S.D.N.Y. 2004) ("[T]he reliability of any analysis relies upon an unbiased selection of sample data.").

Specifically, the Court relied upon seven anonymous, cherry-picked, and excerpted comments to find irreparable harm: (i) five comments on four YouTube videos and (ii) two comments on two Reddit forums.[6] *See generally* Dkt. 38-2 (Janda

---

[6] The attorney declaration also cites to four anonymous comments posted on Discord to substantiate a finding irreparable harm. Although the Court does not address the

Decl.). While troubling that the Court based its finding of irreparable harm from various unknown YouTube and Reddit users – including "sourpickles," "tokencitizen5511," "ganjarat," and "googler5130" – the Court then committed another clearly erroneous error in extrapolating these seven user comments to the larger population in finding that THJ *caused* EverQuest's decline. Such a small and non-randomized sample size *can never* be used to extrapolate findings to a larger community and find statistical causation. *See Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) ("unsubstantiated and undocumented information is the antithesis of the scientifically reliable expert opinion.").

Beyond looking at limited excerpted comments, neither Daybreak nor this Court addressed alternate explanations for EverQuest's decline. Indeed, "[w]here . . . a regression analysis . . . fails to incorporate major independent variables, such analysis may be excluded as irrelevant." *In re Wireless Telephone Services Antitrust Litigation*, 385 F. Supp. 2d 403, 427 (S.D.N.Y. 2005). In *In re Wireless*, the court found that the expert's failure to account for "obvious and significant alternative explanations" for his results rendered his regression analysis "essentially worthless." *Id.* at 428. Here, setting aside there was no regression analysis even conducted to find causation, Defendants addressed obvious and significant alternate explanations that the Court disregarded in finding statistical causation: (i) Daybreak's "exceptional results during last year's [EverQuest] anniversary celebrations"[7] and (ii) the

_____

Discord comments in the Order, the Discord comments – like the YouTube and Reddit comments – cannot support a finding of irreparable harm.

[7] This Court failed to address the "misleading, if not intentionally deceptive" declaration of Jennifer Chan. (*See* Dkt. 50 at 21-22). As set forth in Defendants' Opposition: "Daybreak's claims of an 'unprecedented decline' and 'risks the collapse of its franchise' beginning in late 2024" are "inconsistent with sworn financial statements made by [Plaintiff's] parent company, Enad Global 7." *See id.* Here, Ms. Chan claimed "*a layoff*  ███████  of the EverQuest team ████████████," Chan Decl. ¶ 35, and that "█████████████████████████████████████████ ████████████████████████████████████" *id.* ¶ 38. But, this so-called "financial peril" is unsupported in Plaintiff's parent company's public Swedish securities filings, which

significant decline in MMORPG market overall (i.e., that other MMORPGs have lost significant revenue in this same period reinforces there are alternate causes to Daybreak's claimed losses). Because Plaintiff's so-called analysis is based on a small sample of anonymous, non-randomized, self-selected, excerpted comments, and, given the omission of variables or any alternative explanation for the decline in EverQuest's players, Plaintiff's analysis is fatally flawed and thus wholly irrelevant. The Court's reliance on it was therefore clearly erroneous.

To the extent that the Court is inclined to credit anonymous comments on online forums to find irreparable harm, the Court failed to consider Defendants' Exhibit 15 showing that the "landscape of consumer reviews of EQ in the time during and immediately leading up to this dispute reveals that customers are not leaving EQ because of any conduct by Defendants, but rather because of Daybreak's run of bad business decisions." (*See* (Dkt. 50-2) at Ex. 15.) Unlike Plaintiff, Defendants provided the Court with the entirety of nearly 60 user comments and sentiments.

Overall, the only thing connecting EverQuest's decline to THJ's existence is the *ipse dixit* of seven cherry-picked, excerpted, and anonymous online comments on

---

provide the following assessment on EverQuest's Q1 2025 performance: "for Q1 of 2025, '*EverQuest delivered a stable performance in-line with expectations*, although slightly down *compared to the exceptional results during last year's anniversary celebrations*.'" *See* Karlsson Decl. ¶ 73, Ex. 23 (emphasis added).

In short, Chan's Declaration setting forth "financial peril" and Daybreak's sworn securities filings assessing the same period of time are inconsistent. Given Daybreak parent company's statements are governed by Swedish securities law and were verified by the Board of Directors, there is serious doubt as to the accuracy of Ms. Chan's purported financial impact claims. Indeed, and only *after* Defendants pointed out the apparent inconsistences between Ms. Chan's sworn Declaration, Daybreak's parent company provided the following update in its Q2 2025 performance: "EverQuest results came in lower compared to last year's results" and blames THJ. Tellingly, the Q2 2025 report does not mention Ms. Chan's bleak financial outlook of "financial peril." Instead, it notes only a "decline from last year" and neither addresses EverQuest's "exceptional results during last year's anniversary celebrations," nor the decline in the MMORPG market overall. *See* Karlsson Decl. ¶ 73, Ex. 23.

1  YouTube or Reddit. The Court's reliance on these comments to find statistical
2  causation is clearly erroneous and sets a dangerous precedent to establishing
3  irreparable harm. Such a finding should be reversed.

### 3.    The Court Erred in Finding Reputational Harm and Goodwill

The Court also found "Daybreak's quality assurance or security controls, which 'exposes players to potential security vulnerabilities, gameplay imbalances, and other issues that could reflect poorly on the EverQuest brand.'" (Order at 27.) This Court further concluded this "risks reputational damage, and threatens [Daybreak's] long-term goodwill." (*Id.*) The Court erred in finding "reputational damage," which is a component of Daybreak's Lanham Act claim, when the Court conceded that it did "not reach the alternative claims in Daybreak's Supplemental Motion, including unfair competition under the Lanham Act and the UCL." (Order at 19, n.3.) Because the Court erred in finding reputational damage without even considering the merit of Plaintiff's Lanham Act claim, its finding is clearly erroneous.

Had the Court addressed the merits of the Lanham Act claim to evaluate reputational damage, there can be no credible allegation any consumer would confuse Daybreak with THJ (i.e., there can be no reputational damage or good will losses because THJ is not Daybreak). Defendants argued this point extensively in their Opposition. (*See* Opp. at 15-16.) And, Daybreak does not cite a single source of evidence – not even an anonymous online comment – to plausibly allege consumer confusion. *See Sleash, LLC v. One Pet Planet, LLC*, 2014 WL 4059163, at *7 (D. Or. Aug. 15, 2014) ("Rather than providing any such evidence, [plaintiff] argues that such irreparable harm automatically flows from the loss of control of its business and trademark. This argument, however, is inconsistent with *Herb Reed*, as the Court cannot rely on conclusory assertions unsupported by evidence"); *ArcSoft, Inc. v. CyberLink Corp.*, 153 F. Supp. 3d 1057, 1071 (N.D. Cal. 2015) ("the risk of such harm must be established by specifically relevant evidence, not by 'platitudes' or

1  evidence that merely 'underscores customer confusion.'") (citing *Herb Reed*, 736

2  F.3d at 1250). Indeed, Defendants provided a sworn declaration from a former

3  EverQuest Producer, Jeff Butler, who explained "[w]e believed the emulator projects

4  posed *no risk of consumer confusion* . . . we saw *no plausible likelihood* that our

5  subscribers—or prospective subscribers—would *mistake those unofficial servers*

6  *for the official EverQuest servic*e." (Dkt. 50-12 at ¶ 12) (emphasis added).

7      The Court's conclusion Daybreak suffered or is at risk of reputational harm

8  relies on leaps of logic and speculation. *See adidas Am., Inc. v. Skechers USA, Inc.*,

9  890 F.3d 747, 759-61 (9th Cir. 2018) (holding district court abused its discretion in

10  finding irreparable harm to reputation and brand because plaintiff "failed to provide

11  concrete evidence" of irreparable harm, even though it found no error in district

12  court's determination that plaintiff was likely to succeed on the merits of its

13  trademark infringement claim, affirming injunction as to defendant's other accused

14  shoe); *ArcSoft, Inc. v. CyberLink Corp.*, 153 F. Supp. 3d 1057, 1071 (N.D. Cal. 2015)

15  ("the risk of such harm must be established by specifically relevant evidence, not by

16  'platitudes' or evidence that merely 'underscores customer confusion.'") (citing *Herb*

17  *Reed*, 736 F.3d at 1250). This Court committed a clear error in finding that there are

18  any "risks [to] reputational damage, and threatens its long-term goodwill," (Order at

19  27), because the Court never evaluated the Lanham Act claim, and, if did so, the

20  record establishes there is no "consumer confusion."

21  **C.    The Court Relied on an Erroneous Factual Conclusions to Support Key Elements of its Order**

22      In support of three key findings in the Order, the Court drew an unsupported

23  and erroneous conclusion based on what was actually in the record evidence. In

24  determining the type of injunction at issue, (Order at 6-7), whether Defendants had

25  reason to believe they would be permitted to release an emulator for estoppel, (*id.* at

26  20), and whether Daybreak slept on its rights for laches, (*id.* at 22), the Court made

27  the following statement: "Daybreak routinely sent cease and desist letters to

unauthorized emulator operators when resources and circumstances warranted." (Order at 6, 7, 20, 22.).

This key factual finding is erroneous. Indeed, the evidence in the record reflects the exact opposite. Ms. Chan conceded in her Declaration Daybreak has ***never*** sent a cease-and-desist letter to any emulator since ***Daybreak acquired EverQuest in 2015***. *See* Dkt. 53-1 (Chan Reply Decl.), ¶ 18 ("Daybreak and its predecessor companies sent cease and desist letters to unauthorized emulator operators when resources and circumstances warranted, including but not limited to Winter's Roar (2005), EQClassic (2008), Shards of Dalaya (2008),[8] and Scorpious2k (2009)."). Per Chan's Declaration, the last cease and desist letter was sent in 2009 – or nearly six years before Daybreak ever acquired EverQuest.

In addition, the lead developer of EQEmu – the core around which THJ and other emulators were built – confirmed that Daybreak had made no efforts whatsoever to stop emulators for decades. *See* Dkt. 50-4 ("Miles Decl.") ¶ 44 ("In all my years leading and working on EQEmu, I have never seen or heard of any attempt by Daybreak Games or Sony Online Entertainment to shut the project down."). And, former employees of Daybreak's predecessor also confirmed the same. *See* Dkt. 50-5 (Butler Decl.) ¶ 10 ("During my time at EverQuest, emulators of the EverQuest server were well-known to me and the team at SOE" but they "chose not to pursue any enforcement activity against emulators"); Dkt. 50-2 (Karlsson Decl.) ¶ 9 ("I am aware of no prior lawsuits. I am aware of no takedown notices. I had not even seen a sternly worded blog post from Daybreak about emulators.").

Defendants believe that, when the notion that Daybreak "routinely sent cease-and-desist letters" is replaced with the reality that it never did and instead made repeated public statements of support and admiration for emulators, *see* Dkt. 50-1

---

[8] Emblematic of Daybreak's lack of enforcement, and despite receiving a cease-and-desist letter in 2008, Shards of Dalaya remained active until recently when it – like other EQEmu servers – shut down due to the ambiguity in the Court's Order regarding the potential enforcement of the Order against nonparties (i.e., other EQEmu emulators). *See* Dkt. 75.

1
2
3
4

(Takahashi Decl.) ¶ 31(a)-(d), the balance of factors on both estoppel and laches changes. The Court's findings in reliance on the myth of Daybreak's enforcement, rather than the reality of its utter lack of enforcement, are therefore clearly erroneous, making its findings on estoppel and laches also erroneous.

5

### D.    The Court Applied an Improper Standard In Evaluating The Motion

6
7
8
9
10
11
12
13
14
15
16
17
18
19

In its Opinion, the Court stated, "[a]lthough the Court initially characterized the requested preliminary injunction as mandatory during the hearing, upon further deliberation, the Court finds that such relief is properly understood as prohibitory." (Order at 6.) Importantly, the Court conceded that its injunction "would require Defendants to 'take action,'" (Order at 6), but it then ignores controlling Ninth Circuit precedent that an injunctive order seeking to compel Defendants "to take action," *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc), by mandating, among other things, that Defendants remove "public or private repositories containing code for THJ" is a mandatory injunction. *See also Battelle Energy All., LLC v. Southfork Sec., Inc.*, 980 F. Supp. 2d 1211, 1216 (D. Idaho 2013) (injunction requiring defendants to remove source code from the internet was mandatory because defendants had released the software "three months before th[e] lawsuit was filed," and the injunction would require "defendants to do something that will change the status quo").

20
21
22
23
24
25
26
27
28

The Court's Order is a mandatory injunction – it would not "simply preserve the status quo" – because it requires Defendants to "take action," and thus amounts to a mandatory injunction. *See Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (internal quotation and citation omitted); *see also id.* (finding, in action for trademark infringement, preliminary injunction requiring recall of infringing products "no longer within [defendant's] possession" was mandatory injunction); *Plumbing v. Belodedov*, 2018 WL 888965, at *2 (E.D. Cal. Feb. 14, 2018) (characterizing requested preliminary injunction as mandatory

where plaintiffs sought order requiring defendants to "remove what [p]laintiffs. allege[d] [were] fake negative online reviews of [plaintiffs'] business"); *DealDash Oyj v. ContextLogic Inc.*, 2018 WL 3820654, at *6 (N.D. Cal. Aug. 10, 2018) (injunction "requiring defendant to issue a mandatory update for previously distributed apps" was mandatory because it "would not simply preserve the status quo, but would require defendant to take action" in the form of building new application tools and messaging) (internal quotation marks omitted).

The Court did state, in passing, "even if the Court were to construe the requested relief as a mandatory injunction, the Court is persuaded that Daybreak has satisfied the heightened standard by establishing 'that the law and facts clearly favor [its] position, not simply that [it is] likely to succeed.'" (Order at 7.) The Court, however, fails to address how Daybreak meets this "doubly demanding" standard anywhere its Opinion. Defendants therefore believe the Court departed from controlling Ninth Circuit precedent on mandatory injunctions. *See Garcia*, 786 F.3d at 740.

## IV. **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court reconsider its Order, grant this Motion for Reconsideration, and deny Plaintiff's Supplemental Motion for Preliminary Injunction.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

13

1  Dated: October 14, 2025

Respectfully submitted,

2  By: */s/ Joshua M. Dalton*
Benjamin Bruce Anger, SBN 269145

3  **MORGAN, LEWIS & BOCKIUS LLP**
600 Anton Boulevard

4  Costa Mesa, CA 92626
Telephone: (714) 830-0441

5  ben.anger@morganlewis.com

6  Joshua M. Dalton (*pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**

7  One Federal Street
Boston, MA 02110-1726

8  Telephone: (617) 341-7700
josh.dalton@morganlewis.com

9
*Attorneys for Defendants Kristopher Takahashi*

10 *and Alexander Taylor*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

14