**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAYBREAK GAME COMPANY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>KRISTOPHER TAKAHASHI, *et. al*,<br><br>Defendants. | Case No. 25-cv-01489-BAS-BLM<br><br>**ORDER:**<br>(1) **GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION (ECF No. 61); AND**<br><br>(2) **DENYING DEFENDANTS' EX PARTE MOTION FOR AN ADMINISTRATIVE STAY OF PRELIMINARY INJUNCTION (ECF No. 75)** |

Presently before the Court are a motion to compel arbitration (ECF No. 61) and an ex parte motion for administrative stay of preliminary injunction pending appeal (ECF No. 75)—both filed by Defendants Kristopher Takahashi and Alexander Taylor. For the reasons discussed, the Court **GRANTS** the motion to compel arbitration (ECF No. 61) and **DENIES** the ex parte motion for administrative stay of preliminary injunction pending appeal (ECF No. 75).

## I. BACKGROUND

On June 14, 2025, Plaintiff Daybreak Game Company, LLC initiated this action by filing a complaint against Defendants Kristopher Takahashi, Alexander Taylor, and Does 1-20—alleging that, by creating a game named The Heroes' Journey, Defendants violated Daybreak's intellectual property rights associated with its game named EverQuest. Plaintiff alleged causes of action for: (1) direct copyright infringement, 17 U.S.C. § 101 *et seq.*, (2) copyright infringement by inducement, (3) violation of the Digital Millenium Copyright Act, 17 U.S.C. § 1201, (4) trademark dilution, 15 U.S.C. § 1125(c), (5) federal unfair competition, 15 U.S.C. § 1125(a), (6) California trademark dilution, Cal. Bus. & Prof. Code § 14330, (7) breach of contract under California common law, (8) unfair competition, California Cal. Bus. & Prof. Code § 17200, and (9) unjust enrichment under California common law. (ECF No. 1.)

On August 22, 2025, Defendants Kristopher Takahashi and Alexander Taylor ("Defendants") filed their motion to compel arbitration (ECF No. 61) alleging that in the 2018 and 2022 versions of the EverQuest End-User License Agreement ("Amended EULAs"), Parties agreed to arbitrate "[a]ny dispute"—including arbitrability. (*See* ECF No. 61-1.) In its response opposing arbitration, Plaintiff argued, *inter alia*, that Parties were bound by the EULA associated with an older Rain of Fear ("RoF") version of the EverQuest client ("RoF EULA") (ECF Nos. 73 at 7:24–27, 9:17–18, 14:1–19; 1-6), since The Heroes' Journey software required users to install and run the RoF EverQuest client, modifies the EverQuest RoF executable file to enable unauthorized access to EverQuest servers, and "literally stole [the RoF EULA] along with other portions of Daybreak's code"—thereby "embed[ding]" the RoF EULA into The Heroes' Journey. (ECF No. 73 at 7:24–27, 9:17–18, 14:1–19.) Plaintiff further alleges that, even if the RoF EULA did not apply, the 2018 and 2022 EULAs discussed by Defendants exempt claims relating to misuse of intellectual property rights from arbitration. (ECF No. 73 at 10.) Defendants filed a reply. (ECF No. 76.)

Plaintiff filed a motion for preliminary injunction on June 14, 2025. (ECF No. 5.) Defendants filed an opposition on July 30, 2025. (ECF No. 50.) The Court held a hearing on August 12, 2025 (ECF No. 58) and issued an order granting Plaintiff's motion for preliminary injunction on September 19, 2025 (ECF No. 66). Just four days later on September 23, 2025, Defendants filed an ex parte motion for an administrative stay of the Court's order granting preliminary injunction. (ECF No. 75.)

## II.   MOTION TO COMPEL ARBITRATION (ECF No. 61)

### A.   Legal Standard

Arbitration is a creature of contract. *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 (1974). To resolve Defendants' motion to compel arbitration (ECF No. 61), the Court, therefore, turns to interpret the written terms of how Parties intended to resolve the claims at issue in this action, and Parties' behavior relative to those terms.

The Federal Arbitration Act ("FAA") applies to contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2; *Brennan v. Opus Bank*, 796 F.3d 1125, 1129 (9th Cir. 2015). Under the FAA, the court must, as a general matter, determine "two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan*, 796 F.3d at 1130. "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability." *Guidry v. VITAS Healthcare Corp. of California*, No. 3:24-CV-00176-H-MMP, 2024 WL 2097903, at *2 (S.D. Cal. May 9, 2024) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).) This presumption is particularly strong where the arbitration clause is broad and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Guidry,* 2024 WL 2097903, at *2 (quoting *AT & T Techs.*, 475 U.S. at 648).

"[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (citing *Howsam*, 537 U.S. at 83–85, and *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (plurality

opinion)). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citing *AT&T Techs,* 475 U.S. at 649). In other words, a dispute about whether the parties are bound by a given arbitration clause raises a question of arbitrability that is presumptively for the court to decide. *See also Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

### B. Whether Defendants Waived Arbitration

The Ninth Circuit's current position is that a party asserting waiver of arbitration must demonstrate: (1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right. *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). For the second element, "a party generally acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Id.*

Plaintiff asserts that Defendants fulfilled these criteria and waived their contractual rights to arbitration because Defendants "made a strategic decision not to seek to compel arbitration until after the PI Hearing and actively sought to litigate the underlying merits by opposing Daybreak's PI Motion." (ECF No. 73 at 17.) The Court disagrees.

Defendants filed their motion to compel arbitration (ECF No. 61) just two months after Plaintiff filed this action (ECF No. 1). *See e.g., Armstrong*, 59 F.4th at 1016 (defendant had not acted inconsistently with its right to arbitrate when it subsequently moved to compel arbitration within a year of the plaintiff filing her complaint); *Fries v. Wells Fargo Bank*, No. 2:23-CV-07321-SPG-PD, 2024 WL 1816931, at *3 (C.D. Cal. Feb. 22, 2024) (defendant had not acted inconsistently with its right to arbitrate when it moved to compel arbitration four months or when it moved to dismiss the action three months after plaintiff filed its complaint).

Moreover, in Defendants' opposition to Plaintiff's motion for preliminary injunction, they noted their intention to file a motion to stay the litigation and seek

arbitration pursuant to the agreements in this dispute. (ECF No. 50 at 26.) The Ninth Circuit's position is that a party previously affirming an intention to seek arbitration militates in favor of preserving its contractual right to arbitration. *See Armstrong*, 59 F.4th at 1015 (there was no waiver of arbitration where defendant "explicitly and repeatedly stated its intent to move to compel arbitration in both case management statements" and was "consistently vocal about its intent to move to compel arbitration"); *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016) ("The defendants did not even note their right to arbitration until almost a year into the litigation and did not move to enforce that right until well after that time"). Thus, the Court finds that Defendants have not behaved in a manner "inconsistent with th[eir] existing right [to compel arbitration]." *See Armstrong*, 59 F.4th at 1015.

### C. Whether Arbitration Provisions in 2018 and 2022 End-User Licensing Agreements Apply to the Current Dispute

Before reaching any other issues, the Court first considers whether the arbitration provisions in the Amended EULAs can govern the present dispute. Plaintiff argues that the Rain of Fear End-User Licensing Agreement ("RoF EULA") governs the current dispute. (ECF No. 73 at 14.) Defendants assert, instead, that the controlling agreements are the amended End-User License Agreements in ("Amended EULAs"), which provide that certain disputes can be referred to an arbitrator. (ECF Nos. 61-4 at 6–7, 61-5 at 6–7.)

Federal courts apply state-law principles of contract formation and interpretation when deciding the existence of an arbitration agreement. *Holl v. U.S. Dist. Court (In re Holl)*, 925 F.3d 1076, 1083 (9th Cir. 2019). Under California state law, "'when parties enter into a second contract dealing with the same subject matter as their first contract without stating whether the second contract operates to discharge or substitute for the first contract, the two contracts must be interpreted together and the latter contract prevails to the extent they are inconsistent.'" *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022) (citing *Williams v. Atria Las Posas,* 235 Cal. Rptr. 3d 341, 345 (Ct. App. 2018)

(holding that later-signed arbitration agreement superseded parties' original agreement, which did not include an arbitration clause)).

The Court now considers—according to the principles of Californian contract law above—whether the terms of the Amended EULAs favoring and governing arbitration are part of the universe of contractual provisions relevant to the present dispute. First, the Amended EULAs clearly succeed the RoF EULA. The RoF EULA was effectuated on December 2, 2008. (ECF No. 1-2 at 1.) The Amended EULAs were effectuated in February 2018 and in June 2022. (ECF Nos. 61-4 and 61-5.) Second, the Court also finds that the disputed contracts deal with the same subject matter. Both the RoF EULA and Amended EULAs set out terms for players' access to the Daybreak's game Everquest and the forum through which disputes arising from players' access should be resolved. (ECF No. 61-1 at 6–7.) More specifically, Defendants' development of The Heroes' Journey depends on their access to Plaintiff's software in this litigation such that the terms of both the RoF EULA and Amended EULAs cover their conduct.

The Amended EULAs also apply to Defendants' infringing conduct at issue in this litigation. The Amended EULAs state that users are legally bound by the contract by virtue of "accessing, downloading and/or using the Software and/or any Game(s)" (ECF Nos. 61-4 at 2, 61-5 at 2.) "[A]ny Game(s)" includes the older RoF version of EverQuest's client and any past versions of EverQuest from which Defendants appropriated intellectual property assets to develop and to maintain The Heroes' Journey. (*See e.g.,* ECF No. 1 ¶¶ 19–20.) The Amended EULAs also state that: "Your continued use of any Game(s) following our making available any revised version of the Agreement will mean that you accept the revised version." (ECF Nos. 61-4 at 2, 61-5 at 2.)

Defendants' infringing conduct in developing The Heroes' Journey took place after Amended EULAs first went into effect in 2018, and such game development depended upon continued use of EverQuest. The first publicly available piece of evidence that Defendants' The Heroes' Journey is based upon EverQuest is an online upload to the website GitHub, published in June 2025. (ECF No. 1 ¶ 33.) In

addition, Plaintiff's own expert Garry Kitchen has testified, as of September 19, 2025, that Defendant engages in "ongoing development patterns," including "regular content updates and community contributions [that] demonstrate[] sustained commercial exploitation of Daybreak's intellectual property." (ECF No. 38-7 ¶ 148.) Notably, content updates likely include updating the visual interface of The Heroes Journey (*e.g.*, physical appearance of characters and gameplay elements) by incorporating matching assets illegally taken from EverQuest. (ECF No. 38-7 ¶¶ 42, 61, 143, 148, 149.) Defendant's ongoing software updates also depend upon regular unauthorized access to Daybreak's servers. (*Id* ¶ 43.) Further, by incorporating "iconic" characters from EverQuest into The Heroes' Journey, Defendants continuously misappropriated intellectual property assets from past versions of EverQuest after the Amended EULAs went into effect. (*See e.g.,* ECF No. 1 ¶¶ 19–20.) Thus, the Amended EULAs apply to Defendants' game development at dispute in this litigation.

Plaintiff alleges that the RoF EULA applies to Defendants' conduct at dispute in this action because Defendants accessed and modified the EverQuest RoF software to create The Heroes' Journey. (ECF No. 73 at 14.) Further, in creating The Heroes' Journey, Defendants embedded the RoF EULA into the source code. (*Id*.) The RoF EULA states: "You may not copy…distribute…modify or create derivative works… or transfer all or any portion of the [RoF] Software. You may not reverse engineer, disassemble or decompile the [RoF] Software." (ECF No. 1-6 at 3.) The Court also agrees with Plaintiff that Defendants' alleged conduct, therefore, is also covered by the RoF EULA.

Because the Amended EULAs are later in time than the RoF EULA, and because the agreements deal with the same subject matter—Defendants' allegedly infringing conduct in this dispute dependent upon Defendants unauthorized access and use of Plaintiff's software and IP—provisions in the Amended EULAs conflicting with ones in the RoF EULAs should prevail.

For our purposes, the primary inconsistency between the RoF EULA and the Amended EULAs is that the Amended EULAs have provisions explicitly favoring and governing arbitration (ECF Nos. 61-4 at 6–7, 61-5 at 6–7); and the RoF EULA (ECF No. 1-6) does not. Instead of an arbitration clause, the RoF EULA has a forum selection clause, providing that all related disputes should be decided in California courts. (ECF No. 73 at 14:10–14.) Pursuant to principles of Californian contract law, to the extent that provisions regarding arbitration in the Amended EULAs are inconsistent with provisions militating against arbitration in the RoF EULA (*i.e.*, forum selection clause), those in the Amended EULAs should prevail. *See Suski*, 55 F.4th at 1230 (citing *Williams*, 235 Cal. Rptr. 3d at 345). Thus, contrary to Plaintiff's assertions, the Court finds that arbitration provisions in the Amended EULAs apply to this action.[1]

### D.     Whether the Court Decides Arbitrability

The Court must first consider the "threshold question" whether it, or an arbitrator, has the authority to decide arbitrability. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649–650 (1986). The "question of arbitrability," is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). The Amended EULAs state: "[t]he Arbitration will be administered by the American Arbitration Association ["AAA"] under its Consumer Arbitration Rules, as amended by this Daybreak Terms of Service. The Consumer Arbitration Rules are available online at www.adr.org." (*See* ECF Nos. 61-4 at 6–7, 61-5 at 14–15.) Further, the AAA rules—specifically Rule 7(a)—state that: the arbitrator has "the power to rule on their own jurisdiction, including any objections with

---

[1] California state law requires that courts interpret related contracts "to try to give effect to every clause and harmonize the various parts with each other." *Friedman Prof. Mgmt. Co. v. Norcal Mut. Ins. Co.*, 120 Cal. App. 4th 17, 33, 15 Cal. Rptr. 3d 359, 371 (2004). As *Suski* notes, "the two contracts must be interpreted together." *Suski*, 55 F.4th at 1230. Because there are also non-conflicting terms between the EULAs at issue here, the Court finds no reason to wholly invalidate any of them. Additionally, the Court finds no reason to invalidate the forum selection clause in the RoF EULA to the extent it does not conflict with the arbitration provisions in the Amended EULAs.

respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." *See* Rule R-7(a), AAA Commercial Arb. Rules, 2018 WL 2117639, at *6.

It is well-established that contractual incorporation of AAA rules evinces the parties' intent to delegate questions of arbitrability to the arbitrator. *See, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability"); *Oracle Am., Inc. v. Myraid Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Ensambles Hyson, S.A. de C.V. v. Sanchez*, 718 F. Supp. 3d 1258, 1267–1269 (S.D. Cal. 2024) (incorporation of AAA rules provides clear and unmistakable evidence that the parties agreed to arbitrate arbitrability).

Plaintiff alleges that Parties cannot refer the claims in this dispute, including their arbitrability, to an arbitrator because the Amended EULAs provide that either Party can bring "any dispute relating to…misuse of intellectual property rights" to court "in lieu of Arbitration." (*See* ECF Nos. 73 at 10, 61-4 at 6, 61-5 at 6.)

In exact terms, the Amended EULAs provide: "with respect to **Excluded Disputes** . . . that you and Daybreak are unable to settle through Negotiation, you or Daybreak **may** apply to the applicable court in the District of Delaware or Southern District of California **to bring** any such Excluded Disputes **in lieu of Arbitration**." (*See* ECF Nos. 61-4 at 6–7, 61-5 at 14–15 (emphasis added).)

The Amended EULAs define "Excluded Disputes" (emphasis added):

> (a) **any Dispute relating to** the infringement, misappropriation and/or other **misuse of intellectual property rights** other than patent rights (including, without limitation, claims seeking injunctive relief);

However, Plaintiff's argument improperly conflates the issues of whether to arbitrate arbitrability and whether Plaintiff's claims are arbitrable. The definition of

"excluded disputes" here governs exempting claims from arbitration, and not whether the arbitrator can decide the arbitrability of those claims in the first instance. *See e.g.*, *Hart v. Charter Commc'ns, Inc.*, No. SACV170556DOCRAOX, 2017 WL 6942425, at *8 (C.D. Cal. Nov. 8, 2017) ("[C]laims for injunctive orders or similar relief" are carved out of the 2014 RSSA's arbitration provision…Nevertheless, the arbitrability delegation clause divests the Court of its power to determine whether those claims are arbitrable.)

The United States Supreme Court has recently held that "when the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract"— even if the arbitration agreement could appear to exclude the particular underlying dispute from arbitration. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019). Therefore, the existence of this exemption for claims relating to the misuse of intellectual property rights does not undermine the Parties' "clear and unmistakable" intent to delegate whether to arbitrate arbitrability to an arbitrator via incorporation of the AAA Rules. *Cf Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1076 (9th Cir. 2013) (a contract with both a broad delegation clause set by tribunal rules, but with provisions exempting certain disputes from arbitration, still evinces Parties' "clear and unmistakable" intent to arbitrate arbitrability).

* * *

For the reasons above, the Court **GRANTS** Defendants' motion to compel arbitration. (ECF No. 61.)

## III.  EX PARTE MOTION TO STAY PRELIMINARY INJUNCTION (ECF No. 75)

Relatedly, Defendants move to administratively stay the Court's order on the motion for preliminary injunction pending appeal. (ECF No. 75.) "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for

litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Courts consider four factors in determining whether to issue a stay pending appeal under Federal Rule of Civil Procedure 62(c): "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Golden Gate Rest. Ass'n v. City & Cnty. San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008).

In their memorandum in support of their ex parte motion to stay (ECF No. 75, 75-1), Defendants have not presented any additional arguments explaining why they are "likely to succeed on the merits," why the "issuance of the stay will [not] substantially injure the other parties interested in the proceeding, or why granting stay is in favor of "public interest." Rule 62(c). Though Defendants do allege that they will suffer "irreparabl[e] harm absent a stay," such as lost work product (ECF No. 75-1 at 5:12–17), the Court reiterates its earlier analysis that "where, as here, the only hardship that the defendant will suffer is…from an activity which has been shown likely to be infringing, such an argument in defense merits little equitable consideration" (ECF No. 66 at 28:3–11).

Defendants have not shown that a stay of this Court's order granting preliminary injunction (ECF No. 66) is appropriate under Rule 62. *See Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (providing that a stay is "an exercise of judicial discretion" and the requesting party "bears the burden of showing that the circumstances justify an exercise of that discretion"). Thus, the Court **DENIES** Defendants' ex parte motion to stay of preliminary injunction pending appeal. (ECF No. 75.)

**IV. EFFECT OF COMPELLING ARBITRATION ON PRELIMINARY INJUNCTION**

The Court notes that the present order does not affect the Court's earlier order granting Plaintiff's motion for preliminary injunction. (ECF No. 66.) The Ninth Circuit

has held that "a district court may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process." *Toyo Tire Holdings Of Americas Inc. v. Cont'l Tire N. Am., Inc*., 609 F.3d 975, 981 (9th Cir. 2010). Accordingly, having previously found that "the prerequisites for injunctive relief are satisfied," the Court maintains that its order granting preliminary injunction (ECF No. 66) pending the arbitrator's determination of arbitrability. *Id.* at 982; *cf Bhd. of Locomotive Eng'rs v. Missouri-Kansas-Texas R. Co*., 363 U.S. 528, 531 (1960) ("Federal District Court may enjoin strikes arising out of 'minor disputes'—generally speaking, disputes relating to construction of a contract—when they have been properly submitted to the National Railroad Adjustment Board").

## V.  CONCLUSION

For the reasons discussed, the Court **GRANTS** Defendants' motion to compel arbitration (ECF No. 61). The Court also **DENIES** Defendants' ex parte motion to stay preliminary injunction (ECF No. 75).

In light of Parties' decision to conduct the resolution of their dispute in accordance with the AAA Commercial Rules, the Court leaves the question of arbitrability to be decided by the arbitrator in accordance with the clear and unmistakable intent of the Parties as defined by prevailing case law. Additionally, in accordance with Section 3 of the FAA, the Court **STAYS** these proceedings pending a decision on arbitrability by the arbitrator. Parties shall file a joint status statement within **one week** of the arbitrator's decision on arbitrability or by **January 30, 2026**, whichever is sooner.

IT IS SO ORDERED.

DATED: October 30, 2025

Hon. Cynthia Bashant, Chief Judge
United States District Court