1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAYBREAK GAME COMPANY, LLC, | Case No. 25-cv-01489-BAS-BLM |
| Daybreak, | |
| v. | **ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION (ECF No. 81)** |
| KRISTOPHER TAKAHASHI, *et. al*, | |
| Defendants. | |

Presently before the Court is Defendants' Kristopher Takahashi and Alexander Taylor ("Defendants") motion for reconsideration (ECF No. 81) of the Court's prior order (ECF No. 66) granting Plaintiff Daybreak Game Company, LLC's ("Daybreak") motion for a preliminary injunction (ECF No. 38) earlier in this action. For the reasons discussed below, the Court **DENIES** Defendants' motion for reconsideration. (ECF No. 81.)

**I.    BACKGROUND**

Daybreak owns the intellectual property rights in an online, multi-player role-playing game called EverQuest. (ECF No. 66 at 2:2–2:5.) Defendants had used Daybreak's computer code and visual elements of Daybreak's game design to create its own online, multi-player role-playing game called the Heroes Journey ("THJ"). (*Id*. at 2:5–2:14.) Daybreak initiated this action by filing a complaint on June 14, 2025 alleging, *inter alia*: (1) direct copyright infringement under the Copyright Act, 17 U.S.C. § 101; (2)

- 1 -

1   violation of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201; (3) false

2   designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); (4) violation of

3   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210,

4   predicated on alleged Lanham Act and DMCA violations; and (5) breach of contract under

5   California common law.  (ECF No. 1 ¶¶ 70–135.)

6       Daybreak eventually moved for the Court to issue a preliminary injunction enjoining

7   Defendants' operations.  (ECF No. 38)—which the Court granted on September 19, 2025

8   (ECF No. 66).  In its order, the Court enjoined Defendants' company—insofar as its

9   operations relied upon likely infringement of Daybreak's copyright—from operating until

10  the resolution of the present action.  (*Id*. at 30:7–30:24.)  On October 14, 2025, Defendants

11  filed a motion for reconsideration—challenging the Court-issued injunction on grounds the

12  Court had relied on incorrect statements of fact.  Daybreak filed an opposition.  (ECF No.

13  85.).  Defendants filed a reply.  (ECF No. 86.)

14  **II.    LEGAL STANDARD**

15      **A.    Motion for Reconsideration**

16      Motions for reconsideration are within the discretion of the trial court.  *Rodgers v.*

17  *Watt*, 722 F.2d 456, 460 (9th Cir. 1983) (en banc).  Under Civil Local Rule 7.1.i, a party

18  may apply for reconsideration when a "motion or any application or petition for an order

19  or other relief has been made to a judge and has been refused in whole or in part."  CivLR

20  7.1.i.1.  On a motion to reconsider, relief should be granted only "if the district court (1) is

21  presented with newly discovered evidence, (2) committed clear error or [its] initial decision

22  was manifestly unjust, or (3) if there is an intervening change in controlling law."  *School*

23  *Dist. No. 1J, Multnomah County v. ACandS Inc*., 5 F.3d 1255, 1263 (9th Cir. 1993).  In

24  order to succeed on a motion to reconsider, a party must set forth facts or law of a strongly

25  convincing nature to induce the court to reverse its prior decision.  *Singleton v. Kernan*,

26  No. 16-CV-02462-BAS-NLS, 2017 WL 4922849, at *2 (S.D. Cal. Oct. 31, 2017).  A

27  motion for reconsideration is not an avenue to re-litigate the same issues and arguments

28  upon which the court has already ruled.  *Id.*

- 2 -

1  III.   **ANALYSIS**

2      A.   **Civil Local Rule 7.1.i.1 Affidavit Requirement**

3      Civil Local Rule 7.1.i.1 states (emphasis added):

> Whenever any motion or any application or petition for any order or
> other relief has been made to any judge and has been refused in whole
> or in part, or has been granted conditionally or on terms, and a
> subsequent motion or application or petition is made for the same relief
> in whole or in part upon the same or any alleged different state of facts,
> **it will be the continuing duty of each party and attorney seeking**
> **such relief to present to the judge** to whom any subsequent
> application is made **an affidavit of a party or witness or certified**
> **statement of an attorney** setting forth the material facts and
> circumstances surrounding each prior application, including *inter alia*:
> (1) when and to what judge the application was made, (2) what ruling
> or decision or order was made thereon, and (3) what new or different
> facts and circumstances are claimed to exist which did not exist, or were
> not shown, upon such prior application

Daybreak alleges that Defendant failed to meet the procedural requirements of CivLR 7.1.i.1. (ECF No. 85:1–16.)  Though it is true that Defendants failed to file an affidavit accompanying their initial motion for reconsideration (ECF No. 81), Defendants filed an affidavit in their reply brief (ECF No. 86-1).  Indeed, CivLR 7.1.i.1 states that it is the "continuing" responsibility of the party seeking reconsideration to file an affidavit. Further, Defendants' motion for reconsideration (ECF No. 81) meet the other requirements set out in CivLR 7.1.i.1.  Thus, the Court turns to the merits of Defendants' motion. (ECF No. 81.)

     B.   **Whether the Court Committed a Clear Error**

Here, Defendants do not allege they are seeking reconsideration of the Court's order issuing a preliminary injunction on grounds of "newly discovered evidence" or an "intervening change of law."  *ACandS Inc*., 5 F.3d at 1263.  In cases without "newly discovered evidence" or "an intervening change in controlling law," the standard for this motion is "whether the Court committed clear error or the initial decision was manifestly

25cv1489

1  unjust." *Shaw v. Experian Information Solutions*, Inc., 2016 WL 7634441, at *1 (S.D. Cal.
2  April 4, 2016).

3      Clear error does not exist where the issue is merely "a debatable one." *McDowell v.
4  Calderon*, 197 F.3d 1253, 1256 (9th Cir. 1999).  Instead, a finding of clear error is
5  appropriate only where the Court is left with the "definite and firm conviction" that a
6  mistake has been committed.  *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C 10-3724
7  CW, 2015 WL 1478636, at *2 (N.D. Cal. Mar. 31, 2015) (internal citation omitted).  "[T]he
8  courts of the Ninth Circuit generally treat manifest injustice as very nearly synonymous
9  with clear error, defining manifest injustice as any error in the trial court that is direct,
10 obvious and observable, such as a defendant's guilty plea that is involuntary." *Raya v.
11 Calbiotech*, No. 3:18-CV-2643-WQH-AHG, 2019 WL 11504688, at *3 (S.D. Cal. Nov.
12 26, 2019) (internal citation omitted) (collecting cases). The manifest injustice ground,
13 which "requires that the error be apparent to the point of being indisputable[,] . . . is not
14 meant to allow a disappointed litigant to attempt to persuade the court to change its mind."
15 *Id*.

16      **1.    Mandatory vs. Prohibitory Preliminary Injunction Standard**

17      The Ninth Circuit applies separate standards for injunctions depending on whether
18 they are prohibitory, *i.e.* they prevent future conduct, or mandatory, *i.e.* "they go beyond
19 'maintaining the status quo[.]'" *Hernandez v. Sessions*, 872 F.3d 976, 997 (9th Cir. 2017).

20      To the extent plaintiffs are requesting mandatory relief, that request is "subject to a
21 higher standard than prohibitory injunctions," namely that relief will issue only "when
22 'extreme or very serious damage will result' that is not capable of compensation in
23 damages,' and the merits of the case are not 'doubtful.'"  *Id*. at 999 (quoting *Marlyn
24 Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)).
25 The Ninth Circuit recognizes that application of these different standards "is
26 controversial[,]" and that other Circuits have questioned this approach. *Id*. at 997–98. This
27 Court need not, and does not, address that discrepancy here.

28

- 4 -

25cv1489

1  Defendants argue Daybreak's requested injunction was a mandatory injunction
2  rather than a prohibitory injunction, since "to the extent the Court mandates Defendants
3  must permanently delete the code in their private repositories . . . this deletion would
4  unnecessarily provide Daybreak the ultimate requested remedy, not a preliminary remedy."
5  (ECF No. 81 at 9:1–10.)   The Court previously held that the prohibitory preliminary
6  injunction standard applied, rather than the mandatory standard.  (ECF No. 66 at 5:22–7:6.)
7  The Court further held that, irrespective of the standard for preliminary injunction applied,
8  Daybreak has met their burden since "the law and facts clearly favor [its] position, not
9  simply that [it is] likely to succeed."  (*Id*. at 7:7–7:10 (citing *Garcia v. Google, Inc*., 786
10 F.3d 733, 740 (9th Cir. 2015).)   The Court presently does not address whether the
11 prohibitory or mandatory standard applies, since it agrees with its prior decision that to the
12 extent some portion of Daybreak's requested relief is subject to a standard higher than the
13 traditional standard for injunctive relief, Daybreak has met its burden to meet the higher
14 standard.

15              **2.       Irreparable Harm**

16       A preliminary injunction is an extraordinary relief and drastic remedy and "one that
17 should not be granted unless the movant, by a clear showing, carries the burden of
18 persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).   An injunction may be
19 granted only where the movant shows that "he is likely to succeed on the merits, that he is
20 **likely to suffer irreparable harm** in the absence of preliminary relief, that the balance of
21 equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural*
22 *Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (emphasis added); *Am. Trucking Ass'ns, Inc.*
23 *v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (emphasis added).  The movant
24 has the burden of proof on each element of the test. *Envtl. Council of Sacramento v. Slater*,
25 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

26       Irreparable harm has been described as "[p]erhaps the single most important
27 prerequisite for the issuance of a preliminary injunction."  *See* 11A Wright & Miller, Fed.
28 Prac. & Proc. § 2948.1 (3d ed.).  Where a Daybreak fails to demonstrate a likelihood of

1   irreparable harm without preliminary relief, the court need not address the remaining

2   elements of the preliminary injunction standard.  *See Center for Food Safety v. Vilsack*,

3   636 F.3d 1166, 1174 (9th Cir. 2011).  In a copyright infringement action, "plaintiffs may

4   establish an irreparable harm stemming from infringement [through demonstrating] loss of

5   market share [or] reputational harm."  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster,*

6   *Ltd.*, 518 F. Supp. 2d 1197, 1215 (C.D. Cal. 2007).  Plaintiffs may also demonstrate

7   irreparable harm stemming from violations of trademark law, the Lanham Act, the DMCA,

8   and the UCL for the same reasons.  *See e.g., Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush*

9   *& Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) (irreparable harm based on a threatened loss

10  of prospective customers, goodwill, and revenue in trademark case); *Monster Energy Co.*

11  *v. Vital Pharms., Inc.*, No. EDCV 18-1882 JGB (SHKX), 2023 WL 8168854, at *13 (C.D.

12  Cal. Oct. 6, 2023), *aff'd*, No. 23-55451, 2025 WL 1111495 (9th Cir. Apr. 15, 2025)

13  (irreparable harm based on threatened loss of prospective customers and market share in

14  Lanham Act case); *Synopsys, Inc. v. AzurEngine Techs., Inc.*, 401 F. Supp. 3d 1068, 1074

15  (S.D. Cal. 2019) (irreparable harm based on threatened loss of market share and

16  reputational harm in the DMCA case); *NJOY, LLC v. iMiracle (HK) Ltd.*, 760 F. Supp. 3d

17  1070, 1081 (S.D. Cal. 2024) (irreparable harm based on threatened loss of prospective

18  customers and market share in UCL case).

19          Relying upon *Daubert*, Defendants contest that the Court erroneously relied upon

20  statistically insignificant data—including several online comments insulting Daybreak's

21  business (ECF Nos. 81 at 12:9–12:24; 86 at 4:5–4:18) and statistical analysis revealing a

22  "correlation between THJ's growth and the decline in official EverQuest server

23  populations" (ECF No. 81 at 11:12–11:22)—in finding that plaintiffs adequately

24  demonstrated a likelihood of irreparable harm to Daybreak's reputation and market share

25  as required in the context of copyright infringement (ECF No. 66 at 25:18–25:21).  *Daubert*

26  *v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 (9th Cir. 1995).  The Ninth Circuit case

27  that Defendants cite was on remand from the pivotal Supreme Court case *Daubert v.*

28

25cv1489

1    *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Collectively, the Court refers

2    to the Supreme Court case and the Ninth Circuit case as "*Daubert.*"

3           First, courts have consistently held that the rules of evidence, including the *Daubert*

4    standard, can be applied less strictly during preliminary injunction proceedings.  *See Herb*

5    *Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1250

6    n.5 (9th Cir. 2013) ("Due to the urgency of obtaining a preliminary injunction at a point

7    when there has been limited factual development, the rules of evidence do not apply strictly

8    to preliminary injunction proceedings"); *In re NJOY, Inc. Consumer Class Action Litig.*,

9    120 F. Supp. 3d 1050, 1080 (C.D. Cal. 2015) (the *Daubert* evidentiary standard is distinct

10   from the evidentiary standard for determining whether to enter a preliminary injunction);

11   *See Apple, Inc. v. Samsung Electronics Co.,* No. CV 11–01846 LHK, 2014 WL 976898,

12   *13 (N.D.Cal. Mar. 6, 2014) (same).

13          Further, other courts within this circuit have found irreparable harm without

14   explicitly requiring that such evidence meet the standards set out in *Daubert*—implying

15   that meeting *Daubert*'s evidentiary standards is unnecessary to support a reasonable

16   inference that evidence demonstrates a likelihood of irreparable harm and favors a

17   preliminary injunction.  *See e.g., Coachella Music Festival, LLC v. Simms*, No.

18   217CV06059RGKGJS, 2017 WL 6888499, at *4 (C.D. Cal. Dec. 13, 2017) (finding

19   likelihood of irreparable harm to business reputation based on "some negative Internet

20   postings by [a defendant's] personnel"); *see also Repro-Med Sys., Inc. v. EMED Techs.*

21   *Corps.*, No. 213CV01957TLNCKD, 2017 WL 2446458, at *4 (E.D. Cal. June 6, 2017)

22   (finding a Daybreak's expert declaration stating that Daybreak's market share was

23   negatively *correlated* with the sales and market share of a defendant's company was

24   sufficient to establish irreparable harm); *see also Int'l Council for Veterinary Assessment*

25   *v. Anivive Lifesciences Inc.*, No. 2:24-CV-02866-JLS-BFM, 2024 WL 3915052, at *3

26   (C.D. Cal. July 23, 2024) (merely demonstrating "easy access to [the defendants'

27   intellectual property] threatens [the Daybreak's] reputation as a leader in the veterinary

28

25cv1489

assessment industry and its market share" sufficient to establish likelihood of irreparable harm).

Lastly, Defendants have not cited any new caselaw that now requires the Court to meet the evidentiary standard laid out in *Daubert* to find irreparable harm sufficient to issue a preliminary injunction. *Cf Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc*., 2014 WL 4312021 (N.D. Cal. Aug. 28, 2014) (the Ninth Circuit directed the district court to "'revisit the issue of irreparable harm on remand' in light of the [then] recent decision in *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc*., 736 F.3d 1239 (9th Cir. 2013)). Defendants have also failed to demonstrate the Court did not consider any material facts or any material changes in fact that would require the Court to reconsider its order issuing a preliminary injunction (ECF No. 66). *See ACandS Inc*., 5 F.3d at 1263.

Thus, the Court finds it did not commit a "clear error" when relying upon evidence that may not meet the evidentiary standards set out in *Daubert*, *i.e.*, expert reports establishing causation between an increase in Defendants market share and a decrease in Daybreak's market share, or between several online comments and harm to Daybreak's reputation, but does support a reasonable inference that Defendants could irreparably harm Daybreak's copyright in the absence of a preliminary injunction.

### 3.    Estoppel and Laches Defenses

Defendants allege that Daybreak never sent out cease-and-desist letters to Defendants directly, which means that the Court incorrectly concluded that Defendants had failed to assert their estoppel and laches defenses to Daybreak's copyright claims when relying upon the existence of such letters. (ECF No. 81 at 16:21–17:2.)

#### i.    Estoppel

As previously discussed by the Court (ECF No. 66 at 19:15–19:22), to prevail on an estoppel defense, a defendant must establish: "(1) the plaintiff knew of the defendant's allegedly infringing conduct; (2) the plaintiff intended that the defendant rely upon his conduct or act so that the defendant has a right to believe it is so intended; (3) the defendant is ignorant of the true facts; and (4) the defendant detrimentally relied upon the Daybreak's

1 conduct." *Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085, 1097 (N.D. Cal. 2003)

2 (quoting *Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 761 (9th Cir. 1981)). All four elements

3 must be present. *Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1399

4 (C.D. Cal. 1990).

5    Even if the Court did mistakenly rely upon an erroneous statement that Daybreak

6 had sent cease-and-desist letters to Defendants directly (which it did not), the Court also

7 found Defendants failed to offer "evidence of any conduct by Daybreak specifically

8 directly at them that could reasonably support a belief that Daybreak intended Defendants

9 to rely on such conduct, or that they had any right to believe such intent existed." (ECF

10 No. 66 at 20:6–20:9.) This ground alone is sufficient for the Court find Defendants failed

11 to prevail on an estoppel defense. Further, Defendants misread the Court's interpretation

12 of Daybreak's cease-and-desist letters. Indeed, the Court points to the fact that Daybreak

13 had previously sent cease-and-desist letters as one piece of evidence—among others—that

14 Daybreak regularly enforces its intellectual property rights. (*Id*. at 7:1–6; *see also id*. at

15 20:25–21:4.) Defendants have not alleged why the Court's reliance on that piece of

16 evidence—among others—is inadequate for finding that Defendants waived their equitable

17 estoppel defenses at the preliminary injunction stage.

### ii.    Laches

19    As previously discussed (ECF No. 66 at 21:6–21:18), "[l]aches is an equitable time

20 limitation on a party's right to bring suit." *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030,

21 1036 (9th Cir. 2000). "To demonstrate laches, a party must establish[:] (1) lack of diligence

22 by the party against whom the defense is asserted[;] and (2) prejudice to the party asserting

23 the defense." *Apache Survival Coalition v. United States*, 21 F.3d 895, 905 (9th Cir. 1994).

24 Specifically, "a defendant must prove both an unreasonable delay by the Daybreak and

25 prejudice to itself." *Kling,* 225 F.3d at 1032. "[T]he period of delay for laches for a

26 copyright infringement claim runs only from the time that the plaintiff knew or should have

27 known about an actual or impending infringement, not an adverse claim of ownership." *Id*.

28 at 1036; *see also Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150, 1155 (C.D. Cal. 2001)

25cv1489

(citing *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)) ("Under federal copyright law, '[a] cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge.'").

Defendants allege that the Court incorrectly ruled against their laches defenses because Daybreak never sent a cease-and-desist letter to Defendants directly—demonstrating a lack of diligence. (ECF No. 81 at 16:21–18:4.)  Here again, Defendants misconstrue the basis for the Court's holding against Defendants' laches defense.  The Court instead reasons that Daybreak was unaware of Defendants' infringing game based on a *combination* of facts including: (1) Daybreak's past cease-and-desist letters to other infringing game developers upon discovering their infringing behavior, *and* (2) by Daybreak's unawareness of an anonymous email regarding Defendants' game since that email was filtered to a junk mail folder. (ECF No. 66 at 22:3–22:17.).  Based on the latter fact in particular, the Court inferred that the date which Daybreak had actual or constructive knowledge of Defendants' behavior was unclear at the preliminary injunction stage. (*Id.*)  So, the present record lacked sufficient evidence to establish whether Daybreak had unreasonably delayed in asserting its rights from when it had knowledge of Defendants' violations. (*Id.*)

In the motion for reconsideration (ECF No. 81), Defendants do not introduce any new evidence proving when Daybreak accrued knowledge of Defendants' copyright-infringing game.  They also do not discuss any intervening changes in law that would no longer require ascertaining the date that Daybreak obtained knowledge of Defendants' copyright-infringing game. *See* CivLR 7.1.i.1; *Kling*, 225 F.3d at 1032 ("a defendant must prove both an unreasonable delay by the Daybreak and prejudice to itself").

\* \* \*

As demonstrated above, Defendants do not present the Court with newly discovered evidence or an intervening change in the controlling law.  Instead, making the same arguments they did in responding (ECF No. 50) to Daybreak's motion for preliminary injunction (ECF No. 38), they essentially argue the Court was wrong in its decision.  This

25cv1489

1   is an insufficient basis upon which to grant a motion for reconsideration. *Wargnier v.*

2   *National City Mortg. Inc.*, No. 09cv2721–GPC–BGS, 2013 WL 3810592, at \*2 (S.D. Cal.

3   July 22, 2013) (explaining that a motion for reconsideration will be denied where the

4   motion reflects the same arguments, facts and case law that were previously considered

5   and ruled upon by the court); *Becker v. Wells Fargo Bank*, No. 2:12–cv–501 KJM CKD,

6   2013 WL 3242249, at \*1 (E.D. Cal. June 25, 2013) ("[A] motion for reconsideration is not

7   an appropriate vehicle for rehashing arguments the court has already considered.") (citation

8   omitted).  After reviewing Defendants' motion for reconsideration (ECF No. 81), the Court

9   finds there are no unusual circumstances or clear error in the initial decision.  Thus,

10  Defendants' motion for reconsideration is **DENIED**. (*Id.*)

11  **IV.   CONCLUSION**

12        For the reasons discussed above, the Court **DENIES** Defendants' motion for

13  reconsideration. (ECF No. 81.)

14        **IT IS SO ORDERED.**

15

16  **DATED: December 1, 2025**

17                                        **Hon. Cynthia Bashant, Chief Judge**
                                          **United States District Court**

- 11 -

25cv1489